IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————

No. 23-3143

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

LAUREN HANDY, *et al.*,

Defendants-Appellants

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————

UNITED STATES' OPPOSITION TO APPELLANT'S FRAP 9(A)
MEMORANDUM FOR RELEASE PENDING SENTENCING

————————

On August 29, 2023, a federal jury convicted five defendants, including

appellant Lauren Handy, of violating 18 U.S.C. 241 (conspiracy against rights) and

18 U.S.C. 248(a)(1) (freedom of access to clinic entrances). The district court

ordered defendants detained pending sentencing under 18 U.S.C. 3143(a)(2)

because the Section 248(a)(1) offense for which defendants were found guilty is a

"crime of violence," as defined in 18 U.S.C. 3156(a)(4)(A). As the court stated in

its August 29, 2023, minute order, and reiterated in a written order denying

defendants' emergency motion for reconsideration, mandatory detention is

required absent circumstances not present here. This Court should deny Handy's motion for release pending sentencing.

## BACKGROUND

*A.    Statutory Background*

The Bail Reform Act, at 18 U.S.C. 3143(a)(2), requires the detention of a defendant who is "awaiting imposition or execution of sentence" when the individual has been "found guilty of an offense in a case described in" 18 U.S.C. 3142(f)(1)(A), (B), or (C). 18 U.S.C. 3143(a)(2). Among the offenses listed in those subparagraphs is "a crime of violence." 18 U.S.C. 3142(f)(1)(A). The Bail Reform Act defines the term "crime of violence" to include "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. 3156(a)(4)(A). An "offense" is defined broadly under the Act and encompasses both felonies and misdemeanors. 18 U.S.C. 3156(a)(2).

The Bail Reform Act provides one exception to its requirement of detaining, post-conviction and pre-sentencing, individuals found guilty of a crime of violence. The exception applies if (1) the court finds that "there is a substantial likelihood that a motion for acquittal or new trial will be granted" or the government has "recommended that no sentence of imprisonment be imposed on the person," and (2) the court finds "by clear and convincing evidence that the

person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. 3143(a)(2)(A) and (B).

B.    *Factual Background*

1.    On March 24, 2022, a federal grand jury returned a two-count indictment against nine defendants, including Handy.  Doc. 1.[1]  A tenth defendant was added later by superseding indictment.  Doc. 113.  The indictment charged defendants with violating 18 U.S.C. 241 by conspiring to injure, oppress, threaten, or intimidate individuals in the free exercise of a federal statutory right, *i.e.*, the right to obtain and seek to obtain, and to provide and seek to provide, reproductive health services, as guaranteed in 18 U.S.C. 248(a)(1).  See Doc. 113, at 2-7.  The indictment further charged defendants with violating the Freedom of Access to Clinic Entrances Act (FACE Act), 18 U.S.C. 248(a)(1), by using "force and physical obstruction" to intentionally injure, intimidate, and interfere with a patient of the clinic for obtaining reproductive health services, and with employees of the clinic for providing such services.  Doc. 113, at 7 (also charging defendants in Count 2 with aiding-and-abetting under 18 U.S.C. 2).

---

[1] "Doc. __, at __" refers to the docket entry and page number of documents filed on the district court's docket.  "Tr. __" refers to the trial transcript on August 25, 2023, a copy of which is provided in the appendix to this opposition.

The case proceeded to trial against five defendants, including Handy, on August 15, 2023 (Minute Order Aug. 15, 2023).[2]  Following the close of evidence, the court instructed the jury on both counts.  As relevant here, the court told the jury that, to convict on Count 2, the government had to prove beyond a reasonable doubt that the defendant:

(1) "used force or physical obstruction";

(2) "intentionally injured, intimidated, or interfered with [the patient of the clinic] or the employees of the [clinic], or attempted to do so"; and

(3) "did so because [the patient] was obtaining or the [clinic] was providing reproductive health services."

Tr. 38.

The court defined the term "force" as "power and/or violence exerted upon or against a person or property."  Tr. 38.  It explained that "intimidate means to place a person in reasonable expectation of bodily harm to themselves or another," and "interfere means to restrict a person's freedom of movement."  Tr. 39.

---

[2]  One defendant entered a guilty plea as to Count 1 (Minute Order Mar. 1, 2023), and was sentenced to ten months' imprisonment (Minute Order Aug. 7, 2023).  Trial as to three more defendants commenced on September 8, 2023.  See Minute Order Sept. 8, 2023; see also Doc. 104, at 3 (setting separate trials for two groups of defendants).  The remaining defendant is scheduled for trial beginning on October 23, 2023.  See Minute Order Sept. 1, 2023.

The court also provided the jury with a special verdict form through which it would specify, in the event of a conviction, whether it found that the defendant used either force or physical obstruction, or both, in violating Section 248(a)(1). Doc. 413. The court provided the special verdict form in response to a government motion, which explained that such findings were necessary to determine the applicable penalty under 18 U.S.C. 248(b), given that a lesser statutory maximum applies where a defendant violates the FACE Act exclusively through nonviolent physical obstruction. See Doc. 363; see also 18 U.S.C. 248(b).

After deliberating for two days, the jury found each defendant guilty on both counts. Doc. 397, at 1. Using the special verdict form, the jury made two special findings: that each defendant violated the FACE Act by force and by physical obstruction. Doc. 397, at 1; see also Doc. 413.

2. Upon their conviction, the district court ordered defendants detained pending sentencing. The court held that mandatory detention applied under 18 U.S.C. 3143(a)(2), by reference to 18 U.S.C. 3142(f)(1)(A), because defendants' FACE Act offense constituted a "crime of violence" under the Bail Reform Act. Specifically, the court found that a Section 248(a)(1) violation committed by force, as the jury unanimously found, is categorically "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. 3156(a)(4)(A). Minute Order Aug.

29, 2023. The court further found, consistent with the required inquiry under 18 U.S.C. 3143(a)(2)(A), that there was "no substantial likelihood that a motion for acquittal or new trial w[ould] be granted," and that the prosecution would "recommend a term of incarceration as to each Defendant." Minute Order Aug. 29, 2023. Accordingly, the court ordered defendants, including Handy, detained.

Handy and another defendant filed emergency motions for reconsideration, arguing that their presentence detention was "governed under the more lenient provisions of 18 U.S.C. § 3143(a)(1), not those of § 3143(a)(2)" because a conviction under the FACE Act "is not categorically a 'crime of violence.'" Doc. 387, at 1 (emphasis omitted); see also Doc. 389. The government opposed the motion (Doc. 395), which the district court treated as joined by all defendants (Minute Order Aug. 30, 2023), and Handy filed a reply (Doc. 396).

The district court denied the motion in a written order. Doc. 397. The court explained that even though a defendant can violate the FACE Act through nonviolent means, the Act "creates distinct offenses, some of which are crimes of violence." Doc. 397, at 2. Employing the modified categorical approach, the court examined the elements of the Act's offenses and the Act's punishment scheme, which applies different sanctions depending on "the kind of conduct a defendant employed." Doc. 397, at 2. The court thus concluded that "the FACE Act is

'divisible'" because "it defines 'multiple crimes' based on punishment." Doc. 397, at 2 (quoting *Mathis* v. *United States*, 579 U.S. 500, 518 (2016)).

As relevant here, the court determined that one of the Act's penalty provisions—specifically, 18 U.S.C. 248(b)(1)—applies to conduct that involves "violent physical obstruction, force, or threat of force," and where such action is proven, "provides for a year of imprisonment." Doc. 397, at 2. The court concluded that "[a]ll" violations of this subsection "are necessarily crimes of violence" because they have, as an element of the offense, the use, attempted use, or threatened use of force against the person or property of another. Doc. 397, at 3. In contrast, a lesser misdemeanor penalty applies when a defendant violates the Act through exclusively nonviolent physical obstruction. Doc. 397, at 2.[3]

Accordingly, the court looked to other materials, like the indictment, jury instructions, and special verdict form, "to determine of which sub-offense a defendant was convicted and * * * whether that sub-offense is a crime of violence." Doc. 397, at 3 (citing *United States* v. *Redrick*, 841 F.3d 478, 482 (D.C. Cir. 2016)). Here, the court explained, the jury specifically found defendants acted by "force," with force defined as "power and/or violence exerted upon or against a

---

[3] The Act also has several felony offenses, including for a second or subsequent offense (punishable by up to three years' imprisonment), where "bodily injury results" (punishable by up to ten years' imprisonment), and where "death results" (punishable for any term of years or for life). 18 U.S.C. 248(b).

person or property." Doc. 397, at 3. Consequently, the court concluded that defendants had been convicted of the "more serious misdemeanor" under Section 248(b)(1), which requires "the use of force, the threat of force, or the use of *violent physical obstruction*." Doc. 397, at 3. Thus, in short, the "guilty verdict as to 'force'" meant that the jury had "convicted each Defendant of a crime of violence." Doc. 397, at 3. Accordingly, mandatory detention applied under 18 U.S.C. 3143(a)(2), and the court denied the motion. Doc. 397, at 3-4.

Three defendants, including Handy, appealed from the detention order. Docs. 398, 403, 405. Handy filed her Rule 9(a) motion with this Court.[4] The government herein responds consistent with this Court's September 8, 2023 order.

## DISCUSSION

This Court should deny Handy's motion because the district court correctly determined that defendants, including Handy, are subject to mandatory detention under 18 U.S.C. 3143(a)(2). Defendants were convicted of a "crime of violence" under 18 U.S.C. 3142(f)(1)(A) and 3156(a)(4)(A) because the government's superseding indictment charged them with violating, and the jury later convicted defendants of having violated, 18 U.S.C. 248(a)(1) by using "force" to

---

[4] On September 8, 2023, this Court consolidated the three appeals and issued an order to show cause by September 14, 2023, why it should not require joint briefing under the court-proposed schedule.

"intentionally injure[], intimidate[] or interfere[] with, or attempt[] to injure, intimidate, or interfere with" a clinic patient and employees of a reproductive health clinic because the patient was obtaining, and the clinic was providing, reproductive health services. 18 U.S.C. 248(a)(1).

As the district court correctly explained, Section 248(a)(1) is "divisible" because it creates separate misdemeanor offenses that contain different elements and carry different punishments. *Mathis* v. *United States*, 579 U.S. 500, 505 (2016). Consequently, this Court must use a "modified categorical approach" to determine, using a limited class of case documents, which of those misdemeanor offenses forms the basis of defendants' convictions. *Ibid.* Here, the superseding indictment and the jury's special verdict form make clear that defendants were convicted of violating the more serious misdemeanor offense in Section 248(a)(1), which categorically requires a defendant's use of force, threat of force, or violent physical obstruction. None of Handy's arguments, which misunderstand and misread the FACE Act, demonstrates otherwise.

Consequently, because defendants were convicted of a crime of violence and cannot show that the district court erred in finding inapplicable the exception to presentence detention in 18 U.S.C. 3143(a)(2)(A) and (B), this Court should deny Handy's motion seeking release pending sentencing.

*A.     Standard Of Review*

This Court reviews the district court's legal conclusions de novo and its findings of fact for clear error.  See, *e.g.*, *Khan* v. *Obama*, 655 F.3d 20, 25 (D.C. Cir. 2011); *United States* v. *Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

*B.     The Court Must Use The Modified Categorical Approach To Determine Whether Defendants' FACE Act Offense Constitutes A Crime Of Violence*

1.  Where a statute authorizes enhanced penalties based on a defendant's conviction for a particular type of offense, courts often will use a "categorical approach" to determine whether the defendant's crime qualifies as a version of the offense in question.  See *Borden* v. *United States*, 141 S. Ct. 1817, 1822 (2021) (observing that the categorical approach is "applicable in several statutory contexts").  Under this approach, a court "focus[es] solely on whether the elements of the crime of conviction sufficiently match" those of the offense at issue. *Mathis*, 579 U.S. at 504.  Specifically, the elements of the crime of conviction must be "the same as, or narrower than, those of" the pertinent offense.  *Id.* at 503.  If they are, then the crime for which the defendant was convicted is a "categorical[] match" for the offense.  *Borden*, 141 S. Ct. at 1822.

Courts apply a "modified categorical approach," however, when statutes "have a more complicated (sometimes called 'divisible') structure."  *Mathis*, 579 U.S. at 505 (citation omitted).  A statute is divisible for purposes of the modified categorical approach where it "list[s] elements in the alternative, and thereby

define[s] multiple crimes." *Ibid.* This can occur when the "statutory alternatives carry different punishments." *Id.* at 518. If a statute defines multiple, separate crimes, a court must "look[] to a limited class of documents * * * to determine what crime," among the various statutory alternatives, "[the] defendant was convicted of." *Id.* at 505-506. Such documents include a case's "charging documents," as well as the "jury instructions and verdict forms" used. *Johnson* v. *United States*, 559 U.S. 133, 144 (2010). After consulting such documents "to determine which statutory phrase was the basis for the [defendant's] conviction," *ibid.*, the court does "as the categorical approach commands" and conducts an elements-based analysis to decide whether the defendants' crime categorically qualifies as the relevant offense, *Mathis*, 579 U.S. at 506—here, a crime of violence.

2. The modified categorical approach applies here because, at 18 U.S.C. 248(a), the FACE Act sets forth multiple, alternative crimes that carry different punishments. Congress enacted the FACE Act to address escalating violence and obstructive interference with reproductive healthcare providers and facilities, as well as with individuals seeking or using their services. S. Rep. No. 117, 103d Cong., 1st Sess. 3-10 (1993). Among other things, the FACE Act makes it unlawful for any person to

> by force or threat of force or by physical obstruction, intentionally
> injure[], intimidate[] or interfere[] with or attempt[] to injure,

intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services.

18 U.S.C. 248(a)(1).

In Section 248(b), the FACE Act sets forth different penalties for violent and nonviolent misdemeanor violations of Section 248(a)(1). Where a defendant uses "exclusively a nonviolent physical obstruction" to violate the Act, the term of imprisonment for a first-time offense of the statute may "be not more than six months." 18 U.S.C. 248(b). For all other misdemeanor violations of Section 248(a)(1)—namely, where a person, "by force or threat of force or by physical obstruction," intentionally injures, intimidates, or interferes with a person's receipt or provision of reproductive health services—the term of imprisonment for a first-time offense may not be "more than one year." 18 U.S.C. 248(b)(1). In still other circumstances, the Act sets forth statutory alternatives that, when found beyond a reasonable doubt, amount to felony offenses with different statutory maximum sentences. 18 U.S.C. 248(b).

Because the statute contains a specific offense for *exclusively nonviolent* physical obstruction and imposes a less severe punishment, the more serious misdemeanor in Section 248(a)(1) with its harsher punishment must be read to apply to conduct that necessarily includes force, threat of force, or *violent* physical obstruction. Handy does not disagree, arguing that because Section 248(b)(2)

"provides a less severe punishment only for 'exclusively nonviolent physical obstruction,'" the "higher punishment in subsection (b)(1)" applies when a defendant's physical obstruction "is violent" or is accompanied by "force" or "threat of force." Mot. 18, 20-21; see also Mot. 20-21 (acknowledging that the more serious Section 248(a)(1) misdemeanor encompasses conduct that is "not 'exclusive[ly]'" nonviolent).

\* \* \*

In summary, the district court correctly held that "the FACE Act is 'divisible'"—thus warranting use of the modified categorical approach—because it "defines 'multiple crimes'" in Section 248(a)(1) and "delineat[es] different penalties" for each of those crimes in Section 248(b). Doc. 397, at 2 (quoting *Mathis*, 579 U.S. at 518); see also *United States* v. *Khatallah*, 41 F.4th 608, 633 (D.C. Cir. 2022) (recognizing the general rule that "two statutory alternatives are distinct offenses if they carry different punishments"), cert. denied, 143 S. Ct. 2667 (2023).

C.     *Defendants' Section 248(a)(1) Offense Is A "Crime Of Violence" That Requires Mandatory Detention Under 18 U.S.C. 3143(a)(2)*

Applying the modified categorical approach, the district court correctly determined that defendants were convicted of "[t]he more serious misdemeanor" under Section 248(a)(1), and that this offense "necessarily" constitutes a crime of violence under the Bail Reform Act. Doc. 397, at 3.

1. The record establishes that defendants were charged with and convicted of the more serious misdemeanor offense in Section 248. See *Johnson*, 559 U.S. at 144 (summarizing the documents a court can consider under the modified categorical approach). As the district court discussed, the superseding indictment alleged that defendants violated Section 248 "by [using] force"—and in the alternative, by using "physical obstruction"—to "intentionally injure, intimidate, and interfere with" a patient and employees of the clinic. Doc. 113, at 7; see also Doc. 397, at 3. Consequently, with the jury having been given the opportunity to "convict for force or violent physical obstruction under 18 U.S.C. § 248(b)(1) or for nonviolent physical obstruction under subsection (b)(2)," the court "prepared a special verdict form" to find either or both offense options. Doc. 397, at 3. Using that form, the jury made a "special finding" that "each Defendant used force to prevent access to or provision of reproductive health services at the clinic at issue." Doc. 397, at 1.[5]

2. The more serious Section 248 misdemeanor offense for which defendants were convicted categorically qualifies as a crime of violence under the Bail Reform Act. As discussed above, a crime of violence under the Bail Reform Act is "an offense that has as an element of the offense the use, attempted use, or

---

[5] The jury found that "Defendants also used physical obstruction" in violating Section 248. Doc. 397, at 1.

threatened use of physical force against the person or property of another." 18 U.S.C. 3156(a)(4)(A). As the Supreme Court explained in *Johnson*, "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140 (emphasis omitted) (construing the Armed Career Criminal Act at 18 U.S.C. 924(e)(2)(B)(i)); see also *Stokeling* v. *United States*, 139 S. Ct. 544, 550-554 (2019) (explaining that "force" has a well-understood meaning and that *Johnson* "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality"). And later, in *Stokeling*, the Court rejected a claim that "minor uses of force do not constitute 'violent force,'" holding that "force is 'capable of causing physical injury' within the meaning of *Johnson* when it is sufficient to overcome a victim's resistance." *Stokeling*, 139 S. Ct. at 554.

The elements of defendants' crime of conviction satisfy the definition of a crime of violence. The first two types of conduct covered by the more serious misdemeanor in Section 248(a)(1) (force or threat of force) expressly fall within the definition of a crime of violence. See 18 U.S.C. 3156(a)(4)(A) (requiring "the use * * * or threatened use of physical force"); see also Tr. 38 (jury instructions defining "force" as "power and/or violence exerted upon or against a person or property"). Accordingly, they categorically qualify as such an offense. That is

especially so where, to convict, the jury must find the defendant used force or threat of force to intentionally cause injury, intimidation, or interference.

The third type of conduct (violent physical obstruction) also categorically qualifies as a crime of violence under the Bail Reform Act. The FACE Act requires that a defendant's violent physical obstruction "intentionally injure[], intimidate[] or interfere[] with" a person because of their provision or receipt of reproductive health services. 18 U.S.C. 248(a)(1). Violent physical obstruction that injures a person clearly constitutes a crime of violence. So, too, does violent physical obstruction that intimidates a person because it involves the threat of force to place an individual "in reasonable apprehension of *bodily harm*" to themselves or another. 18 U.S.C. 248(e)(3) (emphasis added); see also Tr. 39. And unlike nonviolent physical obstruction (which can intentionally interfere with a person's receipt or provision of services by impeding access to a facility without conduct capable of producing pain or physical injury), *violent* physical obstruction that interferes with a person qualifies as a crime of violence because it involves the threat or "potentiality" of force, *Stokeling*, 139 S. Ct. at 554, to "restrict [the] person's freedom of movement," 18 U.S.C. 248(e)(2); see also Tr. 39.

D.    *Handy Misunderstands And Misreads The FACE Act When Discussing And Applying The Modified Categorical Approach*

Handy challenges the district court's application of the modified categorical approach and its conclusion that the more serious Section 248(a)(1) misdemeanor

categorically constitutes a crime of violence under the Bail Reform Act. However, her arguments rest on misunderstandings and misreadings of the FACE Act and should be rejected.

1. First, Handy appears to suggest that the district court should have applied the categorical approach, and not the modified categorical approach, in analyzing her crime of conviction. Mot. 8-12, 17. However, Handy's own discussion of Supreme Court case law confirms that the district court's choice was the correct one. As Handy acknowledges, "the Supreme Court has generally applied a 'modified categorical rule' when a crime may be committed by alternative elements." Mot. 10. And "[i]f statutory alternatives carry different punishments, then * * * they must be elements." Mot. 10 (quoting *Mathis*, 579 U.S. at 518) (first alteration in original).

That is exactly the case here. As discussed, Section 248(a)(1) sets forth separate criminal offenses that contain different elements and impose different punishments. One of those offenses applies to conduct that exclusively involves "nonviolent physical obstruction," and it carries a sentence of up to six months. 18 U.S.C. 248(b). The second offense applies to conduct involving force, threat of force, or violent physical obstruction, and it carries a sentence of up to one year. 18 U.S.C. 248(a) and (b). Consequently, as Handy admits, Section 248(a)(1) "subjects 'exclusively nonviolent physical force' to a lesser punishment," thus

"rendering it a separate element" in a separate crime. Mot. 17. The modified categorical approach therefore applies in this case.

2. Second, Handy argues that, under the Supreme Court's plurality and concurring decisions in *Borden*, Section 248(a)(1)'s more serious misdemeanor crime is not categorically a crime of violence because that provision "forbids the use of 'force'"—including "the reckless use of force"—"without requiring that [the force] be directed 'against another.'" Mot. 14 (emphasis omitted) (quoting 18 U.S.C. 248(a)(1)). Specifically, Handy cites the conclusions in *Borden*'s plurality opinion that the Armed Career Criminal Act's use of "[t]he phrase 'against another,' when modifying the [phrase] 'use of force,' demands that the perpetrator direct his action at, or target, another individual," and that "[r]eckless conduct is not aimed in that prescribed manner." Mot. 13 (emphasis omitted) (quoting *Borden*, 141 S. Ct. at 1825); see also Mot. 13 ("Justice Thomas's deciding concurrence * * * agreed that a 'crime of violence' excludes reckless force."). Handy argues that because Section 248(a)(1)'s more serious misdemeanor ostensibly includes reckless uses of force, the offense "sweeps more broadly than the crime-of-violence meaning of 'force.'" Mot. 17.

But this argument fails at the outset because Section 248(a)(1)'s more serious misdemeanor *does* "demand[] that the perpetrator direct his action at, or target, another individual," *Borden*, 141 S. Ct. at 1825, and it therefore *does not*

proscribe merely reckless conduct. Section 248(a)(1) prohibits an individual from using force, threat of force, or violent physical obstruction to "intentionally injure[], intimidate[] or interfere[] with any person" because that person is or has been obtaining or providing reproductive health services, or seeks to do so. 18 U.S.C. 248(a)(1). The offense therefore requires that a defendant have engaged in certain prohibited conduct when targeting a particular individual, with the goal of subjecting the individual to a specific result. Accordingly, Section 248(a)(1) prohibits "intentional[]," 18 U.S.C. 248(a)(1), and not merely reckless, conduct. See also *Voisine* v. *United States*, 579 U.S. 686, 691-692 (2016) (contrasting reckless conduct, which involves conscious disregard of a substantial risk of harm, with intentional conduct, which has a "result as a 'conscious object'" of the action (citation omitted)).

Given Section 248(a)(1)'s explicit reference to intentional conduct, it is unsurprising that Handy fails to cite *any* case holding that merely reckless uses of force can violate the statute. See Mot. 14-17. To the contrary, courts—including one from this circuit—have held that the statute requires intentional action and a specific purpose by the defendant. See, *e.g.*, *United States* v. *Gregg*, 226 F.3d 253, 262 (3d Cir. 2000) (describing "the activity regulated by FACE" as including "the intentional interference and intimidation of persons obtaining and providing reproductive health services" through "physical obstruction and destruction of

reproductive health clinics"), cert. denied, 532 U.S. 971 (2001); *United States* v. *Retta*, 840 F. Supp. 2d 262, 268 (D.D.C. 2012) (requiring that the defendant have "engaged in the obstructive acts because of his belief that his targets were obtaining or providing such services" (emphasis omitted)); *United States* v. *Wilson*, 2 F. Supp. 2d 1170, 1171 (E.D. Wis. 1998) (requiring "intentional interference or attempt to interfere with persons entering or exiting [a] clinic * * * done for the express purpose of preventing such persons from obtaining or providing reproductive health services"), aff'd, *United States* v. *Balint*, 201 F.3d 928 (7th Cir. 2000).

3. Unable to locate any supporting case law, Handy resorts to hypotheticals that purport to show that a defendant could be convicted of Section 248(a)(1)'s more serious misdemeanor using reckless force that does not target any person. The hypotheticals, however, show nothing of the sort. Handy first envisions an individual who "willfully run[s] at full speed into an open clinic doorway" to "intimidate someone seeking an abortion." Mot. 16. That conduct involves an intentional, threatened use of force—not a reckless use of force—against another person and therefore would satisfy the definition of a crime of violence. See 18 U.S.C. 3156(a)(4)(A). Her hypothetical posits, however, that another person "suddenly appears in the doorway," meaning that a different individual—the person standing in the doorway and not the person seeking an abortion—is

potentially impacted by the runner's conduct. Mot. 16. However, the hypothetical still involves an intentional, threatened use of force *against the person seeking an abortion*. The fact that an additional person may be harmed is immaterial to the question of whether the runner violated Section 248(a)(1), though it could affect sentence imposed. See 18 U.S.C. 248(b) (permitting a ten-year sentence "if bodily injury results").

Handy's second hypothetical fares no better. It involves an individual who "violently disable[s] [their] own vehicle" by "destroying its tires and wheels with a sledgehammer[] at the end of an abortion clinic's driveway in order to prevent staff and patients from entering." Mot. 16. In Handy's opinion, such conduct involves force used against the individuals' "own * * * property," and not "directed at or intended to harm another." Mot. 16 (emphasis omitted).

Such conduct, however, would not alone support conviction for Section 248(a)(1)'s more serious misdemeanor because the individual's use of force was limited to *creating* a physical obstruction. Indeed, it is the abandonment of the vehicle in the clinic's driveway that has caused interference with the clinic's staff and patients. See also 18 U.S.C. 248(e)(4) (defining "interfere with"); Tr. 38 (same). A different conclusion might apply, however, if the individual's act amounted to a "threat of force" against a patient or provider, given the individual's desire to foreshadow a subsequent use of force capable of causing physical pain or

injury if the patient or provider nevertheless proceeds to access or provide reproductive health services. It is this circumstance that Section 248(a)(1)'s more serious misdemeanor reaches, and it is readily clear that, there, the individual's conduct is directed at the person or property of another.

4. Finally, Handy argues that "misdemeanor 'physical obstruction'" under Section 248(a)(1) "is not a 'crime of violence' because it can necessarily include even 'nonviolent physical obstruction.'" Mot. 17 (quoting 18 U.S.C. 248(b)(2)). This ignores the statute's creation of *separate* misdemeanor offenses—one that exclusively involves nonviolent physical obstruction, and another that encompasses force, threat of force, and violent physical obstruction, see *supra*, pp. 11-13. And explained above, that more serious misdemeanor offense is categorically a crime of violence. See *supra*, pp. 13-16; see also Mot. 20-21 (acknowledging that "[t]he higher punishment in subsection (b)(1) can thus apply to 'physical obstruction' either when it is violent or when it is * * * not 'exclusive[ly]'" nonviolent).[6]

---

[6] Handy references (Mot. 18-19) this Court's decision in *United States* v. *Mahoney*, 247 F.3d 279 (D.C. Cir. 2001), which affirmed a district court's conclusion that, by "kneel[ing] and pray[ing] before a door that was mainly used as an emergency exit" for a reproductive health services clinic, the defendant had committed interference under Section 248(a)(1). *Id.* at 284. Because the appeal challenged the issuance of a permanent injunction and not the imposition of any criminal sentence, *id.* at 282, this Court had no occasion to decide whether such

*E.  Handy Identifies No Error In The District Court's Finding That No Exception To Presentence Detention Under 18 U.S.C. 3143(a)(2) Applies*

As discussed above, the Bail Reform Act generally requires presentence detention when an individual has been convicted of a crime of violence, as Handy was here.  The exception is where (1) the court finds that "there is a substantial likelihood that a motion for acquittal or new trial will be granted" or the government has "recommended that no sentence of imprisonment be imposed on the person," and (2) the court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. 3143(a)(2)(A) and (B).  Handy neither challenges the district court's conclusion that defendants failed to demonstrate any "substantial likelihood of success on any post-trial motion," nor refutes the court's finding that the government "w[ill] seek a term of incarceration at sentencing."  Doc. 397, at 1. Consequently, no exception to presentence detention applies under 18 U.S.C. 3143(a)(2).

If this Court were to disagree with the government's position, it should remand for further proceedings under 18 U.S.C. 3143(a)(1) for the district court to address the terms and conditions of release under the Bail Reform Act.

---

conduct falls within Section 248(a)(1)'s less serious or more serious misdemeanor offense.

## CONCLUSION

This Court should deny Handy's motion.

Respectfully submitted,

MATTHEW M. GRAVES
  United States Attorney

JOHN CRABB JR.
  Assistant United States Attorney
  United States Attorney's Office
    District of Columbia
  601 D Street NW
  Washington, D.C.  20001
  (202) 252-1794

KRISTEN CLARKE
  Assistant Attorney General

s/ Jason Lee
ERIN H. FLYNN
JASON LEE
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 598-1317

SANJAY H. PATEL
  Trial Attorney
  Department of Justice
  Civil Rights Division
  Criminal Section
  4 Constitution Square
  150 M Street NE, 7.121
  Washington, D.C.  20530
  (202) 307-6188

## CERTIFICATE OF COMPLIANCE

I certify that this response:

(1) complies with the length limits permitted by D.C. Circuit Rule 9, Federal Rule of Appellate Procedure 27(d)(1)-(2), D.C. Circuit Rule 27, and D.C. Circuit Rule 32 because the response contains 5176 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f), if applicable; and

(2) complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

s/ Jason Lee
JASON LEE
Attorney

Date: September 12, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2023, I filed the foregoing UNITED STATES' OPPOSITION TO APPELLANT'S FRAP 9(A) MEMORANDUM FOR RELEASE PENDING SENTENCING with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, which will send notice to counsel of record by electronic mail. I further certify that the following counsel not registered for the appellate CM/ECF system will be served by FedEx at the following addresses:

John C. Kiyonaga
John C. Kiyonaga Law Office
600 Cameron Street
Suite 400
Alexandria, VA 22314

Howard J. Walsh III
3712 Cardiff Court
Chevy Chase, MD 20815

s/ Jason Lee
JASON LEE
Attorney