No. 23-3143

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

## UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

## LAUREN HANDY, *et al.*,

Defendants-Appellants

———————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————

## APPENDIX TO UNITED STATES' OPPOSITION TO APPELLANT'S FRAP 9(A) MEMORANDUM FOR RELEASE PENDING SENTENCING

———————————

MATTHEW M. GRAVES
  United States Attorney

JOHN CRABB JR.
  Assistant United States Attorney
  United States Attorney's Office
    District of Columbia
  601 D Street NW
  Washington, D.C.  20001
  (202) 252-1794

KRISTEN CLARKE
  Assistant Attorney General

ERIN H. FLYNN
JASON LEE
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 598-1317

*(see inside cover for co-counsel)*

*(continuation of counsel)*

SANJAY H. PATEL
Trial Attorney
Department of Justice
Civil Rights Division
Criminal Section
4 Constitution Square
150 M Street NE, 7.121
Washington, D.C.  20530
(202) 307-6188

# TABLE OF CONTENTS

**PAGE**

Transcript of Jury Trial
Aug. 25, 2023......................................................................................... A-1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

United States of America,          ) Criminal Action
                                   ) No. 1:22-cr-00096-CKK
                    Plaintiff,     )
                                   )
vs.                                ) **Jury Trial**
                                   )
Lauren Handy, John Hinshaw,        )
Heather Idoni, William             )
Goodman, and Herb Geraghty,        ) Washington, D.C.
                                   ) **August 25, 2023**
                    Defendants.    ) Time:  9:00 a.m.
_____

**Transcript of Jury Trial**
**Held Before**
**The Honorable Colleen Kollar-Kotelly**
**United States Senior District Judge**


A P P E A R A N C E S

For the Government:      **John Crabb, Jr.**
                         UNITED STATES ATTORNEY'S OFFICE
                         FOR THE DISTRICT OF COLUMBIA
                         601 D Street, Northwest
                         Washington, D.C. 20579

                         **Sanjay H. Patel**
                         UNITED STATES DEPARTMENT OF JUSTICE
                         950 Pennsylvania Avenue, Northwest
                         Washington, D.C. 20004

For the Defendant Lauren Handy (1):

                         **Martin A. Cannon**
                         THOMAS MORE SOCIETY
                         16983 370th Street
                         Carson, Iowa 51525-4121

                         **Stephen M. Crampton**
                         THOMAS MORE SOCIETY
                         P.O. Box 4506
                         Tupelo, Mississippi

1            A P P E A R A N C E S (continued)

2     For the Defendant John Hinshaw (6):
                          **Alfred Guillaume, III**
3                         LAW OFFICES OF ALFRED GUILLAUME III, LLC
                          1350 Connecticut Avenue, Northwest
4                         Washington, D.C. 20036

5     For the Defendant Heather Idoni (7):
                          **Robert J. Dunn**
6                         ROBERT J. DUNN, P.C.
                          1413 Center Avenue
7                         Bay City, Michigan 48708

8     For the Defendant William Goodman (8):
                          **Howard J. Walsh, III**
9                         3712 Cardiff Court
                          Chevy Chase, Maryland 20815
10
      For the Defendant Herb Geraghty (10):
11                        **John C. Kiyonaga**
                          JOHN C. KIYONAGA LAW OFFICE
12                        600 Cameron Street
                          Alexandria, Virginia 22314
13    _____

14    Stenographic Official Court Reporter:
                          Nancy J. Meyer
15                        Registered Diplomate Reporter
                          Certified Realtime Reporter
16                        333 Constitution Avenue, Northwest
                          Washington, D.C. 20001
17                        202-354-3118

18    Proceedings recorded by mechanical stenography.  Transcript
      produced by computer-aided transcription.
19

20

21

22

23

24

25

I N D E X

PAGE:

Jury Instructions.................................... 14

1        P R O C E E D I N G S

2        (Proceedings held out of the presence of the jury.)

3        THE COURTROOM DEPUTY:  Criminal Case 22-096, the

4    United States v. Lauren Handy, John Hinshaw, Heather Idoni,

5    William Goodman, Herb Geraghty.

6        Counsel, would you please identify yourself for the

7    record, starting with the government.

8        MR. CRABB:  Good morning, Your Honor.  John Crabb and

9    Sanjay Patel for the United States.

10        THE COURT:  Good morning.

11        Counsel for Ms. Handy.

12        MR. CANNON:  Good morning.  Martin Cannon,

13    Steve Crampton with Lauren Handy.  Dennis Boyle and

14    Blerina Jasari are not present.

15        THE COURT:  All right.  Thank you.

16        For Mr. Hinshaw.

17        MR. GUILLAUME:  Good morning, Your Honor.  Alfred

18    Guillaume for John Hinshaw, who is seated to my left.

19        THE COURT:  All right.  Good morning to both of you.

20        Counsel for Ms. Idoni.

21        MR. DUNN:  Good morning, Your Honor.  Robert Dunn

22    appearing for Heather Idoni, who is present in the courtroom.

23        THE COURT:  All right.  For Mr. Goodman.

24        MR. WALSH:  Good morning, Your Honor.  Howard Walsh

25    with Mr. Goodman.

1          THE COURT:  All right.  And for Mr. Geraghty.

2          MR. KIYONAGA:  Good morning, Your Honor.  John

3     Kiyonaga for Mr. Geraghty, who is present.

4          THE COURT:  All right.  Good morning, everyone.

5          So to start the day, we have a note from one of the

6     jurors, which I'll read into the record.  It's from Juror

7     No. 15.  "Good day, Your Honor.

8          "Day 3 of clinic procedure was mentioned several times

9     re two patient witnesses.  . . . seeking clarity re clinic

10    procedure and the discomfort/pain these patients seem to be

11    experiencing" -- and there's an arrow -- "what happens on Day

12    1, 2, 3???  Thank you!"  And then the -- signed 15.

13         My suggestion for answering it is, the record does not

14    reflect specifics about the clinical procedures that the two

15    witnesses received at the clinic according to the testimony --

16    at the clinic.  The record is closed.  Remember, your

17    recollection of the record controls.

18         I think there's not much to say about it.  We certainly

19    wouldn't answer it.

20         MR. CANNON:  I think that's appropriate, Judge.

21         MR. DUNN:  That's the way I think it should be

22    handled, Judge.

23         THE COURT:  Okay.  All right.  So what -- what I'm

24    planning on doing is -- I'm not going to answer it now.  I'm

25    going to do all the -- read the instructions, and then we have

1    a choice of reading the question at the end in the record and

2    giving the answer or sending the note back with a typewritten

3    answer for the whole jury instead of their hearing it orally.

4          MR. CANNON:  Judge, I was distracted for a second.  I

5    don't --

6          THE COURT:  Sure.  I'm going to read the whole

7    instruc- -- I'm not going to deal with the question upfront.

8    I'm going to read the instructions, then say we have a question

9    and -- she's not one the alternates -- so we have a question

10   from one of the jurors, and I can either read her question to

11   the whole jury and give them the answer, because it shouldn't

12   be just to her; it should be for everybody.  Or I can send the

13   question back, along with a typewritten answer for them.

14          So it's your -- I don't know whether people have views

15   about it.  Either way, you know, works.

16          MR. CRABB:  We'd defer to the Court, Your Honor.

17          THE COURT:  I'm sorry?

18          MR. CRABB:  We'd defer to the Court.

19          MR. CANNON:  I think my gut says send the typewritten

20   answer back.

21          THE COURT:  Okay.  I can do that.  That's not a

22   problem.  I can just indicate at the end we did get a question

23   from one of the jurors.  I'm sending the question back, along

24   with an answer.  And we'll just -- it's a short thing.  We can

25   type it up.

1          Okay.  I think that's it.

2          What I will do before we let the alternates go is to

3     bring you up -- not bring you up.  Do the intercom, make sure

4     there's nothing additional.  You know, sometimes there's some

5     issue or something's forgotten, you know, whatever.

6          You've preserved the record so you don't need to raise

7     what you already have.  We already have that on the record.  So

8     this would be something new.  You know, occasionally there's

9     something we haven't thought of that needs to be clarified or

10    something of that nature.  So I'd want to do that before I let

11    the alternates know.  I would ask once they leave and start, go

12    into the back, we need to deal with the thumb drive in terms of

13    what they're going to get so that they can look at the videos.

14    I think there's no paper exhibits, as I recall.  It's all --

15    it's all video, I think.

16              MR. CANNON:  Right.  And the thumb --

17              THE COURT:  Yeah.  So we just need to make the thumb

18    drive -- everybody agrees that what's on it is what got

19    admitted.

20              MR. CANNON:  Okay.

21              MR. CRABB:  Your Honor, there's several exhibits

22    that are not video.  There's the appointment card and there's

23    some social media.  So there are a few things that are not

24    videos.

25              THE COURT:  Okay.  Then what I'll have you do --

1    they'll go back, get themselves settled, talk about the

2    foreperson.

3          You will look at the evidence and sign off that this is

4    the evidence that's going back.  We want to make sure everybody

5    agrees with what we're sending back.  So it will be whatever

6    the paper exhibits are and then whatever thumb drives there are

7    relating to, you know, what actually got admitted.

8          MR. CRABB:  Yes, Your Honor.

9          THE COURT:  Okay?

10         And then we will find out where you're going to be in

11    terms of making sure that if we get notes or something else.  I

12    don't have anything else today, so if you want to hang out in

13    the courtroom, we can open up the witness rooms, if that's

14    easier for people.

15         If you're not too far, I don't have a problem, as long

16    as when we call, you're there and I don't get voice mail or you

17    wind up having to be in the courthouse, and then you're going

18    to be responsible for your clients.

19         MR. CRABB:  Along those lines, Your Honor, how soon

20    do we need to be back in court once we get word of a note?

21         THE COURT:  As soon as you can.  They're not --

22    once -- what I will do, I'll say upfront, some of the notes

23    will be -- we need paper or, you know -- they're not asking

24    anything that's substantive.  I keep track of all those notes,

25    and I'll read them into the record at the end.

1     But if there's anything that they're asking, anything

2  that's substantive -- what I can do is if -- you know, is call

3  you and ask if we can send something back that says, I can't

4  comment.  You don't need to all come back to the court to do

5  that.  If it's something more substantive, then you need to

6  come back.  Okay?  So unless it's, you know, I need pencils or

7  when are we eating lunch or something like that, I won't bother

8  calling you.

9     If it's anything other than that, then I'll contact you

10 and either have you come back or, you know, as I said,

11 sometimes they ask us to comment -- God bless you -- on

12 something that, you know, I'm not going to comment.  I could

13 just send it back.  But I'll consult you.  I'm not going to

14 send that note back without talking to you.

15     MR. CRABB:  Thank you.

16     THE COURT:  We need to know where you are.  They have

17 lunch from 12:30 to 1:30.  You need to come back at the end of

18 the day when I excuse them.  That's when we get notes and

19 that's when we get verdicts occasionally.  I don't need you in

20 the mornings when they first come in.  We do keep track of

21 their -- time that they're back there, and I've asked -- I

22 asked the foreperson -- which I'll be telling them -- to keep

23 track of when they take breaks, which is fine.  I don't have a

24 problem with that.

25     But if they could just, you know, note when they've

10

1    taken a break; that they're not, you know, deliberating.  So we

2    have some sense of, roughly, how long they're deliberating.

3              MR. CRABB:  Thank you, Your Honor.

4              THE COURT:  Mr. Cannon.

5              MR. CANNON:  So we do things a little bit differently

6    in Nebraska.  I want to make sure I get this right.  Can I

7    assume the jury will not be deliberating over the weekend.

8              THE COURT:  No.  They will leave at 5 o'clock.  We

9    have people here who have daycare issues.  They have told us.

10   So I promised them 5:00 promptly they're gone -- or just before

11   that.  So I will bring them back, say, at a quarter to 5:00.

12   And I want you-all back here.

13             And if we haven't gotten a note or something else, then,

14   you know, they'll be excused.  But I want you here because

15   every once in a while we do get a note or a verdict or

16   something that happens at the end of the day.

17             MR. CANNON:  Okay.  And then they won't be

18   deliberating Monday?

19             THE COURT:  They -- I'm not going to have them

20   deliberate.  Two people have made -- one's made a doctor's

21   appointment and somebody else has something else.  So if they

22   decide among themselves they want to, they'll let me know.

23   I've had a jury recently that wanted to sit until 6:00 to get

24   things done.  So I go by what they say.  I don't think they're

25   going to do it beyond 5:00.

A-10

1           And Monday -- I mean, I'm here.  I'm doing other

2     matters, but I don't want to make -- since we promised the

3     two -- you know, everybody that they would do it, they can go

4     do something else, and then come back on Tuesday.

5           MR. CANNON:  Some of our attorneys and I are trying

6     to coordinate travel plans over the weekend --

7           THE COURT:  I know.  I prefer you did not leave so I

8     don't have a problem where I can't get you back for a verdict

9     or a note, or your client.

10          So you're all from out of town.  You need to hang out so

11    you're here.

12          MR. CANNON:  If one of us can get back and the other

13    can't, is that adequate?

14          THE COURT:  I mean, in terms of your group?

15          MR. CANNON:  Yeah.

16          THE COURT:  Yeah.  I mean, you don't all need to be

17    here, but -- because she has several.  Somebody else has a

18    single one pretty much.  As long as that person is responsible

19    and the client is willing to have that person answer notes and

20    the verdict.

21          MR. CANNON:  Sure.  As far as when a verdict comes

22    back, do you care which of our attorneys appears for it?

23          THE COURT:  No.  No.  As long as Ms. Handy is happy

24    with whoever is here.

25          MR. CANNON:  Sure.

```
 1            THE COURT:  In other words, if she wants you,
 2    Mr. Cannon, then I expect you to be here.  The others don't
 3    need to.
 4            MR. CANNON:  Right.
 5            THE COURT:  But I don't want you -- my concern is
 6    that -- Mr. Dunn had trouble getting here.  Ms. Idoni did as
 7    well.  I don't want to that have issue.
 8            MR. CANNON:  Right.  Thanks.
 9            THE COURT:  Travel plans, frankly, are -- if you look
10    at the map and what they're canceling, I mean, they're
11    canceling things right and left based on the weather.  I'm
12    not -- I don't want to get stuck where we can't take verdicts.
13            MR. CANNON:  Right.  Thanks.
14            THE COURT:  And then you can't let the jury go.
15            MR. CANNON:  Okay.
16            MR. CRAMPTON:  Your Honor, will we have clarity
17    regarding whether the jury will deliberate on Monday by the end
18    of day today?
19            THE COURT:  Yes.  What -- what I was going to do is
20    just, you know -- I don't want to force the people that have
21    made plans to change it because they will be annoyed.
22            So -- you know, my feeling is that I was going to say to
23    them -- you know, later in the day, we'll see where they are --
24    is to say, unless they tell me otherwise, I'm assuming that --
25    you know, that they would -- that people have made arrangements
```

1     for Monday and, therefore, they are not sitting.  If they --

2     they'll speak up if they've decided to the contrary.  They may

3     decide they want to -- you know, near the end of day, they may

4     feel they just need a little more.  They'll come in on Monday.

5     I don't know when his doctor's appointment is, for instance.

6          MR. KIYONAGA:  Your Honor, John Kiyonaga for

7     Mr. Geraghty.

8          Your Honor, my office is in Alexandria, which is

9     20 minutes away, unless we're talking about the end of the day,

10    rush hour.

11         THE COURT:  Well, I need you at the end of the day.

12    And what I would do is -- you can check in -- you know, people

13    will be here.  I get notes before they go -- before lunch and

14    after lunch, frankly.  So they're eating lunch around 12:30.

15    1:30 is the end of their break.  So we need to make sure we

16    know where you are; you're not at a restaurant someplace.

17         Other than that, you know, it's -- I don't want to spend

18    a lot of time because if they're -- we get notes and they need

19    an answer, you know, waiting half an hour for them to get the

20    answer.  So it's up to you as to whether -- you may want to

21    hang out for the day and sort of see how this works, whether

22    we're going to get -- usually you either get a lot of notes or

23    you don't; you just get whatever the verdict is, has been my

24    experience.

25         So we'll either find out if they're a note- -- you know,

1    note-senders -- maybe they are, based on this -- or not.

2              MR. KIYONAGA:  Very well, ma'am.  I'll give

3    Ms. Patterson my cell phone because I --

4              THE COURT:  Yeah.  And I want to make sure it doesn't

5    go to voice mail.  If it goes to voice mail, you have to be in

6    the courthouse the whole time.  That's my rule.  I'm not

7    looking for you.  I have other stuff that we need to do.

8              MR. KIYONAGA:  No, I'm reachable at any time on cell.

9              THE COURT:  Okay.  All right.

10             MR. KIYONAGA:  Thank you.

11             THE COURT:  So I don't want you-all disappearing.

12   You need to be here, you know, in some form.

13        Okay.  I'll go over some of this before, but I just

14   wanted to, you know, cover a little bit of it.  I'll indicate

15   at the beginning to the juror that we did receive a note and it

16   will be answered at the end so she's not waiting to hear what

17   the answer is.

18             (Proceedings held in the presence of the jury.)

19             THE COURT:  Good morning, members of the jury.

20        I would like to address those that are in the courtroom.

21   The instructions, I want to make sure that they can hear it and

22   are not distracted by people going in and out.  So all we're

23   going to talk about is instructions.  If you don't want to stay

24   for them, this is the time to leave.  I would ask, otherwise,

25   that you -- if you want to stay, that's fine.  I don't have a

1   problem with it.  I just don't want people going in and out.

2   The heads tend to switch because you make noise.

3          We did get a question from one of the jurors, and I'm

4   going to answer the question after I've given you all of the

5   instructions.  Okay?

6          So -- and let me tell you, you don't have to take notes.

7   You're going to get a copy of the instructions; in fact, two

8   sets of the instructions that I'm going to give you.  If you

9   want to note, you know, something you want to go back to

10  particularly, that's fine, but you will get copies of this so

11  you can look at them yourself.  So this will give you an

12  opportunity to hear what the instructions are so you know

13  what's in this in terms of going back and making sure you know.

14  And then you'll have actually written copies so you'll be able

15  to go back and look carefully at them.

16         So, the time has now come when all of the evidence is in

17  and you've heard the closing arguments of the lawyers.  It's

18  now up to me to instruct you on the law that should control

19  your deliberations in this case.  My instructions will be

20  roughly divided into three parts.

21         First, I'll talk with you about some general principles

22  of the law.

23         And some of that you will have heard already.

24         Second, I'll discuss with you instructions that apply to

25  the elements of the offenses charged in this case.

1    Finally, I will have some closing remarks about your

2  deliberations in this matter.

3    So let me begin with some general principles.  First,

4  I'm sure you understand by now that the jury and the Court --

5  that's you and I -- have quite different responsibilities in a

6  trial.

7    My function is to conduct the trial in an orderly, fair,

8  and efficient manner; to rule on questions of law; and to

9  instruct you on the law that applies in this case.

10    It is your duty to accept the law as I instruct you.

11  You should consider all the instructions as a whole.  You may

12  not ignore or refuse to follow any of them.  If counsel or a

13  witness has stated the law differently than the Court, my

14  instructions of the law controls.  So if during closings you

15  remember them saying something different, this is what's

16  controlling, what I'm telling you.

17    Now, in terms of functions of the jury, your function,

18  as the jury, is to determine what the facts are in this case.

19  You are the sole judges of the facts.  While it's my

20  responsibility to decide what is admitted as evidence during

21  the trial, you alone decide what weight, if any, to give to

22  that evidence.  You alone decide the credibility or

23  believability of the witnesses.

24    As human beings, we all have personal likes and

25  dislikes, opinions, prejudices, and biases.  Generally, we are

 1    aware of these things, but you should also consider the

 2    possibility that you have implicit biases; that is, biases of

 3    which you may not be consciously aware.

 4         Personal prejudices, preferences, or biases have no

 5    place in a courtroom where our goal is to arrive at a just and

 6    impartial verdict.  All people deserve fair treatment in our

 7    system of justice regardless of any personal characteristic,

 8    such as race, national or ethnic origin, religion, age,

 9    disability, sex, gender identity or expression, sexual

10    orientation, education, or income level.  You should determine

11    the facts solely from a fair consideration of the evidence.

12    You should decide the case without prejudice, fear, sympathy,

13    favoritism, or consideration of public opinion.  You may decide

14    the case only based on the law and the facts before you.

15         Moreover, you are not to be concerned with the wisdom of

16    any law or rule of law as I state them.  Nor should you be

17    concerned with your opinion, good, bad, or neutral, of the

18    defendants' advocacy or the services the clinic in this case

19    provided at the time of the charged conduct.  It would be a

20    violation of your sworn duty to base a verdict upon any other

21    view of the law than that given in the instructions of the

22    Court, just as it would be a violation of your sworn duty, as

23    judges of the facts, to base a verdict upon anything but the

24    evidence in the case.

25         You may not take anything I may have said or done as

1    indicating how I think you should decide this case.  If you

2    believe that I have expressed or indicated any such opinion, it

3    was unintentional and you should ignore it.  I try and develop

4    no opinions at all.  The verdict in this case is your sole and

5    exclusive responsibility.

6         Now, if any reference by me or the attorneys to the

7    evidence -- and I'm talking about the evidence -- is different

8    from your own memory of the evidence, it's your memory that

9    should control during your deliberations.

10        Now, the lawyers in this case sometimes objected when

11   the other side asked a question, made an argument, or offered

12   evidence that the objecting lawyer believed was not proper.

13   You must not hold such objections against the lawyer who made

14   them or the party they represent.  It is the lawyer's

15   responsibility to object to evidence that they believe is not

16   admissible.

17        If during the course of the trial I sustained an

18   objection to a lawyer's question, you should ignore the

19   question, and you mustn't speculate as to what the answer would

20   have been.  The question is not evidence.  If after a witness

21   answered a question, I ruled the answer should be stricken, you

22   should ignore both the question and the answer, and they should

23   play no part in your deliberations.

24        Again, questions are not evidence and simply because an

25   attorney may have proposed a fact to a witness in a question

1   does not mean that purported fact is true, or even if true, a

2   fact that you may consider.  You may only consider the

3   testimony and exhibits in evidence.

4        Now, during your deliberations you may consider only the

5   evidence properly admitted in this trial.  The evidence in this

6   case consists of the sworn testimony of witnesses and exhibits

7   that were admitted into evidence.

8        When you consider the evidence, you are permitted to

9   draw from the facts that you find have been proven such

10  reasonable inferences as you feel are justified in the light of

11  your experience.  You should give any evidence such weight as

12  in your judgment it's fairly entitled to receive.

13       Now, statements of counsel.  Statements and arguments of

14  the lawyers are important because they are intended to help you

15  understand the evidence and the contentions of the parties.

16  However, the statements and arguments of the lawyers are not

17  evidence.  They are only intended to assist you in

18  understanding the evidence.  Similarly, the questions of the

19  lawyers, again, are not evidence.

20       Moreover, occasionally during argument, a lawyer for one

21  side or the other may appear to state his belief or opinion

22  concerning the facts in the case or the credibility of

23  testimony.  A lawyer is not permitted to state his belief or

24  opinion during argument.  Nor may a lawyer state his belief or

25  opinion during an objection.  He is permitted only to argue to

 1    you based on what the evidence in this case shows.  So if you

 2    think a lawyer has expressed his personal belief or opinion

 3    during argument, you must disregard any such expression and

 4    judge the case only on the evidence.

 5         Now, the burden of proof.  Every defendant in a criminal

 6    case is presumed to be innocent.  This presumption of innocence

 7    remains with the defendant throughout the trial unless and

 8    until the government has proven he or she is guilty beyond a

 9    reasonable doubt.  This burden never shifts throughout the

10    trial.  The law does not require any defendant to prove their

11    innocence or produce any evidence at all.

12         If you find that the government has proven beyond a

13    reasonable doubt every element of a particular offense with

14    which a defendant is charged, it's your duty to find that

15    defendant guilty of that offense.

16         On the other hand, if you find the government has failed

17    to prove any element of a particular offense beyond a

18    reasonable doubt, it's your duty to find one or more of the

19    defendants not guilty of that offense.

20         Now, reasonable doubt.  The government has the burden of

21    proving separately each defendant guilty beyond a reasonable

22    doubt as to each count or charge against them.  Some of you may

23    have served as jurors in civil cases where you were told that

24    it's only necessary to prove that a fact is more likely true

25    than not true, which we call the preponderance of the evidence.

In criminal cases, the government's proof must be more powerful than that.  It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendants' guilt.  There are very few things in this world that we know with absolute certainty, and in criminal cases, the law does not require proof that overcomes every possible doubt.  If based on your consideration of the evidence you are firmly convinced that the defendant is guilty of the crime charged, you must find him or her guilty.  If, on the other hand, you think there's a real possibility that a defendant is not guilty, you must give him or her the benefit of the doubt and find him or her not guilty.

Direct and circumstantial evidence.  There are two types of evidence from which you may determine what the facts are in this case.  There's direct evidence and there's circumstantial evidence.  When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence.  On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

So let me give you an example.  Assume a person looked out a window and saw that snow was falling.  If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen.  Assume, however, that he looked out a window and saw

1  no snow on the ground and then went to sleep and saw snow on

2  the ground after he woke up.  His testimony about what he had

3  seen would be circumstantial evidence that it had snowed while

4  he was asleep.

5       The law says that both direct and circumstantial

6  evidence are acceptable as a means of proving a fact.  The law

7  does not favor one form of evidence over another.  It is for

8  you to decide how much weight to give to any particular

9  evidence, whether it's direct or circumstantial.  You are

10  permitted to give equal weight to both.  Circumstantial

11  evidence does not require a greater degree of certainty than

12  direct evidence.

13       In reaching a verdict in this case, you should consider

14  all the other evidence presented, both direct and

15  circumstantial.

16       Now, redacted exhibits.  In addition, during the course

17  of the trial, a number of exhibits admitted into evidence were

18  also redacted.  In other words, something was blacked out.

19  Sometimes only portions of an exhibit were admitted, such as a

20  document with some words blacked out or otherwise removed.

21  There are a variety of reasons why only a portion of an exhibit

22  is admitted, including that the other portions are inadmissible

23  or implicate an individual's privacy, in order to conform with

24  local rules of procedure.  As you examine these exhibits, you

25  should consider only the portions that were admitted in these

1    exhibits.  On the whole, you're to decide the facts only from

2    the evidence before you.  So don't speculate as to what's

3    underneath the blacked-out portion.

4         Now, credibility of witnesses.  In determining whether

5    the government has proved the charges against the defendant

6    beyond a reasonable doubt, you must consider the testimony of

7    all the witnesses who have testified.

8         You are the sole judges of the credibility of the

9    witnesses.  You alone determine whether to believe any witness

10   and the extent to which a witness should be believed.  Judging

11   a witness's credibility means evaluating whether the witness

12   has testified truthfully and also whether the witness

13   accurately observed, recalled, and described the matters about

14   which the witness testified.

15        You may consider anything that in your judgment affects

16   the credibility of any witness.  For example, you may consider

17   the demeanor and the behavior of the witness on the witness

18   stand; the witness's manner of testifying; whether the witness

19   impresses you as a truthful person; whether the witness

20   impresses you as having an accurate memory; whether the witness

21   has any reason for not telling the truth; whether the witness

22   had a full opportunity to observe the matters about which he or

23   she has testified; whether the witness has any interest in the

24   outcome of this case; stands to gain anything by testifying; or

25   has a friendship or hostility toward other people concerned

1    with this case.

2         In evaluating the accuracy of a witness's memory, you

3    may consider the circumstances surrounding the event, including

4    the time that elapsed between the event and any later

5    recollection of the events, and the circumstances under which

6    the witness was asked to recall details of the event.

7         You may consider whether there are any inconsistencies

8    in a witness's testimony.  You may also consider any

9    inconsistencies between the witness's testimony and any other

10   evidence that you credit.  You may consider whether any

11   inconsistencies are the result of lapses in memory, mistake,

12   misunderstanding, intentional falsehood, or differences in

13   perception.

14        You may consider the reasonableness or unreasonableness,

15   the probability or improbability of the testimony of a witness

16   in determining whether to accept it as true and accurate.  You

17   may consider whether the witness has been contradicted or

18   supported by other evidence that you credit.

19        If you believe that any witness has shown him- or

20   herself to be biased or prejudiced, for or against either side

21   in this trial, or motivated by self-interest, you may consider

22   and determine whether such bias or prejudice has colored the

23   testimony of the witness so as to affect the desire and

24   capability of that witness to tell the truth.

25        In sum, you should give the testimony of each witness

1   such weight as in your judgment it's fairly entitled to

2   receive.

3         Now, accomplice's testimony.  You've heard testimony

4   from government witness Caroline Davis.  The government is

5   permitted to use a witness who testifies that she participated

6   in the offense or offenses charged against the defendants;

7   although, the testimony of such a witness should be considered

8   with caution.  You should give her testimony as much weight as

9   in your judgment it deserves.

10        Now, you've also heard evidence that the same government

11  witness, Caroline Davis, entered into a plea agreement with the

12  government pursuant to which Ms. Davis agreed to testify

13  truthfully in this case, and the government agreed to bring

14  Ms. Davis's cooperation to the attention of her sentencing

15  judge in Michigan.

16        The government is permitted to enter into this kind of

17  plea agreement.  You, in turn, may accept the testimony of such

18  a witness and convict one or more of the defendants on the

19  basis of this testimony alone, if it convinces you of one or

20  more of the defendants' guilt beyond a reasonable doubt.  A

21  witness who has entered into a plea agreement is under the same

22  obligation to tell the truth as is any other witness; the plea

23  agreement does not protect her against a prosecution for

24  perjury or false statement should she lie under oath.

25        However, you may consider whether a witness who has

entered into such an agreement has an interest different from other types of witnesses. You may consider whether the plea agreement the witness entered into with the government has motivated her to testify falsely against the defendants. The testimony of a witness who has entered into a plea agreement should be considered with caution. You should give the testimony as much weight as in your judgment it deserves.

Now, law enforcement testimony. In this case, you heard testimony from an agent of the Federal Bureau of Investigation and several local police officers. A law enforcement officer's testimony should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because they are a law enforcement officer.

Now, evidence admitted for a limited purpose, and this is a hearsay instruction. Over the course of the trial, you've heard me sustain the parties' objections on the basis of something called hearsay. Hearsay statements are those made outside of this trial that are offered for the statement's truth. Although there are some exceptions to hearsay, this evidence is usually not admissible because it's less reliable.

When I sustain a hearsay objection, it is because I have concluded that the question for the witness asks for unreliable

1    hearsay.  When the statement is not offered for its truth but

2    instead for some other purpose -- for instance, what a person

3    believed to be true -- that statement is not hearsay, but it

4    still must not be considered to determine whether the statement

5    is true or not.

6         So as an example, take the following statement:  It

7    rained last night.  If a witness testified on the stand that

8    someone told the witness that it rained last night, that

9    statement that it rained last night is hearsay if the purpose

10   of presenting that statement for your consideration is to show

11   that it, in fact, rained last night.  Statements offered for

12   any other purpose, however, are not hearsay.  So, for example,

13   if the purpose of presenting that statement is to show that the

14   witness believed that it had rained the night prior, that

15   statement would not be hearsay.

16        During the course of Ms. Handy's direct examination,

17   you have heard her characterize certain videos and out-of-court

18   conversations about the clinic at issue along with research

19   she's done.  This testimony is hearsay when considered for

20   whether the statements in the video, for example, are true.

21        You are not to consider these assertions for their

22   truth.  For example, when Ms. Handy stated one of the videos

23   claims that the clinic performed a certain kind of abortion,

24   you may not consider Ms. Handy's testimony for whether or not

25   the clinic performed, in fact, any kind of abortion or another

1     -- any type of abortion or another.

2          You are to consider these statements only as to whether

3     you think Ms. Handy believed, rightly or wrongly, that, for

4     example, the clinic performed certain kinds of abortions.

5     Moreover, you are instructed that Ms. Handy's beliefs about the

6     clinic are irrelevant except to the extent that they bear on

7     what she intended to accomplish through her actions leading up

8     to and on October 22nd, 2020.

9          More generally, when I have instructed you that a

10    statement is admitted for a limited purpose, you must use the

11    statement for only that purpose.  You have heard or might hear

12    testimony about other statements that you are permitted to

13    accept for their truth or falsity.  The only limitations on

14    your use of any statements admitted as evidence are those

15    statements in my instructions, including this instruction.

16         Now, there was other acts -- evidence that were admitted

17    for a limited purpose.  So the defendants in this case are

18    charged with having committed specific acts leading up to and

19    on October 22nd, 2020.  The government has presented evidence

20    that one defendant, Ms. Handy, has committed acts other than

21    those charged in this case.  This evidence concerns Ms. Handy's

22    alleged conduct on or about November 16th, 2021, in Alexandria,

23    Virginia.  This evidence is offered to prove Ms. Handy's intent

24    and motive leading up to and on October 22nd, 2020.

25         The evidence is also offered to show whether or not

1    Ms. Handy conspired with others up to and on October 22, 2020.

2    The evidence is offered for these purposes only, and you may

3    not consider the evidence for any other purpose.  You must

4    decide whether you believe the government's evidence and

5    whether you find that it helps you decide whether Ms. Handy

6    committed the unlawful conduct charged in this case.  Your

7    responsibility is to decide whether the government proves

8    beyond a reasonable doubt the unlawful conduct charged in this

9    case.  This evidence, that I've just noted, is to be considered

10   as to Ms. Handy only.  Ms. Handy is on trial only for the acts

11   charged in the indictment and may not be held responsible in

12   this case for any other acts.

13        Moreover, the defendants in this case are charged with

14   having, again, committed specific acts leading up to and on

15   October 22nd, 2020.  So the government has presented evidence

16   that certain defendants, Ms. Handy and Mr. Goodman, have

17   committed acts other than those charged in this case.  This

18   evidence concerns Ms. Handy's alleged conduct on or about

19   January 30th, 2021, in Maryland, and Mr. Goodman's alleged

20   conduct on or about October 14th, 2020, in New Jersey.

21        This evidence is offered to prove Ms. Handy's and

22   Mr. Goodman's intent and motive leading up to and on

23   October 22nd, 2020.  The evidence is also offered to show

24   whether or not Ms. Handy and/or Mr. Goodman planned or

25   conspired with others leading up to and on October 22nd.

This evidence is offered for these purposes only, and you may not consider the evidence for any other purpose. You must decide whether you believe the government's evidence and whether you find that it helps you decide whether Ms. Handy and/or Mr. Goodman committed the acts charged in this case. Your responsibility is to decide whether the government proves beyond a reasonable doubt the acts charged in this case. The defendants here are on trial only for those acts and may not be held responsible in this case for any other acts.

Now, as I told you at the beginning, every defendant in a criminal case has an absolute right not to testify. Mr. Hinshaw and Mr. Goodman have each chosen to exercise this right. You must not hold this decision against either of them, and it would be improper for you to speculate as to the reason or reasons for each of the defendants' decisions. And you must not assume each defendant guilty because each chose not to testify.

On the other hand, a defendant has a right to become a witness in his or her own behalf. Ms. Handy, Ms. Idoni, and Mr. Geraghty have each chosen to exercise that right. Their testimony should not be disbelieved merely because he or she is a defendant. In evaluating their testimony, however, you may consider the fact that each has an interest in the outcome of this trial. As with the testimony of any other witness, you should give each defendant's testimony as much weight as in

1    your judgment it deserves.

2         Now, as I told you at the beginning, the indictment is

3    merely the formal way of accusing a person of a crime.  And you

4    must not consider the indictment as evidence of any kind.  You

5    may not consider it as any evidence of any defendant's guilt or

6    draw any inference of guilt from it.

7         Now, number of witnesses and exhibits.  The relative

8    weight of the evidence on a particular issue is not determined

9    by the number of exhibits or witnesses on either side.  It

10   depends on the quality and not on the quantity of the evidence.

11   It's up to you to decide whether to credit the testimony of a

12   smaller number of witnesses or a smaller number of exhibits on

13   one side or the testimony of a greater number of witnesses or a

14   greater number of exhibits on the other side.

15        Any uncalled witnesses.  It's peculiarly within the

16   power of either the government or the defense to produce a

17   witness who could give relevant testimony on an issue in the

18   case.  Failure to call that witness may give rise to an

19   inference that the testimony would have been unfavorable to

20   that party.  You may not draw such an inference in this case,

21   however, because all witnesses were equally available to both

22   parties and some testimony of some witnesses would have been

23   repetitive or cumulative.

24        Also, one of the questions you were asked when we were

25   selecting this jury was whether the nature of the charges

1  itself would affect your ability to reach a fair and impartial

2  verdict.  We asked you that question because you must not allow

3  the nature of a charge to affect your verdict, including the

4  government's decision as to which charges to bring.  You must

5  consider only the evidence that has been presented in this case

6  in reaching a fair and impartial verdict.

7  All right.  Let me talk now about the specific offenses

8  that are charged in the case.

9  So I'm going to start with an explanation of the charges

10  involving multiple defendants as we have in this case and

11  multiple counts as we have in this case.

12  Again, each count of the indictment charges a separate

13  offense.  Moreover, each defendant is entitled to have the

14  issue of his or her guilt as to each of the crimes for which he

15  or she is on trial determined from his own or her own conduct

16  and from the evidence that applies to him or her as if he or

17  she were being tried alone.  You should, therefore, consider

18  separately each offense and the evidence which applies to it,

19  and you should return separate verdicts as to each count of the

20  indictment, as well as to each defendant.

21  The fact that you may find any one defendant guilty or

22  not guilty on any one count of the indictment should not

23  influence your verdict with respect to any other count of the

24  indictment for that defendant.  Nor should it influence your

25  verdict with respect to any other defendant as to that count or

1    any other count in the indictment.

2        So you may find either of the defendants guilty or not

3    guilty on any one or more counts of the indictment, and you may

4    return different verdicts as to different defendants as to

5    different counts.  You're going to be provided a verdict form

6    to record your verdicts, and I will show you that verdict form

7    at the end and explain to you how that's to be used.

8        Now, this is Count 1, conspiracy against rights.

9        First, I'll explain to you the elements of the offense

10   of the conspiracy against rights.  It is against the law to

11   agree with someone to commit a crime.  That is called a

12   conspiracy.  More specifically, it is against the law to agree

13   with someone to injure, oppress, threaten, or intimidate any

14   person in the free exercise of any right or privilege secured

15   to him or her by the laws of the United States.

16       You are instructed that the laws of the United States

17   provide employees of a reproductive health clinic to provide

18   reproductive health services, including abortion, where

19   permitted by state law, without being unlawfully obstructed or

20   impeded.  You're instructed that the laws of the United States

21   provide patients seeking such services the same right.  And

22   I'll explain what I mean by obstructed or impeded later.

23       The indictment in this case charges the defendants with

24   conspiring and agreeing to injure, oppress, threaten, and/or

25   intimidate patients and employees of the Washington

1    Surgi-Clinic, a reproductive health clinic in the District of

2    Columbia.  To prove a conspiracy against rights, the government

3    must show the following three elements beyond a reasonable

4    doubt:

5         One, that two or more persons reached an agreement or

6    came to an understanding to injure, oppress, threaten, or

7    intimidate the patients and/or employees of the Washington

8    Surgi-Clinic.

9         Two, the defendant voluntarily and intentionally joined

10   in the agreement or understanding, either at the time it was

11   first reached or at some later time while the agreement or

12   understanding was ongoing.

13        And three, at the time that the defendant joined in the

14   agreement or understanding, the defendant intended to hinder,

15   interfere with, or prevent the patients and/or employees of the

16   Washington Surgi-Clinic in their right to obtain or seek to

17   obtain, or to provide or seek to provide, reproductive health

18   services permitted by state law.

19        As to the first element, the government must show that a

20   defendant joined the alleged conspiracy between on or about

21   October 7th, 2020, and on or about October 22nd, 2020.  This

22   doesn't have to be a formal agreement or plan in which everyone

23   involved sat down and worked out the details.

24        On the other hand, merely because people get together

25   and talk about common interests or other similar things does

1   not necessarily show that an agreement exists.  For this first

2   element, it's enough that the government prove beyond a

3   reasonable doubt that there was a common understanding among

4   those who were involved to injure, oppress, threaten, or

5   intimidate the patients and/or employees of the Washington

6   Surgi-Clinic.

7        As to the second element, the government must show that

8   a defendant voluntarily and intentionally joined in the alleged

9   agreement or understanding to disrupt patients and/or employees

10   of the Washington Surgi-Clinic.  It is not necessary to find

11   that a defendant -- defendant's agreement to all the --

12   defendant agreed to all the details of the alleged conspiracy

13   or knew the identity of all of the other people that the

14   government claims were participating in the agreement.

15        A person may become a member of a conspiracy even if

16   that person agrees to play only a minor role, as long as that

17   person understands the unlawful nature of the plan and

18   voluntarily and intentionally joins in it with the intent to

19   advance or further the unlawful object of the conspiracy.

20        The defendant, however, need not know that the object of

21   the conspiracy violated any particular law or any law at all.

22   Instead, the defendant must enter an agreement to perform acts

23   which are, in fact, illegal.  Even if a defendant is not part

24   of the agreement at every stage, he or she can become a member

25   of the conspiracy later, so long as the government proves

1    beyond a reasonable doubt that he or she intentionally joined

2    in the agreement.

3         That said, mere presence at the scene of the agreement

4    of the crime, or merely being with the other participants, does

5    not show that a defendant knowingly joined in the agreement.

6    Also, unknowingly acting in a way that helps the participant,

7    or merely knowing about the agreement itself without more does

8    not make a defendant part of the conspiracy.

9         Some of the people who may have been involved in the

10   conspiracy are not on trial -- in this trial.  That -- this

11   doesn't matter.  There's no requirement that all members of a

12   conspiracy be charged or prosecuted or tried together in one

13   proceeding.  Nor is there any requirement that the names of the

14   other conspirators be known.  An indictment can charge a

15   defendant with a conspiracy involving people whose names are

16   not known, as long as the government can prove that the

17   defendant conspired with one or more of them.

18        In determining whether conspiracy between two or more

19   persons existed and whether the defendant was one of its

20   members, you may consider the acts and the statements of any

21   other member of the conspiracy as evidence against all of the

22   defendants whether done in or out of his or her presence while

23   the conspiracy existed.  When persons enter into an agreement

24   to commit a crime, they become agents for each other so that

25   everything which is said or done by one of them in furtherance

1   of that purpose is deemed to be the act or statement of all who

2   have joined in that conspiracy and is evidence against all of

3   the conspirators.  However, statements of any conspirator which

4   are made before the conspiracy's existence or after its

5   termination may be considered as evidence only against the

6   person making such statements.

7          As to the third element, the government must show beyond

8   a reasonable doubt that a defendant's purpose or intent in

9   joining the conspiracy was to use force and physical

10  obstruction to hinder, interfere with, or prevent the patients

11  and/or -- and employees at the Washington Surgi-Clinic in their

12  legal right to obtain or seek to obtain or to provide or seek

13  to provide reproductive health services, including, but not

14  necessarily limited to, abortion services.

15         The government need not show that any of the defendants

16  actually succeeded in preventing any patient or employee of the

17  Washington Surgi-Clinic from accessing any particular

18  reproductive health services; merely, that a defendant

19  conspired with another to do so.  To meet this element, you

20  need only find that the purpose of the conspiracy was to

21  violate a right protected by the laws of the United States.

22         This element can be met even if the conspirators were

23  also motivated by some other emotion or aim, so long as one

24  purpose of the conspiracy was to deprive the Washington

25  Surgi-Clinic's patients and/or employees from exercising the

1   statutory right to be free from the use of force, threats of

2   force, or physical obstruction to stop them from accessing

3   and/or providing one or more reproductive health services.

4           I believe one instruction has been left out, on or

5   before.  I'll get to that one in terms of the on or before.

6           Let me discuss Count No. 2, which is Freedom of Access

7   to Clinic Entrances, which we've been calling FACE.  Count 2

8   charges the defendants with obstructing access to a

9   reproductive health clinic.  The government must prove the

10  following elements beyond a reasonable doubt:

11          One, a defendant used force or physical obstruction.

12          Two, a defendant intentionally injured, intimidated, or

13  interfered with Ashley Jones or the employees of the Washington

14  Surgi-Clinic, or attempted to do so.

15          And three, a defendant did so because Ashley Jones was

16  obtaining or the Washington Surgi-Clinic was providing

17  reproductive health services.

18          As to the first element, the term force means power

19  and/or violence exerted upon or against a person or property.

20  The term physical obstruction means rendering impassable an

21  entrance to or an exit from a facility that provides

22  reproductive health services or rendering passage to or from

23  such a facility unreasonably difficult or hazardous.  A

24  defendant need not obstruct a particular person at a particular

25  time but, rather, need only obstruct an entrance to or exit

1    from a clinic with the specific intent to do so.

2          As to the second element, the term intimidate means to

3    place a person in reasonable expectation of bodily harm to

4    themselves or another.  The term interfere means -- to

5    interfere -- let me -- okay.  I think I was at the point of --

6    let me just look here.

7          Okay.  Interfere.  Let me just make sure I've done this.

8    As to the second element, the term intimidate means to place a

9    person in reasonable expectation of bodily harm to themselves

10   or another.  The term interfere means to restrict a person's

11   freedom of movement.

12         As in the third element -- as to the third element,

13   reproductive health services means reproductive health services

14   provided in a hospital, clinic, physician's office, or other

15   facility and includes medical, surgical, counseling, or

16   referral services relating to the human reproductive system,

17   including services relating to pregnancy or the termination of

18   a pregnancy.

19         A provider of reproductive health services includes any

20   staff member who is an integral part of the business where

21   reproductive health services are provided.  You are instructed

22   there is no law in the District of Columbia limiting the stage

23   of pregnancy at which an abortion may be performed.

24         So long as Ashley Jones' status as a reproductive health

25   services patient or the Washington Surgi-Clinic employees'

1    roles as reproductive health services providers was one cause

2    of the defendant's conduct, that is enough to satisfy the third

3    element.  Nor need either person's status be the sole reason

4    why the defendant took action against them, so long as either

5    the provision or receipt of reproductive health services was

6    one reason why the defendant took action against them.

7         Now, let me switch something here.  In the first

8    instruction about the conspiracy, I indicated on or about.  So

9    let me just instruct you about that.  The indictment claims

10   that the charged offense were committed on or about

11   October 7th, 2020, and October 22nd, 2020.  The proof need not

12   establish with certainty the exact date of each alleged

13   offense.  It is sufficient if the evidence in the case

14   establishes beyond a reasonable doubt that the offense was

15   committed on a date reasonably near the date alleged.

16        So let me move to -- all right.  This instructs you on

17   willfully causing an act to be done.  You may find a defendant

18   guilty of the crime charged in Count 2 without finding that

19   they personally committed each of the acts constituting the

20   offense or was personally present at the commission of the

21   offense.  A defendant is liable for an act which they willfully

22   cause to be done if the act would be criminal if performed by

23   them directly or by another.  And to cause an act to be done

24   means to bring it about.

25        You may convict one or more of the defendants of the

offense charged in Count 2 if you find that the government has proven beyond a reasonable doubt each element of that offense and that that defendant willfully caused such an act to be done with the intent to commit the offense.

Now, let me instruct you on aiding and abetting. And I would go by my instructions. There was some discussion in closing about it. Please pay attention to my instruction.

A defendant may be found guilty on Count 2 of the indictment even if the defendant did not personally commit the acts constituting the offense but, nevertheless, aided and abetted in the crime's commission. For a defendant to be guilty of aiding and abetting on Count 2, the government must show the following elements beyond a reasonable doubt:

One, the specific offense charged in Count 2 was committed by someone.

Two, the defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of the offense charged in Count 2.

Three, the defendant acted with the intent to facilitate the offense charged in Count 2.

And three [sic], the defendant acted before the offense charged in Count 2 was completed.

It is not enough that the defendant merely associated with the person committing the offense charged in Count 2 or unknowingly or unintentionally did things that were helpful to

1  that person.  Rather, the evidence must show beyond a

2  reasonable doubt that the defendant acted with the knowledge

3  and intent of helping that person commit the offense charged in

4  Count 2.

5       A defendant acts with the intent to facilitate a crime

6  when the defendant actively participates in a criminal venture

7  with advance knowledge of the crime and having acquired that

8  knowledge when the defendant still had a realistic opportunity

9  to withdraw from the crime.  Advance knowledge means knowledge

10  at a time the person can attempt to alter the plan or withdraw

11  from the enterprise.

12       Knowledge may, but does not have to, exist before the

13  underlying crime has begun.  It's sufficient if the knowledge

14  gained in the midst of the underlying crime, as long as the

15  individual continues to participate in the crime and has a

16  realistic opportunity to withdraw.  You may, but not need to,

17  infer that the defendant had sufficient foreknowledge if you

18  find that the defendant continued his or her participation in

19  the crime after learning that it was being committed.

20       Now, co-conspirator liability.  This is another one that

21  was discussed by some in the closings.  I want you to pay

22  attention to my instruction as to the accuracy.

23       A member of a conspiracy who commits another crime

24  during the existence or life of a conspiracy and commits this

25  other crime in order to further or somehow advance the goals or

1    objectives of the conspiracy may be considered by you to be

2    acting as the agent of the other members of the conspiracy.

3    The illegal actions of this conspirator in committing this

4    crime may be attributed to other individuals who are then

5    members of the conspiracy.  Under certain conditions,

6    therefore, a defendant may be found guilty of this other crime

7    even though he or she did not participant directly in the acts

8    constituting that offense.

9        If you find that the government has proven a particular

10   defendant guilty of conspiracy beyond a reasonable doubt, as

11   charged in Count 1 of the indictment, you may also find that

12   defendant guilty of the crime alleged in Count 2 of the

13   indictment, provided you find that the elements of that count

14   as defined in these instructions have been established beyond a

15   reasonable doubt and provided further that you also find beyond

16   a reasonable doubt that -- and there's certain other elements.

17       One, the offense charged in Count 2 was committed by a

18   member of the conspiracy as detailed in Count 1 of the

19   indictment.

20       Two, the offense charged in Count 2 was committed during

21   the existence or life of and in furtherance of the goals or

22   objectives of the conspiracy detailed in Count 1 of the

23   indictment.

24       Three, the commission of the offense charged in Count 2

25   was reasonably foreseeable as a necessary or natural

1    consequence of the conspiracy detailed in Count 1 of the

2    indictment.  It is not necessary to find that the crime was

3    intended as part of the original plan, only that it was a

4    foreseeable consequence of the original plan.

5         And four, at the time that the offense charged in

6    Count 2 was committed, the particular defendant was a member of

7    the conspiracy detailed in Count 1 of the indictment.

8         Now, proof of state of mind.  Someone's intent or

9    knowledge ordinarily can't be proved directly.  There's no way

10   of knowing what a person is actually thinking, but you may

11   infer someone's intent or knowledge from the surrounding

12   circumstances.  You may consider any statement made or acts

13   done or omitted by any defendant and all other facts and

14   circumstances received in evidence which indicate their intent

15   or knowledge.

16        You may infer, but are not required to infer, that a

17   person intends the natural and probable consequences of acts he

18   or she did or intentionally did and not do -- did or

19   intentionally did not do.  It is entirely up to you, however,

20   to decide what facts to find from the evidence received during

21   this trial.  You should consider all the circumstances in

22   evidence that you think are relevant in determining whether the

23   government has proved beyond a reasonable doubt that any

24   defendant acted with the necessary state of mind.

25        Now, let me talk about your deliberations in this

1   matter.  So when you return to the jury room, you should first

2   select a foreperson to preside over your deliberations and to

3   be your spokesperson here in court.  Now, there are no specific

4   rules regarding how you select a foreperson.  That is up to

5   you.  However, as you go about the task, be mindful of your

6   mission, to reach a fair and just verdict based on the

7   evidence.  Consider selecting a foreperson who will be able to

8   facilitate your discussions, who can help you organize the

9   evidence, who will encourage civility and mutual respect among

10  all of you, who will invite each juror to speak up regarding

11  his or her views about the evidence, and who will promote a

12  full and fair consideration of that evidence.

13          Now, communications between me and the jury during your

14  deliberations.  If it becomes necessary during your

15  deliberations to communicate with me, you may send a note by

16  the clerk or there may be a court security person outside of

17  the jury office [sic], and it should be signed by your

18  foreperson or by one or more members of the jury.  No member of

19  the jury should try to communicate with me on the merits by

20  such a signed note -- except by such a signed note.  And I will

21  never communicate with any members of the jury, again, on any

22  matter concerning the merits of the case, except in writing or

23  orally here in open court.

24          Bear in mind that you're never, under any circumstances,

25  to reveal to any person -- not the clerk, not the CSO, the

1    marshal, or me -- how jurors are voting until after you have

2    reached a unanimous verdict, and then you indicate that.  This

3    means that you should never tell me in writing or in open court

4    how the jury is divided on any matter -- for example, you

5    indicate you're divided 6 to 6, 7 to 5, 11 to 1, or in any

6    other fashion -- whether the vote is for conviction or

7    acquittal or on any other issue in the case.  In other words,

8    you should never indicate how the jury is split.  That should

9    never be included or communicated.

10         Now, the verdict must represent the considered judgment

11   of each juror, and in order to return a verdict, each juror

12   must agree on the verdict.  In other words, your verdict on

13   each count must be unanimous.

14         The question of possible punishment of either defendant

15   in the event of any conviction is not a concern of yours and

16   should not enter into or influence your deliberations in any

17   way.  The duty of imposing sentence in the event of a

18   conviction rests exclusively with me, the judge.  Your verdict

19   should be based solely on the evidence in this case, and you

20   should not consider the matter of punishment at all.

21         Now, the attitude and conduct of jurors at the beginning

22   of their deliberations are matters of considerable importance.

23   It may not be useful for a juror upon entering the jury room to

24   voice a strong expression of an opinion on the case or to

25   announce a determination to stand for a certain verdict.  When

1   one does that at the outset, a sense of pride may cause that

2   juror to hesitate, to back away from an announced position

3   after a discussion of the case.  Furthermore, many juries find

4   it useful to avoid an initial vote upon retiring to the jury

5   room.

6        Calmly reviewing and discussing the case at the

7   beginning of deliberations is often a more useful way to

8   proceed.  Remember that you are not partisans or advocates in

9   this matter, but you are judges of the facts.

10        I'm going to be sending into the jury room with you the

11   exhibits that have been admitted into evidence.  You may

12   examine any or all of them as you consider your verdicts.

13   Please keep in mind that exhibits that were only marked for

14   identification but were not admitted will not be given to you

15   to examine or consider in reaching your verdict.  So you are

16   only going to get -- so the numbering on them may be different.

17   It may skip -- but don't worry about that.  We're only going to

18   give you the exhibits that have actually been admitted in the

19   case.

20        You're generally -- there are some papers ones, and

21   we're going to give you some flash drives.  You'll see the

22   big screen that's up there so you should be able to see the

23   videos.

24        Now, I'm going to also provide you with two copies of my

25   instructions that I've just read to you.  And during your

1    deliberations, you may, if you want, obviously, refer to these

2    instructions.  While you may refer to any particular portion of

3    the instructions, you are to consider the instructions as a

4    whole, and you may not follow some and ignore others.

5         That's very important to listen to it today so you know

6    what's in here and how they all relate.  If you have any

7    questions about the instructions, you should feel free to send

8    me a note.  Just indicate what your issue is with the

9    instructions.  Please return the instructions when your verdict

10   is rendered.

11        Now, the verdict form.  You'll be provided with what we

12   call a verdict form for use when you have concluded your

13   deliberations.  The form itself isn't evidence in this case,

14   and nothing in it should be taken to suggest or convey any

15   opinion by me or anybody else as to what the verdict should be.

16        Nothing in the form replaces the instructions of law

17   that I have already given you, and nothing in it replaces or

18   modifies the instructions about the elements which the

19   government must prove beyond a reasonable doubt.  The form is

20   meant only to assist you in recording your verdict.

21        So the verdict form -- jury verdict form, there will be

22   one for each one of the defendants, and each one is the same.

23   It starts with -- lists the name of the defendant.  It then

24   says Count 1, with respect to the offense of conspiracy against

25   rights, we, the jury, find the defendant -- name of each

1    defendant -- guilty, not guilty.  You check whichever one that

2    is the unanimous verdict.

3         Count 2, then you say with respect to the offense of

4    clinic access obstruction, we, the jury, find defendant,

5    whichever one, guilty, not guilty.  Again, you would do the

6    check mark.

7         Now, the special findings.  If you find the defendant

8    guilty -- and it's only if you find the defendant guilty on

9    Count 2 -- you would then go on to the following grounds,

10   either or both:  Have you found the defendant -- found the

11   defendant guilty on Count 2, which -- and what there is is --

12   the grounds are force, guilty or not guilty; physical

13   obstruction, guilty or not guilty.

14        So, in other words, on Count 2, you're going to make the

15   initial decision as to whether the government has proved the

16   case beyond a reasonable doubt, it's a unanimous verdict, and

17   you would indicate guilty, not guilty.  If you do find that

18   the -- a defendant guilty on Count 2, you go on to the special

19   finding and indicate whether your finding is based on force:

20   guilty, not guilty.  Or physical -- and/or physical

21   obstruction:  guilty, not guilty.  So we know what grounds

22   you've determined the guilt of each of the defendants as to

23   Count 2.

24        So you'll have one for each of the defendants, as I've

25   said.

1          Count 1.

2          Then Count 2.  Only if you find them guilty on Count 2

3    do you go to the special findings.  If you find the defendant

4    not guilty on Count 2, you don't go on to do any special

5    findings.

6          Now, I have another cautionary instruction.  Publicity,

7    communications, research.  I want to remind you that in some

8    cases -- although not necessarily this one -- there may be

9    reports in the newspaper or media, various other radio,

10   internet, television concerning the case.  If there should be

11   such media coverage, you might be tempted to read it, listen,

12   or watch it.  You must not read -- listen, watch it, read it

13   because you have to decide this case solely on the evidence

14   presented in this courtroom.

15         And I would point out, you've been here all day.  You

16   know what the case is about.  You don't have to read about it

17   from somebody else who's deciding what the case is about.  You

18   know.  So don't look at these things.  They're not necessarily

19   accurate.

20         If any publicity about this case inadvertently comes to

21   your attention, do not discuss it with either jurors or anyone

22   else.  Just let me or the clerk know as soon as it happens, as

23   you can, and then I'll briefly discuss it with you.

24         So I'd ask that you really be vigilant in terms of

25   making sure that you're not inadvertently or otherwise

1    looking -- or looking at it or looking at anything that sounds

2    like it's about this case.

3        As you retire to the jury room to deliberate, I also

4    want to remind you of my instruction I gave you at the

5    beginning.  During deliberations, you may not communicate with

6    anyone not on the jury about this case.  This includes any

7    electronic communications, email, text, blogging, whatever.

8        In addition, you may not conduct any independent

9    investigation during deliberations.  So you should not be

10   looking at where the Washington Surgi-Clinic is.  You should

11   also not conduct any research, which means about people or

12   terms or anything else.  If you need to have something defined,

13   send me a note.  I should give you all the information that

14   you're deciding this case about or the law.  You should not be

15   doing something independently.

16       So you may not conduct an independent investigation

17   during deliberations.  You may not conduct any research in

18   person, electronically, and by the internet or any other way.

19       Now, let me have counsel pick on the intercom.

20       (Bench conference on the record.)

21       THE COURT:  I have a little bit of a problem in terms

22   of we printed some stuff out that didn't get into anything.  So

23   I will make the changes of he, she, blah, blah.  I think most

24   of them -- what I've done is changed orally what I will do in

25   here.

1       But is there anything else?  You've, obviously,

2   preserved all of your objections.

3           MR. KIYONAGA:  Your Honor, this is John Kiyonaga for

4   Mr. Geraghty.

5           Unless I missed it, ma'am, you did not give an

6   instruction that each juror should vote his or her conscience.

7           THE COURT:  I gave whatever the regular -- I'd have

8   to look in terms of -- we had something at the beginning.  I

9   would have to look.  Whatever it is, it's the standard

10  instruction, and it includes everything you could possibly

11  think of in terms of what they're supposed to do and not

12  supposed to do.

13          MR. KIYONAGA:  Understood.

14          THE COURT:  If it's not in here, you didn't ask for

15  it.  I don't know whether it is.  I would have to go back and

16  take a look, frankly.

17          MR. KIYONAGA:  Additionally, Your Honor, in the

18  Eastern District we're not allowed to reach out to -- to

19  jurors.  Would the Court consider advising the jurors that once

20  they've completed their deliberations, if they're so inclined,

21  you're free to reach out to counsel with any commentary they

22  might have?

23          THE COURT:  I would at this point probably be less

24  inclined to do so.  I think we've had some issues in this case.

25  I have another trial coming, and I have some concerns relating

1  to having discussions.

2         My experience, frankly, has been that even though I

3  generally do not -- what I generally -- if people wanted to

4  talk to the jury, I let them talk to them -- the jurors that

5  wish to speak to them, and I monitor it so that things are not

6  said that shouldn't be said, such as giving information that,

7  you know, didn't come into the case or other things.  Sometimes

8  jurors talk to the media, and then you wind up with stuff that

9  shouldn't be taken out.

10        So I'm leery of doing that.  I will take a look and talk

11  to you at a later time about how to do it.  I'm not going to do

12  it automatically.

13        I've also found that one of the jurors, when you ask

14  about what -- you know, do you have -- what kind of experience

15  have you had, you know, as being a juror and -- the first

16  thing they raise, if they're going to say anything, is they had

17  this discussion with the attorneys and they were upset with

18  what the attorneys said.  So I've become a little more

19  reluctant with it.  But I will deal with that issue at a later

20  point.  Okay?

21             MR. KIYONAGA:  Understood.  Thank you, Your Honor.

22             THE COURT:  Anything else?

23             (Proceedings held in open court.)

24             THE COURT:  I'll read the last portion of it.

25         The last thing I must do before you begin your

1  deliberations is to excuse the alternate jurors.  As I told you

2  before, the selection of alternates was an entirely random

3  process.  Nothing personal.  The lawyers just chose numbers.

4  We selected three seats to be the alternate seats before you

5  entered the courtroom.

6       Since the rest of you have remained healthy and

7  attentive, happily, I can now excuse those jurors in Seats 3,

8  13, and 14.  So if you -- you can stay for a minute.  Let me

9  just finish reading the rest of this about the alternates.

10      Before you three leave, I'm going to ask you to tear

11 out a page from your notebook in terms of what you have written

12 down.  Write down your name and daytime phone number and hand

13 that to the -- so you'll hand your notebooks in.  We aren't

14 going to look at anything.  And then on a piece of paper, if

15 you give us your name and a way of getting in touch with you,

16 give it to the clerk.  I do this because it's possible,

17 although very unlikely, that we will need to summon you back to

18 rejoin the jury in case something happens to a regular juror.

19      Since that possibility exists, I'm also going to

20 instruct you not to discuss the case with anyone until we

21 actually call you and tell you there's a verdict and, you know,

22 that's the end of it.

23      My earlier instructions on use of the internet still

24 applies.  Don't research.  Don't communicate about it with

25 anybody.  Just assume you're like a regular juror still.  Just

1    don't -- you're not part of the deliberations.  And we will

2    call you and let you know so you know there's an end to this,

3    having to do this.  But just to make sure that if for some

4    reason we need to bring somebody back, that we can actually do

5    so.

6         This has become more of an issue with COVID.  Although,

7    happily, all my jurors -- nobody has gotten it, so I haven't

8    had that -- that problem, but we've become a little more

9    cautious about it.

10         But I do want to thank you for your service.  The three

11    of you have been very attentive, as have all of you, and I

12    appreciate you taking the time.  It took an enormous amount of

13    time to select the jury.  We were very cautious and careful.

14    So I know it -- you know, you spent a lot of time doing other

15    things.  And for many of you, this went beyond your usual

16    two weeks.  However, we did finish at least a little earlier

17    with the presentation of the case than I thought it might be.

18    So thank you very much.

19         Let me excuse the three of you, and you can give the

20    information.  I think you're free from your service.  You do

21    not need to go to the jury office.  You can go home, work,

22    whatever you want.  But thank you.

23         (REPORTER'S NOTE:  The alternate jurors left.)

24         THE COURT:  The rest of you can just wait a minute.

25    Oh.  Let me mention -- go ahead.  Let me mention the

1    lunch -- the lunch, generally, is not the 1:00 to 2:00.

2    They'll bring something.  It's 12:30 to 1:30.  Okay?

3         And what I'm going to ask is that for the -- whoever

4    your foreperson is, if you would sort of keep track of when

5    you're deliberating.  What I would do is -- you should take

6    regular breaks.  People have to go to the restroom, and you --

7    certainly at lunch you should not deliberate.  You should enjoy

8    your lunch, but we're going to take breaks at some point, as I

9    have.

10        So if you just note the time that you started the break

11   and when you finished it, just so we have some rough sense of

12   how long you're actually deliberating.  And you can't continue

13   to discuss the case except when all of you are together.  So if

14   somebody is in the restroom, you should not continue through

15   deliberations.  You should wait and make sure everybody is

16   together.

17        We will -- so -- and, you know, don't be hesitant about

18   sending notes.  We'll have somebody out there.  It's usually a

19   court security person that sits outside of the door.  So you

20   can open the door and hand any notes to them, and they'll bring

21   it to me.

22        At the end of the day, if you have not reached a

23   verdict, I will bring you back and excuse you, and we'll excuse

24   you just before 5 o'clock.  You do not need to go beyond that

25   time frame.  In the mornings I generally don't bring you in.

1    We start your deliberations when all of you are in there.  But

2    we do at the end to make sure.  Okay?

3         And then, just as I said, if you reach, you know,

4    unanimous verdicts on all the cases [sic], then send a note

5    with that.  And what I'd ask is that there's two copies of the

6    verdict form.  They're exactly the same.  Fill both of them out

7    the same.  Keep one for yourself.  The other one should come

8    with the note that you've reached a unanimous verdict as to

9    each verdict.  And that one you would give to whoever is -- the

10   CSO or Ms. Patterson.  And what we'll do is we'll read -- we'll

11   come back in here, and we will -- I'll ask if the foreperson --

12   and you just do it by seat number -- whether the foreperson has

13   the -- and whether -- ask the foreperson whether the jury has

14   reached a unanimous verdict as to each defendant, and the

15   person, hopefully, says yes.

16        And then I'm going to ask -- this is -- I want you to be

17   prepared for a polling.  I'm going to ask each of you by seat

18   number only if you agree with the verdict as stated by your

19   foreperson.  We do this to make sure that your verdicts are

20   unanimous.  So if you agree, you just say yes.  If for some

21   reason you disagree, you need to speak up.  So counsel may ask

22   to have it polled.  I don't want you to be surprised.  I'll go

23   by seat and say do you agree or not agree with what your

24   foreperson has indicated.

25        All right.  I think that's it.  Let me have you go back.

1          (Proceedings held out of the presence of the jury.)

2          THE COURT:  Okay.  I'm going to ask you to stay.

3     Don't leave yet.  We need to discuss with Ms. Patterson the

4     exhibits, to make sure everybody has agreed to what is actually

5     going back.

6          In the meantime, I will type up the answer to the

7     question that we did receive and send that back.  And I'll --

8     we'll make the edits that we talked about in terms of the jury

9     instructions.  And then don't leave until I come back in so I

10    know where everybody is going to be.

11         Mr. Dunn, do you have a question?

12         MR. DUNN:  I can wait until you come back in.

13         THE COURT.  Dorothy, you're going to deal with the

14    exhibits at this point?  I'll make the edits, and they're not

15    supposed to leave until I get back in here.

16         (Recess taken.)

17         THE COURT:  I typed out the question that she put on

18    the handwritten note so they get -- they'll get a copy of it

19    with the answer that I just read.

20         We've got the two copies; all the edits that I put in as

21    I read it have been fixed.  So they'll get two copies.  And

22    we'll email you a copy of this so you have it for your records

23    and the latest version with the edits.

24         So I think that's -- where are we with the exhibits?

25    Are we all done?

```
 1              THE COURTROOM DEPUTY:  Yes.

 2              THE COURT:  No disputes.  Everything is okay.

 3         All right.  Okay.  Do we -- where is everybody going to

 4    be?

 5         Mr. Crabb?  Mr. Patel?  I don't need both of you.  I'm

 6    going to make you responsible for each other.  Whoever is going

 7    to do it.

 8              MR. CRABB:  Where we'll be depends on how quickly the

 9    Court wants us to respond to notes.

10              THE COURT:  As I said, part of it would be -- I -- if

11    you could sort of hang around until when they start lunch.

12    We'll get -- you know, they'll get stuff at the beginning to do

13    something.  After that, I would go back to your office.  If

14    we're going to get a note quickly, that's -- it's just a pain

15    to go back to the office and come back.

16              MR. CRABB:  Thank you.  We'll do that.

17              THE COURT:  It's 11:15 or 11:20.  And then if we have

18    a phone number for you -- are you going to be at Justice, or

19    the U.S. Attorney's Office, or where are you going to be?

20              MR. CRABB:  At the U.S. Attorney's Office.  So even

21    when we go back to the office, we'll be ten minutes away.

22              THE COURT:  The one on Sixth Street?

23              MR. CRABB:  Yes.

24              THE COURT:  Okay.  Then that should work.

25              MR. CRABB:  Thank you.
```

1          THE COURT:  Mr. Cannon, have you-all figured out

2     who's going to be monitoring this, or are you taking turns, or

3     what?

4          MR. CANNON:  Yeah, Steve and I are both at a hotel,

5     ten-minute walk away.  We'll hang out there for a while.

6          Over the weekend, we both might have some travel plans,

7     but somebody will be back for Tuesday.

8          THE COURT:  Hopefully not far away because I don't

9     want to get stuck where you can't get back because of weather

10    or something.

11         MR. CANNON:  Yeah.  We'll -- we will not take that

12    risk.

13         THE COURT:  All right.  Mr. Dunn.

14         MR. DUNN:  Yes.  Thank you, Judge.

15    I have contacted Mr. Peter Cooper, who is the local

16    counsel for me on my representation here, and was the original

17    CJA-appointed counsel on the case, to see if he would be

18    available to cover for me, if the Court permits me to have

19    somebody cover for me, if the case goes on to next Tuesday.  He

20    said he would.  He's available.

21         THE COURT:  How could he cover?  He knows nothing

22    about the case if we get a note.  A verdict wouldn't be a

23    problem.  But a note, he doesn't know any of the evidence.

24         MR. DUNN:  In addition to him -- that's why I've got

25    a second option, if the Court -- it's okay with the Court.

1     Co-counsel here, Mr. Walsh in particular, has indicated

2     that -- I think possibly Mr. Crampton as well -- has also

3     agreed -- and my client is perfectly fine with it -- so that I

4     can get back to my teaching responsibilities, which start next

5     week.

6          THE COURT:  It's very unusual and, frankly, I've

7     never done that.  I've always had -- required the attorney that

8     handled the case to be the one to do it.  I mean, with your

9     co-conspirators, I'm sure they would be happy.

10         But looking at it, there could be a conflict in terms of

11    the answer we might give to a note.  I mean, each of your

12    defendants -- although you're allegedly -- they're allegedly

13    co-conspirators.  I'm -- I'm not going to let -- I'm not going

14    to do that, Mr. Dunn.  I'm sorry.

15         MR. DUNN:  I don't think it would be a conflict,

16    Judge.

17         THE COURT:  I do not want to have an appellate issue.

18    And, you know, I go through these things about who has

19    conflicts about stuff.  Each of the defendants, to some degree,

20    don't, but to some degree they might; depends on what comes

21    back.  And I'm not going to do this by phone.  You need to be

22    here to talk to your client.

23         MR. DUNN:  She's agreed -- she's fine with it.  So

24    you wouldn't be okay with Mr. Cooper either, Judge?

25         THE COURT:  Mr. Cooper knows nothing about this case.

1    He has not sat here throughout the case.  How is he going to

2    possibly respond to a note?  I mean, getting the verdict is a

3    different issue, in terms of just accepting the issue.

4        You need people -- this has been a complicated case.

5    We need people who know something about it when the issue

6    comes in.  And each of these defendants has their own interest.

7    And an answer may come back that they have different answers

8    to.

9        MR. DUNN:  I'm sure there's going to be a unified

10   response to any note, Judge.

11       THE COURT:  I'm not sure of anything.  Okay?  And

12   certainly not how the case has proceeded in this case.  So

13   I -- you know, I'm not excusing you, if that's what you're

14   asking for.  I'm not excusing you.

15       And Mr. Cooper knows nothing about the case.  We'll see

16   how long this lasts.  Hopefully not.  We'll see what they have

17   to say.  I mean, they may ask at the end they -- they're close

18   enough they want to come in on Monday.  Sometimes that happens,

19   especially if the person's appointments are, like, in the

20   afternoon.  I don't want to force them to do it because they

21   will be annoyed when they're doing their deliberations.  So

22   it's their decision.  But I'm not excusing you.

23       MR. DUNN:  Okay.  My plan, if you were going to deny

24   the request, was to continue with my flight home on Saturday

25   and to return on Monday, which I don't even have the flight for

1    the return trip yet.  I can try and get one.

2           THE COURT:  Well, that's my concern is, frankly, for

3    you to go back when we've had trouble with you coming in here.

4    I mean, we -- you know, you weren't able to do it.  You were

5    able to Zoom.  I'm not doing Zoom.

6           You know, I do not want an issue on appeal --

7           MR. DUNN:  Yeah, I understand.

8           THE COURT:  -- for something that could be -- you

9    know, that involves your -- for your convenience.  And I'm

10   sorry about your teaching thing.  But I bet you could do it --

11   if there's a snow day in Michigan and you don't sit, you don't

12   teach, I assume they make it up.

13          MR. DUNN:  I just take those responsibilities very

14   seriously.

15          So would it be okay if I fly back on Monday then?

16          THE COURT:  I don't think you should go anywhere.  I

17   think you should stay here, frankly, because I'm concerned if

18   weather is bad, you won't come; you won't be able to come, not

19   because you intentionally wouldn't.

20          I expected people to hang around, frankly.  The lawyers

21   who are out of town when they come, they're stuck here.

22          MR. DUNN:  And I'm doing the case pro bono, Judge.

23          THE COURT:  I understand.  But, you know, people make

24   decisions in terms of other things.  I'm not going to have an

25   appellate issue on this that -- or hold things up because we

1    can't get you back.  So, I mean, I assume when counsel from

2    out of town take it, that they're planning to be here until we

3    get the case, you know, completely decided, one way or the

4    other.

5           MR. DUNN:  So I couldn't participate in a note

6    discussion over the phone, if there's a note discussion?

7           THE COURT:  If a note came in -- I've told you, some

8    notes can be done by -- by -- because they're easy ones.  I

9    need more paper or something.  Or it's something that they're

10   asking about the evidence that I'm going to send a note back

11   that says I cannot comment on the evidence.  I'm not going to

12   make you come back to the courtroom.

13          But we may get other notes that ask for interpretations

14   of different things, in which case you'd have to come back and

15   we'd have to have a discussion.  I need you here.  Okay?

16          All right.  So, Mr. Kiyonaga.

17          MR. KIYONAGA:  Yes, Your Honor.  My plan was just to

18   remain in the immediate area of the courthouse.

19          THE COURT:  That's fine.  As long as we have a

20   phone number -- and I can open the witness rooms for you if

21   somebody wants to hang out there, you know, if that's easier

22   for you.

23          MR. KIYONAGA:  Next week, if possible, I'd prefer to

24   be at my office, but I understand the Court wants to see how

25   things --

1            THE COURT:  Let's see.  Part of it, I think, is -- I

2       have found that either the jury sends no notes and you get the

3       verdict at the end or they begin to send a bunch of notes, in

4       which case, you know, it will be less convenient to have you

5       just bopping back and forth, from your own perspective, in

6       addition.

7            MR. KIYONAGA:  Understand, Your Honor.

8            THE COURT:  Let's see how today works.

9            MR. KIYONAGA:  Your Honor, do I understand -- I plan

10      to be about an hour from here over the weekend.

11           THE COURT:  That's fine.  I don't want people flying.

12      Okay?  I've looked at the weather map.  It -- it does not look

13      good in terms of what the -- what the weather is.  And Mr. Dunn

14      has already had a problem getting here, as well as Ms. Idoni.

15      I'm not going to have that happen so we have a problem in the

16      case.  I'm not going to have an appellate issue.  You can be,

17      you know, in Virginia, obviously, or Maryland or whatever.

18           MR. KIYONAGA:  I'm talking about Orange, Virginia,

19      Your Honor.  But did I understand the Court to say counsel do

20      not need to be here in the mornings when the jury comes in?

21           THE COURT:  No, you do not need to appear in the

22      courtroom for that.  What I would ask you to do is call in and

23      make sure there's no issue.  But I don't want to make you troop

24      all the way over here for that.  As soon as they're all there,

25      we keep track of the time.  They get the evidence, and we start

1    the deliberations.

2            MR. KIYONAGA:  Very well.  Thank you, Your Honor.

3            THE COURT:  It's at the end I definitely want you

4    because that's when -- if you're not around, we can't respond

5    to notes or you know -- or the verdict itself.

6            MR. KIYONAGA:  I understand.

7            THE COURT:  When they come in, I don't hold it

8    overnight.

9            MR. KIYONAGA:  I appreciate the Court's flexibility.

10           THE COURT:  So we have what's going to them.

11           MR. CANNON:  Just making sure.  You definitely want

12   us here at 5 o'clock?

13           THE COURT:  A little before -- yeah, ten of or

14   whatever.  And then we'll -- they'll come out.  We'll excuse

15   them, unless we've gotten something from them.

16           MR. GUILLAUME:  Your Honor, I have one question.

17   With respect to the deliberations on Monday, if the Court -- is

18   the Court going to ask them, or has the Court already asked

19   them?

20           THE COURT:  They understand they have it off because

21   a couple of people -- two people have asked if we're going to

22   have it off.  And one mentioned they had a doctor's

23   appointment, and the one had something else to do.  So I said,

24   you know, we had told them that they could have that day off

25   and we would.

1        They may talk among themselves and decide that the

2   appointment's in the afternoon and they're about finished and

3   they want to come on Monday morning.  If they tell me that,

4   we'll do that.

5        MR. GUILLAUME:  So the Court is going to wait for

6   them to tell you?

7        THE COURT:  I'm not going to force them to change

8   their plans --

9        MR. GUILLAUME:  Okay.

10       THE COURT:  -- you know, in terms of doing it.

11       So that's why I -- and part of it was Juror No. 3, who

12  had some -- but she's the alternate.  So we don't have to worry

13  about her.  But there's two others that specifically asked me

14  about it.

15       MR. GUILLAUME:  Okay.  Thank you, Your Honor.

16       THE COURT:  All right.  I think that's it.  If we

17  get -- you can -- if we can have your cell phone numbers and

18  stuff so we can get in touch.  Okay?  Keep our fingers crossed

19  we get a verdict, whatever it is.

20       (Recess taken.)

21       THE COURT:  All right.  As I've indicated, we

22  received a note, which said as to Instruction No. 24, "What's

23  the meaning under the law of" -- in quotes -- "'oppress' and

24  intimidate?"  And a question mark.

25       So unlike Count 2, the FACE Act, which had some

1    definitions, this one does not, separately, you know, the way

2    the FACE Act did.  But this case does indicate which you're

3    supposed to find.  So that seemed straight out of it.  I don't

4    know whether you've had an opportunity to look at it.

5           Mr. Crabb, let me start with you.

6           MR. CRABB:  Good afternoon, Your Honor.

7           We have had an opportunity to look at the Court's

8    proposed instruction, and we agree with it, except for one

9    thing we'd like to ask the Court to consider.  If I'm reading

10   this right, the jury asked about the meaning of oppress and

11   intimidate.

12          THE COURT:  Right.

13          MR. CRABB:  We'd ask that the Court instruct -- I

14   believe now it says conspire to injure, intimidate.  We'd ask

15   conspire to oppress and intimidate, because oppress and

16   intimidate are the definitions they've asked for.

17          THE COURT:  I know, but that's not --

18          Okay.  Okay.  Where is everybody else on this?

19          MR. CRABB:  Just the oppression in the statute,

20   that's one of the appropriate terms.

21          THE COURT:  Oppress is actually -- what you're

22   asking -- I'm sorry.  For what?

23          MR. CRABB:  Well, we're -- if I understand correctly,

24   the jury has asked for the definitions of oppress and

25   intimidate.

1          THE COURT:  Right.

2          MR. CRABB:  Not injure and intimidate.  So we're

3    asking that they be instructed on oppress and intimidation.

4    And oppress is in the jury instruction and in section 241.

5          THE COURT:  Yeah.  But I think in order to -- in

6    order to make it clearer, it's -- it's straight out of it -- in

7    terms of the injurious part of it, it has -- instead of --

8    you're saying instead of intimidate, you're saying oppress?

9          MR. CRABB:  Instead of injure -- because the jury is

10   asking about --

11         THE COURT:  They asked about oppress and intimidate.

12   Okay.  And what's in the case?

13         MR. DUNN:  Straight words.

14         THE COURT:  Yes, two separate words.  And in the

15   case, it talks about ". . . a character to prevent this, or to

16   throw obstruction in the way of exercising this right, and for

17   the purpose and with the intent to prevent it, or to injure or

18   oppress a person because . . ." blah, blah, blah.

19         So you're asking, you said, from intimidate to put

20   oppress?  Is that what you're asking?

21         MR. CRABB:  No, Your Honor.  I'm asking instead of

22   injure -- I don't believe the jury is asking about injure.

23         THE COURT:  No, I'm -- we're putting that because

24   that's in the -- that's what starts that phrase in the case.  I

25   can take it out and just start with that, but it -- part of it

1    was to just have it be complete according to the way they

2    wrote.  I think if they all agree, we can take injure out and

3    just start with the rest of it.

4         Can I suggest that you-all -- have you-all had an

5    opportunity to talk so I'm not -- so you potentially can come

6    up with a proposal or not a proposal?

7         MR. KIYONAGA:  I'm sorry.  We're reaching out to the

8    associates to try to get some ammunition.

9         THE COURT:  But have you talked to Mr. Crabb?

10         MR. KIYONAGA:  No, ma'am.

11         MR. CANNON:  No.  We are just researching the

12    question now, Judge.

13         THE COURT:  So would it be worthwhile to get off the

14    bench and let you-all talk together and see if you can come up

15    with something or not, instead of my hearing from everybody

16    individually?

17         MR. CRABB:  I doubt that we'll work anything out with

18    the defense, Your Honor.

19         THE COURT:  I'm sorry?

20         MR. CRABB:  I doubt we will come up with a consensus

21    with the defense on that.

22         THE COURT:  Well, I'm not going to make that

23    assumption, but I think you can at least discuss.

24         MR. CRABB:  Absolutely.

25         THE COURT:  So as I understand what is it that you --

1   the language to be, Mr. Crabb?

2          MR. CRABB:  Well, if I may.  Two things, Your Honor.

3          One, we would like the Court to address both parts of

4   the jury question and define both the word oppress and the word

5   intimidate the way --

6          THE COURT:  And where do you want to get this from?

7   They -- this is -- as far as I can tell, the best -- this case

8   has the best discussion that I know of relating to what's

9   required.

10         MR. CRABB:  Your Honor, I apologize.  We have not had

11  a chance since receiving the note --

12         THE COURT:  Well, may I suggest that you-all --

13  that's why I'm going to get off the bench.  I suggest you

14  take -- it's in the middle here, which it's -- which I think we

15  had cited to precisely where it is.  I'd ask that you-all look

16  at it because that's what I've taken it from.

17         MR. CRABB:  Yes, Your Honor.

18         THE COURT:  I mean, it doesn't separate it out,

19  unlike the other -- for the FACE Act.  I mean, in other words,

20  the FACE Act was nice because it had actual definitions.

21         This statute doesn't do that.  This case interprets it.

22  It's binding because it's Supreme Court, so -- but it's

23  still binding.  It's the closest we have to what we can come up

24  with.

25         So I would just ask that you look at the case, and then

1    if you want to propose some language, let me know and talk to

2    them.  They don't agree, they don't agree.

3              MR. CRABB:  Yes, Your Honor.

4              THE COURT:  All right.  Can you give me some idea of

5    where you-all are so I can go back and look while you-all try

6    to work something out?

7              MR. CANNON:  Sure.  There may be something we can

8    degree to with the State [sic].  I don't know.

9         I do -- I do join Mr. Crabb, though, in just pointing

10   out the difference between the question oppress and

11   intimidate --

12             THE COURT:  Right.

13             MR. CANNON:  -- and then your proposed answer that

14   says injure or intimidate.

15             THE COURT:  We only -- there's only so much in the

16   case.

17             MR. CANNON:  I understand.  I share their concern,

18   and I would have brought it up if they had not.

19             THE COURT:  No.  I agree.

20             MR. CANNON:  And the other thing, of course, is that,

21   at least if it's possible to do so, despite the fact that we

22   have two separate statutes, it seems to me that intimidation,

23   as it's defined in FACE, would be -- it would be nice if that

24   were the only definition the jury were dealing with and they

25   didn't have conflicting definitions in the two statutes.

1          So since the conspiracy statute doesn't define

2     intimidation, I would propose to the Court that we use the

3     definition from FACE.  There are two cases that may bear upon

4     that that I would direct the Court's attention to, if you're

5     getting off the bench to think about this some more anyway.

6          And that would be the *Sulpizio* case.  And by the way,

7     Judge, the -- the *Waddell* case that -- that you're looking at,

8     it -- it did deal with conspiracy, but it dealt with a

9     different statute, 18 U.S.C. 51, I believe.  And that case is

10    from 1884.

11         THE COURT:  It is, but it's -- you know, this is

12    the -- this is the one that actually seems to discuss what the

13    purpose of the statute is.

14         MR. CANNON:  Sure.

15         THE COURT:  So it -- it looked as if it's -- it's

16    binding.

17         MR. CANNON:  Right.

18         THE COURT:  There's none that exactly address it

19    quite the same way that we could find.

20         MR. CANNON:  Right.

21         THE COURT:  And it's the same -- it's -- you know,

22    it's the 241.

23         What are the cases?

24         MR. CANNON:  The other thing -- I thought you might

25    take two cases that are -- you might take a look at are the

1  *Sulpizio* case.  I want to say it's S-u-l-p-i-s-i-o [sic] -- at

2  403 F. Supp. 3d 461.

3         THE COURT:  What circuit is that?

4         MR. CANNON:  I don't recall.  Was that New York?

5         THE COURT:  District Court case?

6         MR. CANNON:  Yeah, of course, it's district court.

7  But it was east.  I don't remember where it was.

8         MR. CRAMPTON:  I believe it's the Third Circuit,

9  Your Honor.

10         THE COURT:  And what is the other one?

11         MR. CANNON:  The other one is *U.S. v. Lindgren*,

12  L-i-n-d-g-r-e-n, 883 F. Supp. 1321 at page 1328.

13         THE COURT:  All right.  I'll go take a look at it,

14  but, you know, they have no binding effect, frankly.  But I'll

15  go back and take a look.  You will all sit down and figure out

16  whether the group here can come up with a proposal.  If you

17  can't, you can't.

18         MR. CANNON:  Judge, do you happen to have a printed

19  copy of those instructions?  Our computers are not with us

20  right now.

21         THE COURT:  We can -- we can do that.

22         MR. CANNON:  Can you zip one out?

23         THE COURT:  Yeah.  Sure.

24         MR. DUNN:  I wanted to just add that I did submit a

25  proposed instruction on the definition of oppress, not from any

1    case authority, but a compilation from three different

2    dictionary definitions.

3              THE COURT:  Well, we can always do dictionary -- I

4    mean, you can always do that as the last resort.  I was trying

5    to find something that was associated with the actual statute.

6    But if -- that's, you know, sort of the last resort of coming

7    up with something.

8         All right.  Take a look.  Figure it out.  See if you can

9    come up with some language and go back and consider and look at

10   these cases.

11             (Recess taken.)

12             THE COURT:  Okay.  So here's where I am.  I've sent

13   you the last version, which is short and pithy.

14        But to put this in a nutshell, the scope of 241 is very

15   broad and -- unlike the FACE statute, which is much narrower.

16   The scope of 241, all of the cases and -- we had cited another

17   case from the Eastern District of New York that, sort of, is a

18   compilation of all of the cases.

19        All of them, if you look at them, discuss the scope of

20   it as being very broad.  The -- there's no specific definition

21   discussed in any of the cases in terms of breaking each one

22   down like the FACE case -- FACE statute does.  So there's no

23   specific definition to discuss.

24        But they indicate that the terms cover a wide variety of

25   conduct.  That's the distilled version, look at all of these.

1  The cases you have cited to me all involve the FACE Act, and

2  the one is a civil case.  There's a totally different scope.

3  So I don't think it's appropriate to -- frankly, they weren't

4  particularly helpful.

5       But the cases that I would involve -- I'm back to

6  *Waddell*, which still is a Supreme Court case.  It's an old

7  statute, and it's an old case, but, you know, it hasn't changed

8  anything.  It basically sets out the question on page 86 and

9  describes it in the full terms, in terms of what the opinion is

10  about.  "Does the information charge any offense under that

11  section?  The section reads thus:  'If two or more persons

12  conspire to injure or oppress, threaten, or intimidate, any

13  citizen in the free exercise or enjoinment of any right or

14  privilege secured to him'" -- we'll leave out the

15  Constitution -- "'or laws of the United States . . .'"

16       Then when you go to 87, there's that section in between

17  that begins to talk about what the -- the scope is in very

18  broad terms.  So that's part of what I had used.

19       The government did come up with an Eighth Circuit case,

20  and there's a D.C. Circuit case, which is the *Liddy* case, which

21  the -- pretty much stands for the same thing.

22       The Eighth Circuit does have a more specific definition

23  in terms of oppress and intimidate.

24       So if you meld the *Waddell* decision and the -- the

25  Eighth Circuit one, it's -- although it was reversed on other

1   things, it wasn't reversed on this issue.  I think it's that

2   one.

3           The words oppress and intimidate are not used in a

4   technical sense, which I think is clear from looking at all of

5   the cases, but cover a variety of conduct, which is also in all

6   of the cases.  That's intended to harm, frighten, punish,

7   prevent, or obstruct a person's exercise or enjoyment of a

8   right guaranteed by the laws of the United States.

9           That's a distilled description that I think is backed

10  up -- I'll write something longer -- by *Waddell*; the

11  D.C. Circuit, to some degree, in the *Liddy* case; and the Eighth

12  Circuit, which is a little more specific.  But the D.C. Circuit

13  and the Eighth Circuit complement each other.  So that would be

14  my proposal in terms of coming up with something.

15          Anybody have a contrary one?

16          MR. CANNON:  Your Honor, we do have a couple comments

17  that I think are worth addressing that I don't think the Court

18  has addressed yet.

19          The rule of lenity is actually interesting on this

20  question, and it provides that where a criminal statute is

21  ambiguous, the ambiguity needs to be resolved in favor of the

22  accused.

23          THE COURT:  It's not an ambiguous statute, though.

24  It's -- it's a statute that just simply has a very large --

25  very broad scope.

1    MR. CANNON:  Well, it has no definition at all.  I

2 think ambiguity is judged on the face of the statute.  And even

3 if not, at least where there's tension between that and -- and

4 the underlying statute, I think ambiguity can be seen.

5    Very importantly, the rights in question here are

6 defined by FACE.  We've already said.  We think, therefore,

7 FACE has to be the controlling definition.

8    Couple of things.  Two -- two rules of construction that

9 we all know.  The specific controls the general.  There's --

10 obviously, there's case law on that.  One that we have here is

11 *Howard v. Riggs*, 32 [sic] A.2d 701.  I would propose that a

12 statute that contains --

13    THE COURT:  Whose case is that?

14    MR. CANNON:  That's *Howard v. Riggs*.  I've been given

15 a cite.  I've not reviewed the case.

16    THE COURT:  Is that a federal case or local case?

17    MR. CANNON:  Atlantic Second.  It sounds like a state

18 court case.

19    THE COURT:  It's the D.C. Superior Court, I assume,

20 or the D.C. Court of Appeals?

21    MR. CANNON:  Perhaps.  I really don't know, Judge.

22    THE COURT:  Which has absolutely no -- the local

23 courts have a totally different -- they don't even adopt all of

24 the federal rules.  So the D.C. Court of Appeals is not binding

25 at all.  Even a -- another circuit, federal circuit, would have

1     more binding power.  But go ahead.

2           MR. CANNON:  But I'd like to propose to the Court,

3     just as a general manner, that a statute that contains a

4     definition is the more specific as compared to a statute that

5     does not.

6           THE COURT:  Okay.

7           MR. CANNON:  The second rule of construction that we

8     all know, the recent controls over the older.  And I believe

9     FACE is more recent than the conspiracy statute.

10          Now, there is a D.C. Circuit case that defines

11    intimidate, *U.S. v. Carr*, C-a-r-r, 9 --

12          THE COURT:  Does it involve the statute at issue or

13    something else?

14          MR. CANNON:  No.  It's a bank robbery case, but it

15    talks about bodily harm in the definition of intimidate.

16          THE COURT:  That's not going to work either.  I mean,

17    robbery is totally -- totally different in terms of how it's

18    defined.  And every jurisdiction has a different definition of

19    robberies and whether it's a crime of violence or not.

20          MR. CANNON:  Well, I think it was the definition of

21    intimidate, but within the robbery statute.

22          THE COURT:  Okay.

23          MR. CANNON:  Now, getting back to the *Waddell* case,

24    as you certainly know, the conspiracy statute in question here

25    has two clauses.  The second --

1          THE COURT:  Injure and oppress.

2          MR. CANNON:  No.  It has --

3          THE COURT:  Injure and obstruct.

4          MR. CANNON:  No.  Two separate clauses.  The one that

5    applies to this case, the second one talking about going in

6    disguise and stuff and -- and conspiring under that, which,

7    obviously, is not applicable here.

8          THE COURT:  Right.  Is not applicable.

9          MR. CANNON:  But the *Waddell* -- the *Waddell* ruling

10   involved charges under both of those clauses, and -- and the

11   injure or -- the prevent or throw obstruction language in the

12   *Waddell* opinion was referring to the second clause.  The injure

13   or oppress language in *Waddell*, I believe, was referring to the

14   first.

15         THE COURT:  I'm not sure about that in terms -- I

16   would have to look more carefully.

17         MR. CANNON:  Sure.

18         THE COURT:  Let's get to the punch line.  You want to

19   use the description in the FACE Act.

20         MR. CANNON:  Right.  And --

21         THE COURT:  Which is more narrow.  The -- the scope

22   of the FACE Act is very specific, very -- and a very -- much

23   more limited scope, while the -- the -- the 241, the conspiracy

24   one, is very broad.  That's the one thing that all of them have

25   discussed and in different ways of saying it.

1     They don't say they're interchangeable but that it

2  covers all sorts of conduct.  I don't see why we would not use

3  cases that use definitions -- and this is a melding --

4  definitions that that relate to the conspiracy.

5          MR. CANNON:  I appreciate that, Judge.  I'm just

6  trying to avoid jury confusion.

7          Now, and here's -- this is an important case on that

8  point.  In *U.S. v. Ingram*, 360 U.S. 672 -- 360 U.S. 672 --

9  687 -- it's a 1959 case -- it provides that conspiracy to

10  commit a particular substantive offense cannot exist without at

11  least the degree of criminal intent necessary for the

12  substantive event -- or offense itself.  That case was --

13          THE COURT:  Is it the same conspiracy statute that

14  we're talking about here or not?

15          MR. CANNON:  I do not know that right now.  This all

16  comes together pretty fast.

17          THE COURT:  The conspiracy is -- there's a whole

18  series of different statutes on conspiracy.

19          MR. CANNON:  Sure.

20          THE COURT:  This is a very specific one relating to

21  rights.  I can go and take a look at that.

22          MR. CANNON:  Let me give --

23          THE COURT:  Excuse me.  But the intent -- we

24  certainly have a discussion of intent with the rest of it.  If

25  you take -- do these -- this is a short definition I'm

1     proposing, if you look at it, in terms of -- it's not a

2     technical sense, which is certainly more the FACE Act.

3          It covers a variety of conduct intended to harm,

4     frighten, punish, prevent, or obstruct a person's exercise or

5     enjoyment.  And that's straight out of that Eighth Circuit

6     case, which the D.C. Circuit -- although it isn't that

7     specific -- certainly would support.  And it's consistent with

8     *Waddell*.

9          Why wouldn't you use that when that actually talks about

10    the conspiracy statute that's at issue?

11              MR. CANNON:  Well, I think there are two competing

12    concepts here.

13         One being that these are totally different statutes, and

14    the defendant could be convicted under either one and not the

15    other.  And they should stand on their own.  And I appreciate

16    that.

17         But the other -- the competing concept to that one is, I

18    think, the one that should control here, which is that we are

19    only dealing with one right, and it's the right that exists

20    under FACE.  And so where there is conflict between the two

21    statutes, I think that the one needs to control.  Now, let me

22    make --

23              THE COURT:  What's the conflict?  There isn't a

24    conflict.  One is --

25              MR. CANNON:  The conflict is -- the conflict is --

1          THE COURT:  Hold on one second.  One is very narrow

2     in their scope, and the other is a much broader one.  What's

3     the conflict?

4          MR. CANNON:  The conflict is that the jury would

5     supplant the specific requirements under FACE with the broad

6     requirements under the conspiracy and -- and especially with

7     respect to intimidate.

8          You know, intimidate on its face is a higher threshold,

9     very high.  It has to put a person in fear of bodily harm.

10          THE COURT:  In FACE?

11          MR. CANNON:  In FACE; right.

12          THE COURT:  Right.  But you're, basically, putting in

13     a higher standard in -- in a -- in a statute that does not

14     require that.

15          MR. CANNON:  I -- I appreciate that -- we -- we

16     would -- I don't want the low standard from conspiracy to go

17     into FACE, and the government doesn't want the high standard of

18     FACE to go into conspiracy.

19          THE COURT:  Well, I think they're two different

20     things.  I mean, FACE defines it and specifically has a

21     definition that sets it out.

22          The other statute purposefully kept it very broad, which

23     is the -- *Waddell* makes the point that it covers a variety of

24     conduct.  So it's hard to indicate, but it did indicate certain

25     things that clearly would be involved with it, and it's not a

1    technical term.

2               MR. CANNON:  Right.

3               THE COURT:  Unlike the FACE Act, which has more

4    technical meanings to those.  So you're putting in technical

5    meanings of FACE into a statute that the case law says is not

6    supposed to happen.

7               MR. CANNON:  One more thing.

8               THE COURT:  Okay.

9               MR. CANNON:  Again, these things are coming at us

10   very quickly.  We haven't had a chance to look at this.

11        But the *Ingram* case that I have suggested -- you point

12   out, reasonably, that we don't know what conspiracy statute

13   that relates to.  It was a 1959 case.  But it was cited by

14   Supreme Court with approval and requoted that same part I just

15   gave you in 1975, so.

16              THE COURT:  Okay.  I will go look at that.  But as I

17   understand it, what you're arguing for is that the -- you

18   should use the definition, which is very specific and

19   technical, in the FACE Act and use that same definition -- as

20   opposed to a more generalized one, which is what we have here?

21              MR. CANNON:  Right.

22              THE COURT:  Even though the conspiracy statute that's

23   at issue -- because there's certainly different ones -- that's

24   at issue has a very broad scope, cover- -- isn't technical.

25   All the cases say that, from the Supreme Court to every single

1   circuit.  And they also indicate it covers a variety of conduct

2   so it's difficult to define specific things.  But does

3   indicate -- *Waddell* has some language which is partly in here.

4   And the Eighth Circuit comes up, which is -- you know, which

5   is -- the approach they took is supported by the D.C. Circuit.

6   So I'll go back and look at the *Ingram* case.  But unless I hear

7   something else, we're going to -- this is probably what I will

8   go with.

9        Okay.  Let's see what else.

10       If I can hear from the government.

11            MR. KIYONAGA:  Your Honor, I could add briefly --

12            THE COURT:  If you'll wait one second while I look

13   at -- okay.

14       Mr. Crabb, do you want to respond to this at all?  And

15   let's do one note at a time.

16            MR. CRABB:  Your Honor, a couple things.

17       If I may, first, with respect to the *Ingram* case, I had

18   a chance to look at it very quickly.  It's not applicable here.

19   *Ingram* deals with the 371 conspiracy, which is the general

20   U.S. Code conspiracy statute.  Which, of course, if you're

21   using 371, the intent has to be the same as the substantive

22   offense.  That's not what we're doing here.

23       As the Court has pointed out, 241 is a specific

24   conspiracy.  So what the proposition *Ingram* stands for is not

25   applicable here.  It's dealing with 371, the general U.S. Code

1  statute, and saying then it's conspiracy to commit some other

2  U.S. Code offense.  That's not what we have here.  We have the

3  conspiracy to do 241.  It's not a conspiracy to violate the

4  FACE Act.

5  *Ingram* might apply if under 371 we had charged a

6  conspiracy to violate the FACE Act.  That's not what's charged

7  here.  What's charged here is the 241 conspiracy.  So we don't

8  believe the -- *Ingram* is at all formative.

9  And this idea about needing the same intent for the

10 substantive offense, this conspiracy offense, doesn't apply in

11 this situation.

12 Also, we believe that the defense is conflating certain

13 statutory construction concepts.  The idea that specific

14 controls the general would be within one statute, but it can't

15 be among different statutes.  That one statute that might be

16 more specific -- here the FACE Act -- doesn't control a totally

17 different statute.  That theory of statutory construction only

18 applies within one statute.

19 And the last point I'd like to make -- unless the Court

20 has any questions -- is to correct something defense said what

21 the government wants.  What the government wants here is for

22 the jury to be instructed as to the properly -- as to each

23 offense.  We're not trying to conflate or graft one onto the

24 other.

25 We want the jury to be instructed correctly on 241 and

1    correctly on 248.  And it happens all the time when there's

2    more than one offense charged that the jury has instructions

3    for one offense and instructions for a different offense, and

4    they're not to conflate or mix them.  That's all we're asking

5    for.

6              THE COURT:  Okay.  Plus I don't see this as a

7    particularly -- government instruction.

8         Mr. Kiyonaga, you wanted to say something, and then

9    we're done on this.

10             MR. KIYONAGA:  Briefly.  I don't want to preempt

11   Mr. Cannon.  I think we both want to say something.

12             MR. CANNON:  I just want to very briefly point out,

13   I'm very confident that the specific general thing applies

14   equally to separate statutes.

15             THE COURT:  I'll take a look at that.  I thought the

16   government was correct, but I could be wrong.

17             MR. KIYONAGA:  Your Honor, John Kiyonaga for

18   Mr. Geraghty.

19        Your Honor, just to follow briefly on what Mr. Cannon

20   said, the language from the *Ingram* decision is -- is

21   comprehensive.  It doesn't -- the quote, which was a verbatim

22   quote that Mr. Cannon --

23             THE COURT:  Is it a different statute?  Is it a

24   different conspiracy statute?  If it's the 300 version, it's a

25   completely different conspiracy than the one that's here.

1      I'm going to take a break and go look at it.  But as I

2   understand it -- is it the same one or not, do you know?

3          MR. KIYONAGA:  It's the conspiracy to defraud the

4   United States, but --

5          THE COURT:  No.  I'm asking you what statutory

6   provision is it.  Is it under 241 or not?

7          MR. KIYONAGA:  No.

8          THE COURT:  Then it's is a different conspiracy

9   statute that you're talking about.  So as a practical matter,

10   it doesn't -- why not look at the ones that actually do talk

11   about 241?

12          MR. KIYONAGA:  Because --

13          THE COURT:  A different conspiracy statute doesn't

14   work in terms of how it's defined.  I'll go look at it, but if

15   it was 241, it would be one thing.  If it's 371, that's the

16   general conspiracy for -- used to -- for a whole series of

17   different things.  And as the -- a different -- than some of

18   the -- some of the language relating to what a conspiracy is

19   about agreements is the same.  But it certainly has -- the

20   other elements are completely different than what 241 is.

21          MR. KIYONAGA:  Your Honor, I would submit that if the

22   Supreme Court wanted to limit the application of *Ingram* to 371,

23   it would have said so in that language.  The language is

24   conspiracy requires -- and it doesn't specify which sort of

25   conspiracy.  That implies to me, undeniably, a comprehensive

1    intent on the part of the Supreme Court.  That case was cited

2    favorably again by the Supreme Court in 1975 in the matter of

3    *United States v. Feola*.

4             THE COURT:  And was that also a 371 conspiracy?

5             MR. KIYONAGA:  I don't know, Your Honor.  I'm --

6             THE COURT:  Well, that doesn't help.  I mean, as --

7    you know, it would help to have these cases at least relate to

8    the conspiracy statute that -- at issue.  I will go and take a

9    look at it in both of those cases.  But it has less

10   applicability if it's not discussing the actual statute that's

11   at issue, but I'll go and look at it.

12        What else?

13            MR. KIYONAGA:  The cite to *Feola*, which is spelled

14   F-e-o-l-a, is 420 U.S. 671.  That's a 1975 case.

15            THE COURT:  Okay.  I'll go take a look at the two

16   cases and see if they have any applicability.

17            MR. KIYONAGA:  Your Honor, just take a moment,

18   please, to consider the practical repercussions of the

19   instruction that the Court has -- has suggested.  The word

20   prevent is susceptible to an infinite number of

21   interpretations, and it leaves the interpretation of the

22   statute open to subject/arbitrary interpretation.

23        If I decide to write a scathing op-ed piece about

24   abortion, calling people who seek abortions murderers and

25   suggesting that they be pilloried and ostracized, I haven't

1  gone anywhere near a clinic.  But I certainly, arguably, in the

2  minds of at least somebody, have sought to prevent somebody's

3  access -- somebody's access to that.  It is -- that term is so

4  broad --

5          THE COURT:  But the statute is fairly broad.  But,

6  frankly, I don't see writing these articles or all these people

7  that have been doing pamphlets and stuff would have been

8  charged with something.  They haven't been because it doesn't

9  fit this definition.

10         MR. KIYONAGA:  Your Honor, under the standard the

11 Court seems inclined to apply, they could be.  And that is my

12 concern.

13         THE COURT:  Well, I would disagree on that point.

14 But I will go look at the other two cases.

15     We have a second note.  So if you'll sit down, I'll read

16 you the second one.

17         MR. KIYONAGA:  Thank you.

18         THE COURT:  While we get --

19     "Regarding Count 2, Special Findings, is force limited

20 to physical force or can forceful language -- yelling -- be

21 considered?"

22     I don't know the quick answer to that.  Our

23 definition -- I'm assuming -- I'm assuming no, but I'll go and

24 take a look quickly.

25         Mr. Crabb, do you have a position?

1     MR. CRABB:  May I have one moment, Your Honor?

2     THE COURT:  If we have a quick answer that's agreed

3  to, I'll send it back.  I was going to go back and look at it

4  more carefully; what we had defined.

5     MR. CRABB:  Your Honor, we believe the Court has

6  already answered this question.  The Court has instructed

7  the jury that as to the first element, the term force means

8  power and/or violence exerted upon or against a person or

9  property.

10     THE COURT:  Okay.  Yelling, I don't think, fits that.

11     MR. CRABB:  Correct.

12     THE COURT:  So the answer is no, and we all agree.

13     MR. CANNON:  I think that's pretty clear.  And if you

14  need any help, the next item is threat, which would incorporate

15  language, and I think that's -- helps distinguish it from

16  force.

17     THE COURT:  Yeah.  I'm just going to say the answer

18  is no.  So that one is an easy one.

19     Let me go look at the two cases, and then I'll be back.

20  So let me -- what I'm going to do, if you don't mind, is on the

21  note from the jury about the yelling, I'm just going to say the

22  answer is no and send it back instead of -- so I can -- and

23  just tell them we're working on the first one.

24     MR. CRAMPTON:  Did you tell them no more questions?

25     THE COURT:  No.  Obviously, they're carefully looking

1    through, which is what you want.

2            (Recess taken.)

3            THE COURT:  All right.  I've looked at the *Ingram*

4    case and *Feola*.  It's a totally different statute, different

5    discussion.  It's not persuasive.

6        So over your objections, which you've already put in,

7    I'm going to send back the Court response to the following

8    question from the jury:  "What's the meaning under the law

9    of 'oppress' and intimidate?" in Instruction No. 24, as it

10   relates to Count 1.

11       The Court provides the following answer:  "The words

12   'oppress'" -- in quotes -- "'and intimidate'" -- in quotes --

13   "are not used in any technical sense but cover a variety of

14   conduct intended to harm, frighten, punish, prevent, or

15   obstruct a person's exercise or enjoyment of a right guaranteed

16   by the laws of the United States."

17       So I'm sending this back.  I've heard your objections.

18       I would hang out because I have a feeling we're going

19   to -- they have more questions, we'll get them, and it would be

20   nice to be able to promptly answer them.  If you want to hang

21   out in the courtroom or witness rooms or just in the

22   courthouse, that's fine with me.

23           MR. CANNON:  Those witness rooms were locked earlier.

24           THE COURT:  We can open them for you.  Sorry.

25           MR. CANNON:  Can we get them open?

1          THE COURT:  Yeah.  At least it gives you another

2     place to sit.  And just be watching your cell phones in terms

3     of if we get anything else.

4          (Recess taken.)

5          THE COURT:  All right.  Our last note is "We're not

6     going to make a decision before 5:00 p.m. today."  So no

7     verdict today.

8          But they're not asking to come and deliberate Monday.

9     They've got other arrangements.  So they'll be back on Tuesday.

10    They have other arrangements because they originally were told

11    they didn't -- you know, we wouldn't be sitting on the 28th.

12    So a number of them have made arrangements for other things.

13         MR. CANNON:  Did I hear you say they're not coming in

14    on Monday?

15         THE COURT:  They're not coming in on Monday.

16    We've -- a number of them have set stuff up, thinking that

17    that's -- they were going to have that day off.

18         All right.  So bring them in and we'll excuse them.

19         (Proceedings held in the presence of the jury.)

20         THE COURT:  All right.  I guess it's evening almost.

21    Anyway, good afternoon or good evening, everyone.

22         So what I'm going to do is excuse you for this evening

23    and ask you to come back on Tuesday in time for coming out at

24    9:00.  You don't have to wait for lawyers or anybody else.  As

25    soon as everybody is there, we'll provide the materials that

1    you need for you to begin your deliberations again and so we

2    don't need to bring you into the courtroom.  We'll keep track,

3    you know, when you start deliberating.  Okay?

4          We'll put all your things away.  We have a locked place

5    to stick -- nobody is going to look at anything.  We'll put it

6    in a locked place.

7          So don't talk about the case, please.  Don't look at

8    anything if something shows up.  Make sure nobody talks to you.

9    You're in the middle of your deliberations.  I want to make

10   sure we don't have any problems in terms of getting this case

11   completed without any issues.

12         So have a good weekend.  Take care of yourselves.  Be

13   well.  And see you on Tuesday.

14             (Proceedings held out of the presence of the jury.)

15             THE COURT:  Mr. Cannon.

16             MR. CANNON:  Just letting you know, with the Court's

17   leave, Mr. Crampton will be taking my place at this point.

18             THE COURT:  Okay.  That's fine.

19         And, Ms. Handy, I understand you're willing to have that

20   done?

21             DEFENDANT HANDY:  We talked about it and it's fine.

22             THE COURT:  Okay.  He's been sitting through the

23   trial so I have somebody who's familiar with what went on,

24   which was important.

25         All right.  Then what I would ask is if you would check

1   in Tuesday morning, first thing in the morning, so we know

2   where you are and we've got the correct phone numbers.  You're

3   in the courthouse, where you are, someplace else.  And then

4   we'll let you -- you know, let you know.  I would call at 9:00

5   or shortly after that -- and they've been very prompt in terms

6   of coming -- that they've started their deliberations.

7          And then we'll just wait and see.  We'll set up the same

8   thing in terms of notes, as to whether I need to bring you back

9   or don't need to bring you back.

10         All right.  So, everybody, take care.  Be well.  I

11  expect to see everybody back.

12             (Proceedings were concluded at 4:58 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1          <u>CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER</u>

2

3              I, Nancy J. Meyer, Registered Diplomate Reporter,

4     Certified Realtime Reporter, do hereby certify that the above

5     and foregoing constitutes a true and accurate transcript of my

6     stenograph notes and is a full, true, and complete transcript

7     of the proceedings to the best of my ability.

8

9                   Dated this 25th day of August, 2023.

10

11                   /s/ Nancy J. Meyer
                     Nancy J. Meyer
12                   Official Court Reporter
                     Registered Diplomate Reporter
13                   Certified Realtime Reporter
                     333 Constitution Avenue Northwest
14                   Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25

**'**

**'and** [1] - 92:12
**'If** [1] - 76:11
**'oppress'** [3] - 67:23, 92:9, 92:12
**'or** [1] - 76:15

---

**1**

**1** [11] - 5:12, 33:8, 43:11, 43:18, 43:22, 44:1, 44:7, 46:5, 48:24, 50:1, 92:10
**11** [1] - 46:5
**11:15** [1] - 59:17
**11:20** [1] - 59:17
**12:30** [3] - 9:17, 13:14, 56:2
**13** [1] - 54:8
**1321** [1] - 74:12
**1328** [1] - 74:12
**14** [2] - 3:3, 54:8
**14th** [1] - 29:20
**15** [2] - 5:7, 5:12
**16th** [1] - 28:22
**18** [1] - 73:9
**1884** [1] - 73:10
**1959** [2] - 81:9, 84:13
**1975** [3] - 84:15, 89:2, 89:14
**1:00** [1] - 56:1
**1:30** [3] - 9:17, 13:15, 56:2

---

**2**

**2** [29] - 5:12, 38:6, 38:7, 40:18, 41:1, 41:8, 41:12, 41:14, 41:18, 41:20, 41:22, 41:24, 42:4, 43:12, 43:17, 43:20, 43:24, 44:6, 49:3, 49:9, 49:11, 49:14, 49:18, 49:23, 50:2, 50:4, 67:25, 90:19
**20** [1] - 13:9
**2020** [11] - 28:8, 28:19, 28:24, 29:1, 29:15, 29:20, 29:23, 34:21, 40:11
**2021** [2] - 28:22, 29:19
**22** [1] - 29:1
**22-096** [1] - 4:3
**22nd** [8] - 28:8, 28:19, 28:24, 29:15, 29:23, 29:25, 34:21, 40:11
**24** [2] - 67:22, 92:9
**241** [13] - 69:4, 73:22, 75:14, 75:16, 80:23,

---

85:23, 86:3, 86:7, 86:25, 88:6, 88:11, 88:15, 88:20
**248** [1] - 87:1
**28th** [1] - 93:11
**2:00** [1] - 56:1

---

**3**

**3** [4] - 5:8, 5:12, 54:7, 67:11
**300** [1] - 87:24
**30th** [1] - 29:19
**32** [1] - 78:11
**360** [2] - 81:8
**371** [7] - 85:19, 85:21, 85:25, 86:5, 88:15, 88:22, 89:4
**3d** [1] - 74:2

---

**4**

**403** [1] - 74:2
**420** [1] - 89:14
**461** [1] - 74:2
**4:58** [1] - 95:12

---

**5**

**5** [4] - 10:8, 46:5, 56:24, 66:12
**51** [1] - 73:9
**5:00** [4] - 10:10, 10:11, 10:25, 93:6

---

**6**

**6** [2] - 46:5
**671** [1] - 89:14
**672** [2] - 81:8
**687** [1] - 81:9
**6:00** [1] - 10:23

---

**7**

**7** [1] - 46:5
**701** [1] - 78:11
**7th** [2] - 34:21, 40:11

---

**8**

**86** [1] - 76:8
**87** [1] - 76:16
**883** [1] - 74:12

---

**9**

**9** [1] - 79:11
**9:00** [2] - 93:24, 95:4

---

**A**

**A.2d** [1] - 78:11
**abetted** [1] - 41:11
**abetting** [2] - 41:5, 41:12
**ability** [1] - 32:1
**able** [7] - 15:14, 45:7, 47:22, 63:4, 63:5, 63:18, 92:20
**abortion** [7] - 27:23, 27:25, 28:1, 33:18, 37:14, 39:23, 89:24
**abortions** [2] - 28:4, 89:24
**absolute** [2] - 21:5, 30:11
**absolutely** [2] - 70:24, 78:22
**accept** [4] - 16:10, 24:16, 25:17, 28:13
**acceptable** [1] - 22:6
**accepting** [1] - 62:3
**Access** [1] - 38:6
**access** [4] - 38:8, 49:4, 90:3
**accessing** [2] - 37:17, 38:2
**accomplice's** [1] - 25:3
**accomplish** [1] - 28:7
**according** [2] - 5:15, 70:1
**accuracy** [2] - 24:2, 42:22
**accurate** [3] - 23:20, 24:16, 50:19
**accurately** [1] - 23:13
**accused** [1] - 77:22
**accusing** [1] - 31:3
**acquired** [1] - 42:7
**acquittal** [1] - 46:7
**act** [6] - 37:1, 40:17, 40:21, 40:22, 40:23, 41:3
**Act** [13] - 67:25, 68:2, 71:19, 71:20, 76:1, 80:19, 80:22, 82:2, 84:3, 84:19, 86:4, 86:6, 86:16
**acted** [4] - 41:19, 41:21, 42:2, 44:24
**acting** [2] - 36:6, 43:2
**action** [2] - 40:4, 40:6
**actions** [2] - 28:7, 43:3
**actively** [1] - 42:6
**acts** [19] - 28:16, 28:18, 28:20, 29:10, 29:12, 29:14, 29:17,

---

30:5, 30:7, 30:8, 30:9, 35:22, 36:20, 40:19, 41:10, 42:5, 43:7, 44:12, 44:17
**actual** [4] - 21:17, 71:20, 75:5, 89:10
**add** [2] - 74:24, 85:11
**addition** [4] - 22:16, 51:8, 60:24, 65:6
**additional** [1] - 7:4
**additionally** [1] - 52:17
**address** [3] - 14:20, 71:3, 73:18
**addressed** [1] - 77:18
**addressing** [1] - 77:17
**adequate** [1] - 11:13
**admissible** [2] - 18:16, 26:23
**admitted** [16] - 7:19, 8:7, 16:20, 19:5, 19:7, 22:17, 22:19, 22:22, 22:25, 26:17, 28:10, 28:14, 28:16, 47:11, 47:14, 47:18
**adopt** [1] - 78:23
**advance** [4] - 35:19, 42:7, 42:9, 42:25
**advising** [1] - 52:19
**advocacy** [1] - 17:18
**advocates** [1] - 47:8
**affect** [3] - 24:23, 32:1, 32:3
**affects** [1] - 23:15
**afternoon** [4] - 62:20, 67:2, 68:6, 93:21
**age** [1] - 17:8
**agent** [2] - 26:9, 43:2
**agents** [1] - 36:24
**agree** [13] - 33:11, 33:12, 46:12, 57:18, 57:20, 57:23, 68:8, 70:2, 72:2, 72:19, 91:12
**agreed** [7] - 25:12, 25:13, 35:12, 58:4, 61:3, 61:23, 91:2
**agreeing** [1] - 33:24
**agreement** [23] - 25:11, 25:17, 25:21, 25:23, 26:1, 26:3, 26:5, 34:5, 34:10, 34:11, 34:14, 34:22, 35:1, 35:9, 35:11, 35:14, 35:22, 35:24, 36:2, 36:3, 36:5, 36:7, 36:23
**agreements** [1] - 88:19
**agrees** [3] - 7:18, 8:5,

---

35:16
**ahead** [2] - 55:25, 79:1
**aided** [2] - 41:10, 41:16
**aiding** [2] - 41:5, 41:12
**aim** [1] - 37:23
**Alexandria** [2] - 13:8, 28:22
**Alfred** [1] - 4:17
**alleged** [9] - 28:22, 29:18, 29:19, 34:20, 35:8, 35:12, 40:12, 40:15, 43:12
**allegedly** [2] - 61:12
**allow** [1] - 32:2
**allowed** [1] - 52:18
**almost** [1] - 93:20
**alone** [5] - 16:21, 16:22, 23:9, 25:19, 32:17
**alter** [1] - 42:10
**alternate** [4] - 54:1, 54:4, 55:23, 67:12
**alternates** [5] - 6:9, 7:2, 7:11, 54:2, 54:9
**ambiguity** [3] - 77:21, 78:2, 78:4
**ambiguous** [2] - 77:21, 77:23
**ammunition** [1] - 70:8
**amount** [1] - 55:12
**announce** [1] - 46:25
**announced** [1] - 47:2
**annoyed** [2] - 12:21, 62:21
**answer** [28] - 5:19, 5:24, 6:2, 6:3, 6:11, 6:13, 6:20, 6:24, 11:19, 13:19, 13:20, 14:17, 15:4, 18:19, 18:21, 18:22, 58:6, 58:19, 61:11, 62:7, 72:13, 90:22, 91:2, 91:12, 91:17, 91:22, 92:11, 92:20
**answered** [3] - 14:16, 18:21, 91:6
**answering** [1] - 5:13
**answers** [1] - 62:7
**anyway** [2] - 73:5, 93:21
**apologize** [1] - 71:10
**appeal** [1] - 63:6
**Appeals** [2] - 78:20, 78:24
**appear** [2] - 19:21, 65:21
**appearing** [1] - 4:22
**appellate** [3] - 61:17,

63:25, 65:16
**applicability** [2] - 89:10, 89:16
**applicable** [4] - 80:7, 80:8, 85:18, 85:25
**application** [1] - 88:22
**applies** [7] - 16:9, 32:16, 32:18, 54:24, 80:5, 86:18, 87:13
**apply** [5] - 15:24, 26:13, 86:5, 86:10, 90:11
**appointed** [1] - 60:17
**appointment** [4] - 7:22, 10:21, 13:5, 66:23
**appointment's** [1] - 67:2
**appointments** [1] - 62:19
**appreciate** [5] - 55:12, 66:9, 81:5, 82:15, 83:15
**approach** [1] - 85:5
**appropriate** [3] - 5:20, 68:20, 76:3
**approval** [1] - 84:14
**area** [1] - 64:18
**arguably** [1] - 90:1
**argue** [1] - 19:25
**arguing** [1] - 84:17
**argument** [4] - 18:11, 19:20, 19:24, 20:3
**arguments** [3] - 15:17, 19:13, 19:16
**arrangements** [4] - 12:25, 93:9, 93:10, 93:12
**arrive** [1] - 17:5
**arrow** [1] - 5:11
**articles** [1] - 90:6
**Ashley** [3] - 38:13, 38:15, 39:24
**asleep** [1] - 22:4
**assertions** [1] - 27:21
**asserts** [1] - 21:16
**assist** [2] - 19:17, 48:20
**associated** [2] - 41:23, 75:5
**associates** [1] - 70:8
**assume** [8] - 10:7, 21:21, 21:25, 30:16, 54:25, 63:12, 64:1, 78:19
**assuming** [3] - 12:24, 90:23
**assumption** [1] - 70:23
**Atlantic** [1] - 78:17

**attempt** [1] - 42:10
**attempted** [1] - 38:14
**attention** [5] - 25:14, 41:7, 42:22, 50:21, 73:4
**attentive** [2] - 54:7, 55:11
**attitude** [1] - 46:21
**attorney** [2] - 18:25, 61:7
**Attorney's** [2] - 59:19, 59:20
**attorneys** [5] - 11:5, 11:22, 18:6, 53:17, 53:18
**attributed** [1] - 43:4
**authority** [1] - 75:1
**automatically** [1] - 53:12
**available** [3] - 31:21, 60:18, 60:20
**avoid** [2] - 47:4, 81:6
**aware** [2] - 17:1, 17:3

## B

**backed** [1] - 77:9
**bad** [2] - 17:17, 63:18
**bank** [1] - 79:14
**base** [2] - 17:20, 17:23
**based** [8] - 12:11, 14:1, 17:14, 20:1, 21:7, 45:6, 46:19, 49:19
**basis** [2] - 25:19, 26:19
**bear** [3] - 28:6, 45:24, 73:3
**become** [7] - 30:18, 35:15, 35:24, 36:24, 53:18, 55:6, 55:8
**becomes** [1] - 45:14
**begin** [4] - 16:3, 53:25, 65:3, 94:1
**beginning** [8] - 14:15, 30:10, 31:2, 46:21, 47:7, 51:5, 52:8, 59:12
**begins** [1] - 76:17
**begun** [1] - 42:13
**behalf** [1] - 30:19
**behavior** [1] - 23:17
**beings** [1] - 16:24
**belief** [4] - 19:21, 19:23, 19:24, 20:2
**beliefs** [1] - 28:5
**believability** [1] - 16:23
**Bench** [1] - 51:20
**bench** [3] - 70:14,

71:13, 73:5
**benefit** [1] - 21:12
**best** [2] - 71:7, 71:8
**bet** [1] - 63:10
**between** [9] - 24:4, 24:9, 34:20, 36:18, 45:13, 72:10, 76:16, 78:3, 82:20
**beyond** [28] - 10:25, 20:8, 20:12, 20:17, 20:21, 21:2, 21:3, 23:6, 25:20, 29:8, 30:7, 34:3, 35:2, 36:1, 37:7, 38:10, 40:14, 41:2, 41:13, 42:1, 43:10, 43:14, 43:15, 44:23, 48:19, 49:16, 55:15, 56:24
**bias** [1] - 24:22
**biased** [1] - 24:20
**biases** [4] - 16:25, 17:2, 17:4
**big** [1] - 47:22
**binding** [6] - 71:22, 71:23, 73:16, 74:14, 78:24, 79:1
**bit** [3] - 10:5, 14:14, 51:21
**blacked** [3] - 22:18, 22:20, 23:3
**blacked-out** [1] - 23:3
**blah** [5] - 51:23, 69:18
**Blerina** [1] - 4:14
**bless** [1] - 9:11
**blogging** [1] - 51:7
**bodily** [4] - 39:3, 39:9, 79:15, 83:9
**bono** [1] - 63:22
**bopping** [1] - 65:5
**bother** [1] - 9:7
**Boyle** [1] - 4:13
**break** [4] - 10:1, 13:15, 56:10, 88:1
**breaking** [1] - 75:21
**breaks** [3] - 9:23, 56:6, 56:8
**briefly** [5] - 50:23, 85:11, 87:10, 87:12, 87:19
**bring** [15] - 7:3, 10:11, 25:13, 32:4, 40:24, 55:4, 56:2, 56:20, 56:23, 56:25, 93:18, 94:2, 95:8, 95:9
**broad** [10] - 75:15, 75:20, 76:18, 77:25, 80:24, 83:5, 83:22, 84:24, 90:4, 90:5
**broader** [1] - 83:2
**brought** [1] - 72:18

**bunch** [1] - 65:3
**burden** [3] - 20:5, 20:9, 20:20
**Bureau** [1] - 26:9
**business** [1] - 39:20

## C

**calmly** [1] - 47:6
**canceling** [2] - 12:10, 12:11
**CANNON** [68] - 4:12, 5:20, 6:4, 6:19, 7:16, 7:20, 10:5, 10:17, 11:5, 11:12, 11:15, 11:21, 11:25, 12:4, 12:8, 12:13, 12:15, 60:4, 60:11, 66:11, 70:11, 72:7, 72:13, 72:17, 72:20, 73:14, 73:17, 73:20, 73:24, 74:4, 74:6, 74:11, 74:18, 74:22, 77:16, 78:1, 78:14, 78:17, 78:21, 79:2, 79:7, 79:14, 79:20, 79:23, 80:2, 80:4, 80:9, 80:17, 80:20, 81:5, 81:15, 81:19, 81:22, 82:11, 82:25, 83:4, 83:11, 83:15, 84:2, 84:7, 84:9, 84:21, 87:12, 91:13, 92:23, 92:25, 93:13, 94:16
**Cannon** [8] - 4:12, 10:4, 12:2, 60:1, 87:11, 87:19, 87:22, 94:15
**cannot** [2] - 64:11, 81:10
**capability** [1] - 24:24
**card** [1] - 7:22
**care** [3] - 11:22, 94:12, 95:10
**careful** [1] - 55:13
**carefully** [4] - 15:15, 80:16, 91:4, 94:15
**Caroline** [2] - 25:4, 25:11
**Carr** [1] - 79:11
**CARR** [1] - 79:11
**case** [127] - 15:19, 15:25, 16:9, 16:18, 17:12, 17:14, 17:18, 17:24, 18:1, 18:4, 18:10, 19:6, 19:22, 20:1, 20:4, 20:6, 21:15, 22:13, 23:24, 24:1, 25:13, 26:8, 26:12, 28:17, 28:21,

29:6, 29:9, 29:12, 29:13, 29:17, 30:5, 30:7, 30:9, 30:11, 31:18, 31:20, 32:5, 32:8, 32:10, 32:11, 33:23, 40:13, 45:22, 46:7, 46:19, 46:24, 47:3, 47:6, 47:19, 48:13, 49:16, 50:10, 50:13, 50:16, 50:17, 50:20, 51:2, 51:6, 51:14, 52:24, 53:7, 54:18, 54:20, 55:17, 56:13, 60:17, 60:19, 60:22, 61:8, 61:25, 62:1, 62:4, 62:12, 62:15, 63:22, 64:3, 64:14, 65:4, 65:16, 68:2, 69:12, 69:15, 69:24, 71:7, 71:21, 71:25, 72:16, 73:6, 73:7, 73:9, 74:1, 74:5, 75:1, 75:17, 75:22, 76:2, 76:6, 76:7, 76:19, 76:20, 77:11, 78:10, 78:13, 78:15, 78:16, 78:18, 79:10, 79:14, 79:23, 80:5, 81:7, 81:9, 81:12, 82:6, 84:5, 84:11, 84:13, 85:6, 85:17, 89:1, 89:14, 92:4, 94:7, 94:10
**Case** [1] - 4:3
**cases** [23] - 20:23, 21:1, 21:6, 50:8, 57:4, 73:3, 73:23, 73:25, 75:10, 75:16, 75:18, 75:21, 76:1, 76:5, 77:5, 77:6, 81:3, 84:25, 89:7, 89:9, 89:16, 90:14, 91:19
**caused** [1] - 41:3
**causing** [1] - 40:17
**caution** [2] - 25:8, 26:6
**cautionary** [1] - 50:6
**cautious** [2] - 55:9, 55:13
**cell** [4] - 14:3, 14:8, 67:17, 93:2
**certain** [9] - 27:17, 27:23, 28:4, 29:16, 43:5, 43:16, 46:25, 83:24, 86:12
**certainly** [5] - 5:18, 56:7, 62:12, 79:24, 81:24, 82:2, 82:7, 84:23, 88:19, 90:1

**certainty** [3] - 21:5, 22:11, 40:12
**chance** [3] - 71:11, 84:10, 85:18
**change** [2] - 12:21, 67:7
**changed** [2] - 51:24, 76:7
**changes** [1] - 51:23
**character** [1] - 69:15
**characteristic** [1] - 17:7
**characterize** [1] - 27:17
**charge** [4] - 20:22, 32:3, 36:14, 76:10
**charged** [35] - 15:25, 17:19, 20:14, 21:9, 25:6, 28:18, 28:21, 29:6, 29:8, 29:11, 29:13, 29:17, 30:5, 30:7, 32:8, 36:12, 40:10, 40:18, 41:1, 41:14, 41:18, 41:20, 41:22, 41:24, 42:3, 43:11, 43:17, 43:20, 43:24, 44:5, 86:5, 86:6, 86:7, 87:2, 90:8
**charges** [8] - 23:5, 31:25, 32:14, 32:9, 32:12, 33:23, 38:8, 80:10
**check** [4] - 13:12, 49:1, 49:6, 94:25
**choice** [1] - 6:1
**chose** [2] - 30:16, 54:3
**chosen** [2] - 30:12, 30:20
**circuit** [4] - 74:3, 78:25, 85:1
**Circuit** [14] - 74:8, 76:19, 76:20, 76:22, 76:25, 77:11, 77:12, 77:13, 79:10, 82:5, 82:6, 85:4, 85:5
**circumstances** [7] - 21:19, 24:3, 24:5, 44:12, 44:14, 44:21, 45:24
**circumstantial** [8] - 21:13, 21:15, 21:20, 22:3, 22:5, 22:9, 22:10, 22:15
**cite** [2] - 78:15, 89:13
**cited** [5] - 71:15, 75:16, 76:1, 84:13, 89:1
**citizen** [1] - 76:13
**civil** [2] - 20:23, 76:2

**civility** [1] - 45:9
**CJA** [1] - 60:17
**CJA-appointed** [1] - 60:17
**claims** [3] - 27:23, 35:14, 40:9
**clarified** [1] - 7:9
**clarity** [2] - 5:9, 12:16
**clause** [1] - 80:12
**clauses** [3] - 79:25, 80:4, 80:10
**clear** [2] - 77:4, 91:13
**clearer** [1] - 69:6
**clearly** [1] - 83:25
**clerk** [4] - 45:16, 45:25, 50:22, 54:16
**client** [4] - 11:9, 11:19, 61:3, 61:22
**clients** [1] - 8:18
**clinic** [17] - 5:8, 5:9, 5:15, 5:16, 17:18, 27:18, 27:23, 27:25, 28:4, 28:6, 33:17, 34:1, 38:9, 39:1, 39:14, 49:4, 90:1
**Clinic** [12] - 34:1, 34:8, 34:16, 35:6, 35:10, 37:11, 37:17, 38:7, 38:14, 38:16, 39:25, 51:10
**Clinic's** [1] - 37:25
**clinical** [1] - 5:14
**close** [1] - 62:17
**closed** [1] - 5:16
**closest** [1] - 71:23
**closing** [3] - 15:17, 16:1, 41:7
**closings** [2] - 16:14, 42:21
**co** [4] - 42:20, 61:1, 61:9, 61:13
**co-conspirator** [1] - 42:20
**co-conspirators** [2] - 61:9, 61:13
**co-counsel** [1] - 61:1
**Code** [1] - 85:20, 85:25, 86:2
**colored** [1] - 24:22
**Columbia** [2] - 34:2, 39:22
**coming** [9] - 52:25, 63:3, 75:6, 77:14, 84:9, 93:13, 93:15, 93:23, 95:6
**commanded** [1] - 41:16
**comment** [4] - 9:4, 9:11, 9:12, 64:11
**commentary** [1] -

52:21
**comments** [1] - 77:16
**commission** [3] - 40:20, 41:11, 43:24
**commit** [7] - 33:11, 36:24, 41:4, 41:9, 42:3, 81:10, 86:1
**commits** [2] - 42:23, 42:24
**committed** [14] - 28:18, 28:20, 29:6, 29:14, 29:17, 30:5, 40:10, 40:15, 40:19, 41:15, 42:19, 43:17, 43:20, 44:6
**committing** [2] - 41:24, 43:3
**common** [2] - 34:25, 35:3
**communicate** [5] - 45:15, 45:19, 45:21, 51:5, 54:24
**communicated** [1] - 46:9
**communications** [3] - 45:13, 50:7, 51:7
**compared** [1] - 79:4
**competing** [2] - 82:11, 82:17
**compilation** [2] - 75:1, 75:18
**complement** [1] - 77:13
**complete** [1] - 70:1
**completed** [3] - 41:22, 52:20, 94:11
**completely** [3] - 64:3, 87:25, 88:20
**complicated** [1] - 62:4
**comprehensive** [2] - 87:21, 88:25
**computers** [1] - 74:19
**concept** [1] - 82:17
**concepts** [2] - 82:12, 86:13
**concern** [5] - 12:5, 46:15, 63:2, 72:17, 90:12
**concerned** [4] - 17:15, 17:17, 23:25, 63:17
**concerning** [3] - 19:22, 45:22, 50:10
**concerns** [3] - 28:21, 29:18, 52:25
**concluded** [3] - 26:25, 48:12, 95:12
**conditions** [1] - 43:5
**conduct** [21] - 16:7, 17:19, 28:22, 29:6, 29:8, 29:18, 29:20,

32:15, 40:2, 46:21, 51:8, 51:11, 51:16, 51:17, 75:25, 77:5, 81:2, 82:3, 83:24, 85:1, 92:14
**conference** [1] - 51:20
**confident** [1] - 87:13
**conflate** [2] - 86:23, 87:4
**conflating** [1] - 86:12
**conflict** [9] - 61:10, 61:15, 82:20, 82:23, 82:24, 82:25, 83:3, 83:4
**conflicting** [1] - 72:25
**conflicts** [1] - 61:19
**conform** [1] - 22:23
**confusion** [1] - 81:6
**conscience** [1] - 52:6
**consciously** [1] - 17:3
**consensus** [1] - 70:20
**consequence** [2] - 44:1, 44:4
**consequences** [1] - 44:17
**consider** [42] - 16:11, 17:1, 19:2, 19:4, 19:8, 22:13, 22:25, 23:6, 23:15, 23:16, 24:3, 24:7, 24:8, 24:10, 24:14, 24:17, 24:21, 25:25, 26:2, 27:21, 27:24, 28:2, 29:3, 30:2, 30:23, 31:4, 31:5, 32:5, 32:17, 36:20, 44:12, 44:21, 45:7, 46:20, 47:12, 47:15, 48:3, 52:19, 68:9, 75:9, 89:18
**considerable** [1] - 46:22
**consideration** [5] - 17:11, 17:13, 21:7, 27:10, 45:12
**considered** [9] - 25:7, 26:6, 27:4, 27:19, 29:9, 37:5, 43:1, 46:10, 90:21
**consistent** [1] - 82:7
**consists** [1] - 19:6
**conspiracy** [69] - 33:8, 33:10, 33:12, 34:2, 34:20, 35:12, 35:15, 35:19, 35:21, 35:25, 36:8, 36:10, 36:12, 36:15, 36:18, 36:21, 36:23, 37:2, 37:9, 37:20, 37:24, 40:8, 42:23, 42:24, 43:1,

43:2, 43:5, 43:10, 43:18, 43:22, 44:1, 44:7, 48:24, 73:1, 73:8, 79:9, 79:24, 80:23, 81:4, 81:9, 81:13, 81:17, 81:18, 82:10, 83:6, 83:16, 83:18, 84:12, 84:22, 85:19, 85:20, 85:24, 86:1, 86:3, 86:6, 86:7, 86:10, 87:24, 87:25, 88:3, 88:8, 88:13, 88:16, 88:18, 88:24, 88:25, 89:4, 89:8
**conspiracy's** [1] - 37:4
**conspirator** [3] - 37:3, 42:20, 43:3
**conspirators** [5] - 36:14, 37:3, 37:22, 61:9, 61:13
**conspire** [3] - 68:14, 68:15, 76:12
**conspired** [4] - 29:1, 29:25, 36:17, 37:19
**conspiring** [2] - 33:24, 80:6
**constituting** [3] - 40:19, 41:10, 43:8
**Constitution** [1] - 76:15
**construction** [4] - 78:8, 79:7, 86:13, 86:17
**consult** [1] - 9:13
**contact** [1] - 9:9
**contacted** [1] - 60:15
**contains** [2] - 78:12, 79:3
**contentions** [1] - 19:15
**continue** [3] - 56:12, 56:14, 62:24
**continued** [1] - 42:18
**continues** [1] - 42:15
**contradicted** [1] - 24:17
**contrary** [2] - 13:2, 77:15
**control** [5] - 15:18, 18:9, 82:18, 82:21, 86:16
**controlling** [2] - 16:16, 78:7
**controls** [5] - 5:17, 16:14, 78:9, 79:8, 86:14
**convenience** [1] - 63:9

convenient [1] - 65:4
conversations [1] - 27:18
convey [1] - 48:14
convict [2] - 25:18, 40:25
convicted [1] - 82:14
conviction [3] - 46:6, 46:15, 46:18
convinced [2] - 21:4, 21:8
convinces [1] - 25:19
Cooper [4] - 60:15, 61:24, 61:25, 62:15
cooperation [1] - 25:14
coordinate [1] - 11:6
copies [6] - 15:10, 15:14, 47:24, 57:5, 58:20, 58:21
copy [4] - 15:7, 58:18, 58:22, 74:19
correct [4] - 86:20, 87:16, 91:11, 95:2
correctly [3] - 68:23, 86:25, 87:1
counsel [13] - 4:6, 4:11, 4:20, 16:12, 19:13, 51:19, 52:21, 57:21, 60:16, 60:17, 61:1, 64:1, 65:19
counseled [1] - 41:16
counseling [1] - 39:15
Count [37] - 33:8, 38:6, 38:7, 40:18, 41:1, 41:8, 41:12, 41:14, 41:18, 41:20, 41:22, 41:24, 42:4, 43:11, 43:12, 43:17, 43:18, 43:20, 43:22, 43:24, 44:1, 44:6, 44:7, 48:24, 49:3, 49:9, 49:11, 49:14, 49:18, 49:23, 50:1, 50:2, 50:4, 67:25, 90:19, 92:10
count [9] - 20:22, 32:12, 32:19, 32:22, 32:23, 32:25, 33:1, 43:13, 46:13
counts [3] - 32:11, 33:3, 33:5
couple [4] - 66:21, 77:16, 78:8, 85:16
course [7] - 18:17, 22:16, 26:18, 27:16, 72:20, 74:6, 85:20
Court [41] - 6:16, 6:18, 16:4, 16:13, 17:22, 52:19, 59:9, 60:18,

60:25, 64:24, 65:19, 66:17, 66:18, 67:5, 68:9, 68:13, 71:3, 71:22, 73:2, 74:5, 76:6, 77:17, 78:19, 78:20, 78:24, 79:2, 84:14, 84:25, 85:23, 86:19, 88:22, 89:1, 89:2, 89:19, 90:11, 91:5, 91:6, 92:7, 92:11
COURT [161] - 4:10, 4:15, 4:19, 4:23, 5:1, 5:4, 5:23, 6:6, 6:17, 6:21, 7:17, 7:25, 8:9, 8:21, 9:16, 10:4, 10:8, 10:19, 11:7, 11:14, 11:16, 11:23, 12:1, 12:5, 12:9, 12:14, 12:19, 13:11, 14:4, 14:9, 14:11, 14:19, 51:21, 52:7, 52:14, 52:23, 53:22, 53:24, 55:24, 58:2, 58:13, 58:17, 59:2, 59:10, 59:17, 59:22, 59:24, 60:1, 60:8, 60:13, 60:21, 61:6, 61:17, 61:25, 62:11, 63:2, 63:8, 63:16, 63:23, 64:7, 64:19, 65:1, 65:8, 65:11, 65:21, 66:3, 66:7, 66:10, 66:13, 66:20, 67:7, 67:10, 67:16, 67:21, 68:12, 68:17, 68:21, 69:1, 69:5, 69:11, 69:14, 69:23, 70:9, 70:13, 70:19, 70:22, 70:25, 71:6, 71:12, 71:18, 72:4, 72:12, 72:15, 72:19, 73:11, 73:15, 73:18, 73:21, 74:3, 74:5, 74:10, 74:13, 74:21, 74:23, 75:3, 75:12, 77:23, 78:13, 78:16, 78:19, 78:22, 79:6, 79:12, 79:16, 79:22, 80:1, 80:3, 80:8, 80:15, 80:18, 80:21, 81:13, 81:17, 81:20, 81:23, 82:23, 83:1, 83:10, 83:12, 83:19, 84:3, 84:8, 84:16, 84:22, 85:12, 87:6, 87:15, 87:23, 88:5, 88:8, 88:13, 89:4, 89:6, 89:15, 90:5, 90:13, 90:18, 91:2, 91:10, 91:12, 91:17,

91:25, 92:3, 92:24, 93:1, 93:5, 93:15, 93:20, 94:15, 94:18, 94:22
court [12] - 8:20, 9:4, 21:23, 27:17, 45:3, 45:16, 45:23, 46:3, 53:23, 56:19, 74:6, 78:18
Court's [4] - 66:9, 68:7, 73:4, 94:16
courthouse [5] - 8:17, 14:6, 64:18, 92:22, 95:3
COURTROOM [2] - 4:3, 59:1
courtroom [10] - 4:22, 8:13, 14:20, 17:5, 50:14, 54:5, 64:12, 65:22, 92:21, 94:2
courts [1] - 78:23
cover [8] - 14:14, 60:18, 60:19, 60:21, 75:24, 77:5, 84:24, 92:13
coverage [1] - 50:11
covers [4] - 81:2, 82:3, 83:23, 85:1
COVID [1] - 55:6
CRABB [31] - 4:8, 6:16, 6:18, 7:21, 8:8, 8:19, 9:15, 10:3, 59:8, 59:16, 59:20, 59:23, 59:25, 68:6, 68:13, 68:19, 68:23, 69:2, 69:9, 69:21, 70:17, 70:20, 70:24, 71:2, 71:10, 71:17, 72:3, 85:16, 91:1, 91:5, 91:11
Crabb [8] - 4:8, 59:5, 68:5, 70:9, 71:1, 72:9, 85:14, 90:25
CRAMPTON [3] - 12:16, 74:8, 91:24
Crampton [3] - 4:13, 61:2, 94:17
credibility [7] - 16:22, 19:22, 23:4, 23:8, 23:11, 23:16, 26:12
credit [3] - 24:10, 24:18, 31:11
crime [20] - 21:9, 31:3, 33:11, 36:4, 36:24, 40:18, 42:5, 42:7, 42:9, 42:13, 42:14, 42:15, 42:19, 42:23, 42:25, 43:4, 43:6, 43:12, 44:2, 79:19
crime's [1] - 41:11

crimes [1] - 32:14
criminal [8] - 20:5, 21:1, 21:6, 30:11, 40:22, 42:6, 77:20, 81:11
Criminal [1] - 4:3
crossed [1] - 67:18
CSO [2] - 45:25, 57:10
cumulative [1] - 31:23

D

D.C [9] - 76:20, 77:11, 77:12, 78:19, 78:20, 78:24, 79:10, 82:6, 85:5
date [3] - 40:12, 40:15
Davis [3] - 25:4, 25:11, 25:12
Davis's [1] - 25:14
daycare [1] - 10:9
daytime [1] - 54:12
deal [5] - 6:7, 7:12, 53:19, 58:13, 73:8
dealing [3] - 72:24, 82:19, 85:25
deals [1] - 85:19
dealt [1] - 73:8
decide [21] - 10:22, 13:3, 16:20, 16:21, 16:22, 17:12, 17:13, 18:1, 22:8, 23:1, 29:4, 29:5, 29:7, 30:3, 30:4, 30:6, 31:11, 44:20, 50:13, 67:1, 89:23
decided [2] - 13:2, 64:3
deciding [2] - 50:17, 51:14
decision [7] - 30:13, 32:4, 49:15, 62:22, 76:24, 87:20, 93:6
decisions [2] - 30:15, 63:24
deemed [1] - 37:1
DEFENDANT [1] - 94:21
defendant [76] - 20:5, 20:7, 20:10, 20:14, 20:15, 20:21, 21:8, 21:11, 23:5, 28:20, 30:10, 30:16, 30:18, 30:22, 32:13, 32:20, 32:21, 32:24, 32:25, 34:9, 34:13, 34:14, 34:20, 35:8, 35:11, 35:12, 35:20, 35:22, 35:23, 36:5, 36:8, 36:15, 36:17, 36:19,

37:18, 38:11, 38:12, 38:15, 38:24, 40:4, 40:6, 40:17, 40:21, 41:3, 41:8, 41:9, 41:11, 41:16, 41:19, 41:21, 41:23, 42:2, 42:5, 42:6, 42:8, 42:17, 42:18, 43:6, 43:10, 43:12, 44:6, 44:13, 44:24, 46:14, 48:23, 48:25, 49:1, 49:4, 49:7, 49:8, 49:10, 49:11, 49:18, 50:3, 57:14, 82:14
defendant's [5] - 30:25, 31:5, 35:11, 37:8, 40:2
defendants [22] - 20:19, 25:6, 25:18, 26:4, 28:17, 29:13, 29:16, 30:8, 32:10, 33:2, 33:4, 33:23, 36:22, 37:15, 38:8, 40:25, 48:22, 49:22, 49:24, 61:12, 61:19, 62:6
defendants' [4] - 17:18, 21:4, 25:20, 30:15
defense [5] - 31:16, 70:18, 70:21, 86:12, 86:20
defer [2] - 6:16, 6:18
define [3] - 71:4, 73:1, 85:2
defined [7] - 43:14, 51:12, 72:23, 78:6, 79:18, 88:14, 91:4
defines [2] - 79:10, 83:20
definitely [2] - 66:3, 66:11
definition [18] - 72:24, 73:3, 74:25, 75:20, 75:23, 76:22, 78:1, 78:7, 79:4, 79:15, 79:18, 79:20, 81:25, 83:21, 84:18, 84:19, 90:9, 90:23
definitions [8] - 68:1, 68:16, 68:24, 71:20, 72:25, 75:2, 81:3, 81:4
defraud [1] - 88:3
degree [6] - 22:11, 61:19, 61:20, 72:8, 77:11, 81:11
deliberate [5] - 10:20, 12:17, 51:3, 56:7, 93:8

**deliberating** [7] - 10:1, 10:2, 10:7, 10:18, 56:5, 56:12, 94:3
**deliberations** [28] - 15:19, 16:2, 18:9, 18:23, 19:4, 44:25, 45:2, 45:14, 45:15, 46:16, 46:22, 47:7, 48:1, 48:13, 51:5, 51:9, 51:17, 52:20, 54:1, 55:1, 56:15, 57:1, 62:21, 66:1, 66:17, 94:1, 94:9, 95:6
**demeanor** [1] - 23:17
**Dennis** [1] - 4:13
**deny** [1] - 62:23
**deprive** [1] - 37:24
**DEPUTY** [2] - 4:3, 59:1
**described** [1] - 23:13
**describes** [1] - 76:9
**description** [2] - 77:9, 80:19
**deserve** [1] - 17:6
**deserves** [3] - 25:9, 26:7, 31:1
**desire** [1] - 24:23
**despite** [1] - 72:21
**detailed** [4] - 43:18, 43:22, 44:1, 44:7
**details** [3] - 24:6, 34:23, 35:12
**determination** [1] - 46:25
**determine** [6] - 16:18, 17:10, 21:14, 23:9, 24:22, 27:4
**determined** [3] - 31:8, 32:15, 49:22
**determining** [4] - 23:4, 24:16, 36:18, 44:22
**develop** [1] - 18:3
**dictionary** [2] - 75:2, 75:3
**difference** [1] - 72:10
**differences** [1] - 24:12
**different** [35] - 16:5, 16:15, 18:7, 26:1, 33:4, 33:5, 47:16, 62:3, 62:7, 64:14, 73:9, 75:1, 76:2, 78:23, 79:17, 79:18, 80:25, 81:18, 82:13, 83:19, 84:23, 86:15, 86:17, 87:3, 87:23, 87:24, 87:25, 88:8, 88:13, 88:17, 88:20, 92:4
**differently** [2] - 10:5,

16:13
**difficult** [2] - 38:23, 85:2
**direct** [10] - 21:13, 21:15, 21:17, 21:24, 22:5, 22:9, 22:12, 22:14, 27:16, 73:4
**directly** [3] - 40:23, 43:7, 44:9
**disability** [1] - 17:9
**disagree** [2] - 57:21, 90:13
**disappearing** [1] - 14:11
**disbelieved** [1] - 30:21
**discomfort/pain** [1] - 5:10
**discuss** [11] - 15:24, 38:6, 50:21, 50:23, 54:20, 56:13, 58:3, 70:23, 73:12, 75:19, 75:23
**discussed** [3] - 42:21, 75:21, 80:25
**discussing** [2] - 47:6, 89:10
**discussion** [9] - 41:6, 47:3, 53:17, 64:6, 64:15, 71:8, 81:24, 92:5
**discussions** [2] - 45:8, 53:1
**disguise** [1] - 80:6
**dislikes** [1] - 16:25
**disputes** [1] - 59:2
**disregard** [1] - 20:3
**disrupt** [1] - 35:9
**distilled** [2] - 75:25, 77:9
**distinguish** [1] - 91:15
**distracted** [2] - 6:4, 14:22
**district** [1] - 74:6
**District** [5] - 34:1, 39:22, 52:18, 74:5, 75:17
**divided** [3] - 15:20, 46:4, 46:5
**doctor's** [3] - 10:20, 13:5, 66:22
**document** [1] - 22:20
**done** [17] - 10:24, 17:25, 27:19, 36:22, 36:25, 39:7, 40:17, 40:22, 40:23, 41:3, 44:13, 51:24, 58:25, 61:7, 64:8, 87:9, 94:20
**door** [2] - 56:19, 56:20

**Dorothy** [1] - 58:13
**doubt** [30] - 20:9, 20:13, 20:18, 20:20, 20:22, 21:2, 21:3, 21:7, 21:12, 23:6, 25:20, 29:8, 30:7, 34:4, 35:3, 36:1, 37:8, 38:10, 40:14, 41:2, 41:13, 42:2, 43:10, 43:15, 43:16, 44:23, 48:19, 49:16, 70:17, 70:20
**down** [6] - 34:23, 54:12, 74:15, 75:22, 90:15
**draw** [3] - 19:9, 31:6, 31:20
**drawn** [1] - 21:19
**drive** [2] - 7:12, 7:18
**drives** [2] - 8:6, 47:21
**DUNN** [15] - 4:21, 5:21, 58:12, 60:14, 60:24, 61:15, 61:23, 62:9, 62:23, 63:7, 63:13, 63:22, 64:5, 69:13, 74:24
**Dunn** [6] - 4:21, 12:6, 58:11, 60:13, 61:14, 65:13
**during** [20] - 16:14, 16:20, 18:9, 18:17, 19:4, 19:20, 19:24, 19:25, 20:3, 22:16, 27:16, 42:24, 43:20, 44:20, 45:13, 45:14, 47:25, 51:5, 51:9, 51:17
**duty** [6] - 16:10, 17:20, 17:22, 20:14, 20:18, 46:17

**E**

**easier** [2] - 8:14, 64:21
**east** [1] - 74:7
**Eastern** [2] - 52:18, 75:17
**easy** [2] - 64:8, 91:18
**eating** [2] - 9:7, 13:14
**ed** [1] - 89:23
**edits** [4] - 58:8, 58:14, 58:20, 58:23
**education** [1] - 17:10
**effect** [1] - 74:14
**efficient** [1] - 16:8
**Eighth** [7] - 76:19, 76:22, 76:25, 77:11, 77:13, 82:5, 85:4
**either** [21] - 6:10, 6:15, 9:10, 13:22, 13:25,

24:20, 26:14, 30:13, 31:9, 31:16, 33:2, 34:10, 40:3, 40:4, 46:14, 49:10, 50:21, 61:24, 65:2, 79:16, 82:14
**elapsed** [1] - 24:4
**electronic** [1] - 51:7
**electronically** [1] - 51:18
**element** [17] - 20:13, 20:17, 34:19, 35:2, 35:7, 37:7, 37:19, 37:22, 38:18, 39:2, 39:8, 39:12, 40:3, 41:2, 41:17, 91:7
**elements** [9] - 15:25, 33:9, 34:3, 38:10, 41:13, 43:13, 43:16, 48:18, 88:20
**email** [2] - 51:7, 58:22
**emotion** [1] - 37:23
**employee** [1] - 37:16
**employees** [9] - 33:17, 33:25, 34:7, 34:15, 35:5, 35:9, 37:11, 37:25, 38:13
**employees'** [1] - 39:25
**encourage** [1] - 45:9
**end** [19] - 6:1, 6:22, 8:25, 9:17, 10:16, 12:17, 13:3, 13:9, 13:11, 13:15, 14:16, 33:7, 54:22, 55:2, 56:22, 57:2, 62:17, 65:3, 66:3
**enforcement** [3] - 26:8, 26:10, 26:16
**enjoinment** [1] - 76:13
**enjoy** [1] - 56:7
**enjoyment** [3] - 77:7, 82:5, 92:15
**enormous** [1] - 55:12
**enter** [4] - 25:16, 35:22, 36:23, 46:16
**entered** [6] - 25:11, 25:21, 26:1, 26:3, 26:5, 54:5
**entering** [1] - 46:23
**enterprise** [1] - 42:11
**entirely** [2] - 44:19, 54:2
**entitled** [3] - 19:12, 25:1, 32:13
**entrance** [2] - 38:21, 38:25
**Entrances** [1] - 38:7
**equal** [1] - 22:10
**equally** [2] - 31:21, 87:14

**especially** [2] - 62:19, 83:6
**establish** [1] - 40:12
**established** [1] - 43:14
**establishes** [1] - 40:14
**ethnic** [1] - 17:8
**evaluated** [1] - 26:11
**evaluating** [4] - 23:11, 24:2, 26:12, 30:22
**evening** [3] - 93:20, 93:21, 93:22
**event** [7] - 24:3, 24:4, 24:6, 26:14, 46:15, 46:17, 81:12
**events** [1] - 24:5
**evidence** [96] - 8:3, 8:4, 15:16, 16:20, 16:22, 17:11, 17:24, 18:7, 18:8, 18:12, 18:15, 18:20, 18:24, 19:3, 19:5, 19:7, 19:8, 19:11, 19:15, 19:17, 19:18, 19:19, 20:1, 20:4, 20:11, 20:25, 21:8, 21:13, 21:14, 21:15, 21:16, 21:18, 21:20, 21:24, 22:3, 22:6, 22:7, 22:9, 22:11, 22:12, 22:14, 22:17, 23:2, 24:10, 24:18, 25:10, 26:11, 26:17, 26:23, 28:14, 28:16, 28:19, 28:21, 28:23, 28:25, 29:2, 29:3, 29:4, 29:9, 29:15, 29:18, 29:21, 29:23, 30:1, 30:2, 30:3, 31:4, 31:5, 31:8, 31:10, 32:5, 32:16, 32:18, 36:21, 37:2, 37:5, 40:13, 42:1, 44:14, 44:20, 44:22, 45:7, 45:9, 45:11, 45:12, 46:19, 47:11, 48:13, 50:13, 60:23, 64:10, 64:11, 65:25
**exact** [1] - 40:12
**exactly** [2] - 57:6, 73:18
**examination** [1] - 27:16
**examine** [3] - 22:24, 47:12, 47:15
**example** [8] - 21:21, 23:16, 27:6, 27:12, 27:20, 27:22, 28:4, 46:4

except [5] - 28:6, 45:20, 45:22, 56:13, 68:8
exceptions [1] - 26:22
exclusive [1] - 18:5
exclusively [1] - 46:18
excuse [10] - 9:18, 54:1, 54:7, 55:19, 56:23, 66:14, 81:23, 93:18, 93:22
excused [1] - 10:14
excusing [3] - 62:13, 62:14, 62:22
exercise [7] - 30:12, 30:20, 33:14, 76:13, 77:7, 82:4, 92:15
exercising [2] - 37:25, 69:16
exerted [2] - 38:19, 91:8
exhibit [2] - 22:19, 22:21
exhibits [19] - 7:14, 7:21, 8:6, 19:3, 19:6, 22:16, 22:17, 22:24, 23:1, 31:7, 31:9, 31:12, 31:14, 47:11, 47:13, 47:18, 58:4, 58:14, 58:24
exist [2] - 42:12, 81:10
existed [2] - 36:19, 36:23
existence [3] - 37:4, 42:24, 43:21
exists [3] - 35:1, 54:19, 82:19
exit [2] - 38:21, 38:25
expect [2] - 12:2, 95:11
expectation [2] - 39:3, 39:9
expected [1] - 63:20
experience [4] - 13:24, 19:11, 53:2, 53:14
experiencing [1] - 5:11
explain [3] - 33:7, 33:9, 33:22
explanation [1] - 32:9
expressed [2] - 18:2, 20:2
expression [2] - 17:9, 20:3, 46:24
extent [2] - 23:10, 28:6
eyewitness [1] - 21:16

# F

FACE [30] - 38:7, 67:25, 68:2, 71:19, 71:20, 72:23, 73:3, 75:15, 75:22, 76:1, 78:6, 78:7, 79:9, 80:19, 80:22, 82:2, 82:20, 83:5, 83:10, 83:11, 83:17, 83:18, 83:20, 84:3, 84:5, 84:19, 86:4, 86:6, 86:16
face [2] - 78:2, 83:8
facilitate [3] - 41:19, 42:5, 45:8
facility [3] - 38:21, 38:23, 39:15
fact [13] - 15:7, 18:25, 19:1, 19:2, 20:24, 21:17, 22:6, 27:11, 27:25, 30:23, 32:21, 35:23, 72:21
facts [13] - 16:18, 16:19, 17:11, 17:14, 17:23, 19:9, 19:22, 21:14, 21:18, 23:1, 44:13, 44:20, 47:9
failed [1] - 20:16
failure [1] - 31:18
fair [7] - 16:7, 17:6, 17:11, 32:1, 32:6, 45:6, 45:12
fairly [3] - 19:12, 25:1, 90:5
falling [2] - 21:22, 21:24
false [1] - 25:24
falsehood [1] - 24:12
falsely [1] - 26:4
falsity [1] - 28:13
familiar [1] - 94:23
far [4] - 8:15, 11:21, 60:8, 71:7
fashion [1] - 46:6
fast [1] - 81:16
favor [2] - 22:7, 77:21
favorably [1] - 89:2
favoritism [1] - 17:13
fear [2] - 17:12, 83:9
Federal [1] - 26:9
federal [3] - 78:16, 78:24, 78:25
Feola [3] - 89:3, 89:13, 92:4
FEOLA [1] - 89:14
few [2] - 7:23, 21:4
figure [2] - 74:15, 75:8
figured [1] - 60:1
fill [1] - 57:6

finally [1] - 16:1
findings [3] - 49:7, 50:3, 50:5
Findings [1] - 90:19
fine [10] - 9:23, 14:25, 15:10, 61:3, 61:23, 64:19, 65:11, 92:22, 94:18, 94:21
fingers [1] - 67:18
finish [2] - 54:9, 55:16
finished [2] - 56:11, 67:2
firmly [2] - 21:4, 21:8
first [16] - 9:20, 15:21, 16:3, 33:9, 34:11, 34:19, 35:1, 38:18, 40:7, 45:1, 53:15, 80:14, 85:17, 91:7, 91:23, 95:1
fit [1] - 90:9
fits [1] - 91:10
fixed [1] - 58:21
flash [1] - 47:21
flexibility [1] - 66:9
flight [2] - 62:24, 62:25
fly [1] - 63:15
flying [1] - 65:11
follow [3] - 16:12, 48:4, 87:19
following [7] - 27:6, 34:3, 38:10, 41:13, 49:9, 92:7, 92:11
force [14] - 12:20, 37:9, 38:1, 38:2, 38:11, 38:18, 49:12, 49:19, 62:20, 67:7, 90:19, 90:20, 91:7, 91:16
forceful [1] - 90:20
foreknowledge [1] - 42:17
foreperson [12] - 8:2, 9:22, 45:2, 45:4, 45:7, 45:18, 56:4, 57:11, 57:12, 57:13, 57:19, 57:24
foreseeable [2] - 43:25, 44:4
forgotten [1] - 7:5
form [12] - 14:12, 22:7, 33:5, 33:6, 48:11, 48:12, 48:13, 48:16, 48:19, 48:21, 57:6
formal [2] - 31:3, 34:22
formative [1] - 86:8
forth [1] - 65:5
four [1] - 44:5
frame [1] - 56:25

frankly [12] - 12:9, 13:14, 52:16, 53:2, 61:6, 63:2, 63:17, 63:20, 74:14, 76:3, 90:6
free [6] - 33:14, 38:1, 48:7, 52:21, 55:20, 76:13
Freedom [1] - 38:6
freedom [1] - 39:11
friendship [1] - 23:25
frighten [3] - 77:6, 82:4, 92:14
full [3] - 23:22, 45:12, 76:9
function [2] - 16:7, 16:17
functions [1] - 16:17
furtherance [2] - 36:25, 43:21
furthermore [1] - 47:3

# G

gain [1] - 23:24
gained [1] - 42:14
gender [1] - 17:9
general [9] - 15:21, 16:3, 78:9, 79:3, 85:19, 85:25, 86:14, 87:13, 88:16
generalized [1] - 84:20
generally [7] - 16:25, 28:9, 47:20, 53:3, 56:1, 56:25
Geraghty [7] - 4:5, 5:1, 5:3, 13:7, 30:20, 52:4, 87:18
given [5] - 15:4, 17:21, 47:14, 48:17, 78:14
goal [1] - 17:5
goals [2] - 42:25, 43:21
God [1] - 9:11
Goodman [7] - 4:5, 4:23, 4:25, 29:16, 29:24, 30:5, 30:12
Goodman's [2] - 29:19, 29:22
government [41] - 4:7, 20:8, 20:12, 20:16, 20:20, 23:5, 25:4, 25:10, 25:12, 25:13, 25:16, 26:3, 28:19, 29:7, 29:15, 30:6, 31:16, 34:2, 34:4, 35:2, 35:7, 35:14, 35:25, 36:16, 37:7, 37:15, 38:9, 41:1,

41:12, 43:9, 44:23, 48:19, 49:15, 76:19, 83:17, 85:10, 86:21, 87:7, 87:16
government's [4] - 21:1, 29:4, 30:3, 32:4
graft [1] - 86:23
greater [4] - 22:11, 26:14, 31:13, 31:14
ground [2] - 22:1, 22:2
grounds [3] - 49:9, 49:12, 49:21
group [2] - 11:14, 74:16
guaranteed [2] - 77:8, 92:15
guess [1] - 93:20
guidelines [1] - 26:13
GUILLAUME [5] - 4:17, 66:16, 67:5, 67:9, 67:15
Guillaume [1] - 4:18
guilt [6] - 21:4, 25:20, 31:5, 31:6, 32:14, 49:22
guilty [39] - 20:8, 20:15, 20:19, 20:21, 21:9, 21:11, 21:12, 30:16, 32:21, 32:22, 33:2, 33:3, 40:18, 41:8, 41:12, 43:6, 43:10, 43:12, 49:1, 49:5, 49:8, 49:11, 49:12, 49:13, 49:17, 49:18, 49:20, 49:21, 50:2, 50:4
gut [1] - 6:19

# H

half [1] - 13:19
hand [8] - 20:16, 21:10, 21:18, 30:18, 34:24, 54:12, 54:13, 56:20
handled [2] - 5:22, 61:8
handwritten [1] - 58:18
Handy [2] - 4:4, 4:13
HANDY [1] - 94:21
handy [14] - 4:11, 11:23, 27:22, 28:3, 28:20, 29:1, 29:5, 29:10, 29:16, 29:24, 30:4, 30:19, 94:19
Handy's [5] - 28:5, 28:21, 28:23, 29:18, 29:21

**handy's** [2] - 27:16, 27:24
**hang** [9] - 8:12, 11:10, 13:21, 59:11, 60:5, 63:20, 64:21, 92:18, 92:20
**happily** [2] - 54:7, 55:7
**happy** [2] - 11:23, 61:9
**hard** [1] - 83:24
**harm** [7] - 39:3, 39:9, 77:6, 79:15, 82:3, 83:9, 92:14
**hazardous** [1] - 38:23
**heads** [1] - 15:2
**health** [17] - 33:17, 33:18, 34:1, 34:17, 37:13, 37:18, 38:3, 38:9, 38:17, 38:22, 39:13, 39:19, 39:21, 39:24, 40:1, 40:5
**healthy** [1] - 54:6
**hear** [7] - 14:16, 14:21, 15:12, 28:11, 85:6, 85:10, 93:13
**heard** [9] - 15:17, 15:23, 25:3, 25:10, 26:8, 26:19, 27:17, 28:11, 92:17
**hearing** [2] - 6:3, 70:15
**hearsay** [11] - 26:18, 26:20, 26:22, 26:24, 27:1, 27:3, 27:9, 27:12, 27:15, 27:19
**Heather** [2] - 4:4, 4:22
**held** [8] - 4:2, 14:18, 29:11, 30:9, 53:23, 58:1, 93:19, 94:14
**help** [5] - 19:14, 45:8, 89:6, 89:7, 91:14
**helpful** [2] - 41:25, 76:4
**helping** [1] - 42:3
**helps** [4] - 29:5, 30:4, 36:6, 91:15
**Herb** [1] - 4:5
**herself** [1] - 24:20
**hesitant** [1] - 56:17
**hesitate** [1] - 47:2
**high** [2] - 83:9, 83:17
**higher** [2] - 83:8, 83:13
**him'** [1] - 76:14
**hinder** [2] - 34:14, 37:10
**Hinshaw** [4] - 4:4, 4:16, 4:18, 30:12
**hold** [5] - 18:13, 30:13, 63:25, 66:7,

83:1
**home** [2] - 55:21, 62:24
**Honor** [43] - 4:8, 4:17, 4:21, 4:24, 5:2, 5:7, 6:16, 7:21, 8:8, 8:19, 10:3, 12:16, 13:6, 13:8, 52:3, 52:17, 53:21, 64:17, 65:7, 65:9, 65:19, 66:2, 66:16, 67:15, 68:6, 69:21, 70:18, 71:2, 71:10, 71:17, 72:3, 74:9, 77:16, 85:11, 85:16, 87:17, 87:19, 88:21, 89:5, 89:17, 90:10, 91:1, 91:5
**hopefully** [3] - 57:15, 60:8, 62:16
**hospital** [1] - 39:14
**hostility** [1] - 23:25
**hotel** [1] - 60:4
**hour** [3] - 13:10, 13:19, 65:10
**Howard** [3] - 4:24, 78:11, 78:14
**human** [2] - 16:24, 39:16

**I**

**idea** [3] - 72:4, 86:9, 86:13
**identification** [1] - 47:14
**identify** [1] - 4:6
**identity** [2] - 17:9, 35:13
**Idoni** [6] - 4:4, 4:20, 4:22, 12:6, 30:19, 65:14
**ignore** [5] - 16:12, 18:3, 18:18, 18:22, 48:4
**illegal** [2] - 35:23, 43:3
**immediate** [1] - 64:18
**impartial** [3] - 17:6, 32:1, 32:6
**impassable** [1] - 38:20
**impeded** [2] - 33:20, 33:22
**implicate** [1] - 22:23
**implicit** [1] - 17:2
**implies** [1] - 88:25
**importance** [1] - 46:22
**important** [4] - 19:14, 48:5, 81:7, 94:24
**importantly** [1] - 78:5
**imposing** [1] - 46:17

**impresses** [2] - 23:19, 23:20
**improbability** [1] - 24:15
**improper** [1] - 30:14
**inadmissible** [1] - 22:22
**inadvertently** [2] - 50:20, 50:25
**inclined** [3] - 52:20, 52:24, 90:11
**included** [1] - 46:9
**includes** [4] - 39:15, 39:19, 51:6, 52:10
**including** [7] - 22:22, 24:3, 28:15, 32:3, 33:18, 37:13, 39:17
**income** [1] - 17:10
**inconsistencies** [3] - 24:7, 24:9, 24:11
**incorporate** [1] - 91:14
**independent** [2] - 51:8, 51:16
**independently** [1] - 51:15
**indicate** [15] - 6:22, 14:14, 44:14, 46:2, 46:5, 46:8, 48:8, 49:17, 49:19, 68:2, 75:24, 83:24, 85:1, 85:3
**indicated** [5] - 18:2, 40:8, 57:24, 61:1, 67:21
**indicating** [1] - 18:1
**indictment** [19] - 29:11, 31:2, 31:4, 32:12, 32:20, 32:22, 32:24, 33:1, 33:3, 33:23, 36:14, 40:9, 41:9, 43:11, 43:13, 43:19, 43:23, 44:2, 44:7
**individual** [1] - 42:15
**individual's** [1] - 22:23
**individually** [1] - 70:16
**individuals** [1] - 43:4
**induced** [1] - 41:16
**infer** [4] - 42:17, 44:11, 44:16
**inference** [3] - 31:6, 31:19, 31:20
**inferences** [2] - 19:10, 21:19
**infinite** [1] - 89:20
**influence** [3] - 32:23, 32:24, 46:16

**impresses** column continues —
**information** [4] - 51:13, 53:6, 55:20, 76:10
**Ingram** [1] - 81:8, 84:11, 85:6, 85:17, 85:19, 85:24, 86:5, 86:8, 87:20, 88:22, 92:3
**initial** [2] - 47:4, 49:15
**injure** [17] - 33:13, 33:24, 34:6, 35:4, 68:14, 69:2, 69:9, 69:17, 69:22, 70:2, 72:14, 76:12, 80:1, 80:3, 80:11, 80:12
**injured** [1] - 38:12
**injurious** [1] - 69:7
**innocence** [2] - 20:6, 20:11
**innocent** [1] - 20:6
**instance** [2] - 13:5, 27:2
**instead** [9] - 6:3, 27:2, 35:22, 69:7, 69:8, 69:9, 69:21, 70:15, 91:22
**instruc** [1] - 6:7
**instruct** [7] - 15:18, 16:9, 16:10, 40:9, 41:5, 54:20, 68:13
**instructed** [9] - 28:5, 28:9, 33:16, 33:20, 39:21, 69:3, 86:22, 86:25, 91:6
**instruction** [15] - 26:18, 28:15, 38:4, 40:8, 41:7, 42:22, 50:6, 51:4, 52:6, 52:10, 68:8, 69:4, 74:25, 87:7, 89:19
**Instruction** [2] - 67:22, 92:9
**instructions** [30] - 5:25, 6:8, 14:21, 14:23, 15:5, 15:7, 15:8, 15:12, 15:19, 15:24, 16:11, 16:14, 17:21, 28:15, 41:6, 43:14, 47:25, 48:2, 48:3, 48:7, 48:9, 48:16, 48:18, 54:23, 58:9, 74:19, 87:2, 87:3
**Instructions.............. ...................... [1] - 3:3
**instructs** [1] - 40:16
**integral** [1] - 39:20
**intended** [8] - 19:14, 19:17, 28:7, 34:14,

44:3, 77:6, 82:3, 92:14
**intends** [1] - 44:17
**intent** [19] - 28:23, 29:22, 35:18, 37:8, 39:1, 41:4, 41:19, 42:3, 42:5, 44:8, 44:11, 44:14, 69:17, 81:11, 81:23, 81:24, 85:21, 86:9, 89:1
**intentional** [1] - 24:12
**intentionally** [8] - 34:9, 35:8, 35:18, 36:1, 38:12, 44:18, 44:19, 63:19
**interchangeable** [1] - 81:1
**intercom** [2] - 7:3, 51:19
**interest** [5] - 23:23, 24:21, 26:1, 30:23, 62:6
**interesting** [1] - 77:19
**interests** [1] - 34:25
**interfere** [6] - 34:15, 37:10, 39:4, 39:5, 39:7, 39:10
**interfered** [1] - 38:13
**internet** [3] - 50:10, 51:18, 54:23
**interpretation** [2] - 89:21, 89:22
**interpretations** [2] - 64:13, 89:21
**interprets** [1] - 71:21
**intimidate** [28] - 33:13, 33:25, 34:7, 35:5, 39:2, 39:8, 67:24, 68:11, 68:14, 68:15, 68:16, 68:25, 69:2, 69:8, 69:11, 69:19, 71:5, 72:11, 72:14, 76:12, 76:23, 77:3, 79:11, 79:15, 79:21, 83:7, 83:8, 92:9
**intimidate'** [1] - 92:12
**intimidated** [1] - 38:12
**intimidation** [3] - 69:3, 72:22, 73:2
**investigation** [2] - 51:9, 51:16
**Investigation** [1] - 26:9
**invite** [1] - 45:10
**involve** [3] - 76:1, 76:5, 79:12
**involved** [5] - 34:23, 35:4, 36:9, 80:10, 83:25
**involves** [1] - 63:9

**involving** [2] - 32:10, 36:15
**irrelevant** [1] - 28:6
**issue** [25] - 7:5, 12:7, 27:18, 31:8, 31:17, 32:14, 46:7, 48:8, 53:19, 55:6, 61:17, 62:3, 62:5, 63:6, 63:25, 65:16, 65:23, 77:1, 79:12, 82:10, 84:23, 84:24, 89:8, 89:11
**issues** [3] - 10:9, 52:24, 94:11
**item** [1] - 91:14
**itself** [5] - 32:1, 36:7, 48:13, 66:5, 81:12

## J

**January** [1] - 29:19
**Jasari** [1] - 4:14
**Jersey** [1] - 29:20
**John** [7] - 4:4, 4:8, 4:18, 5:2, 13:6, 52:3, 87:17
**join** [1] - 72:9
**joined** [7] - 34:9, 34:13, 34:20, 35:8, 36:1, 36:5, 37:2
**joining** [1] - 37:9
**joins** [1] - 35:18
**Jones** [2] - 38:13, 38:15
**Jones'** [1] - 39:24
**Judge** [11] - 5:20, 5:22, 60:14, 61:16, 61:24, 62:10, 63:22, 70:12, 73:7, 78:21, 81:5
**judge** [5] - 6:4, 20:4, 25:15, 46:18, 74:18
**judged** [1] - 78:2
**judges** [4] - 16:19, 17:23, 23:8, 47:9
**judging** [1] - 23:10
**judgment** [7] - 19:12, 23:15, 25:1, 25:9, 26:7, 31:1, 46:10
**juries** [1] - 47:3
**jurisdiction** [1] - 79:18
**juror** [10] - 14:15, 45:10, 46:11, 46:23, 47:2, 52:6, 53:15, 54:18, 54:25
**Juror** [2] - 5:6, 67:11
**jurors** [17] - 5:6, 6:10, 6:23, 15:3, 20:23, 46:1, 46:21, 50:21, 52:19, 53:4, 53:8,

53:13, 54:1, 54:7, 55:7, 55:23
**Jury** [1] - 3:3
**jury** [55] - 4:2, 6:3, 6:11, 10:7, 10:23, 12:14, 12:17, 14:18, 14:19, 16:4, 16:17, 16:18, 31:25, 45:1, 45:13, 45:17, 45:18, 45:19, 45:21, 46:4, 46:8, 46:23, 47:4, 47:10, 48:21, 48:25, 49:4, 51:3, 51:6, 53:4, 54:18, 55:13, 55:21, 57:13, 58:1, 62:2, 65:2, 65:20, 68:10, 68:24, 69:4, 69:9, 69:22, 71:4, 72:24, 81:6, 83:4, 86:22, 86:25, 87:2, 91:7, 91:21, 92:8, 93:19, 94:14
**Justice** [1] - 59:18
**justice** [1] - 17:7
**justified** [1] - 19:10

## K

**keep** [9] - 8:24, 9:20, 9:22, 47:13, 56:4, 57:7, 65:25, 67:18, 94:2
**kept** [1] - 83:22
**kind** [5] - 25:16, 27:23, 27:25, 31:4, 53:14
**kinds** [1] - 28:4
**KIYONAGA** [31] - 5:2, 13:6, 14:2, 14:8, 14:10, 52:3, 52:13, 52:17, 53:21, 64:17, 64:23, 65:7, 65:9, 65:18, 66:2, 66:6, 66:9, 70:7, 70:10, 85:11, 87:10, 87:17, 88:3, 88:7, 88:12, 88:21, 89:5, 89:13, 89:17, 90:10, 90:17
**Kiyonaga** [6] - 5:3, 13:6, 52:3, 64:16, 87:8, 87:17
**knowing** [2] - 36:7, 44:10
**knowingly** [1] - 36:5
**knowledge** [11] - 21:17, 42:2, 42:7, 42:8, 42:9, 42:12, 42:13, 44:9, 44:11, 44:15
**known** [2] - 36:14, 36:16
**knows** [3] - 60:21,

61:25, 62:15

## L

**language** [12] - 71:1, 72:1, 75:9, 80:11, 80:13, 85:3, 87:20, 88:18, 88:23, 90:20, 91:15
**lapses** [1] - 24:11
**large** [1] - 77:24
**last** [11] - 27:7, 27:8, 27:9, 27:11, 53:24, 53:25, 75:4, 75:6, 75:13, 86:19, 93:5
**lasts** [1] - 62:16
**latest** [1] - 58:23
**Lauren** [2] - 4:4, 4:13
**law** [31] - 15:18, 15:22, 16:8, 16:9, 16:10, 16:13, 16:14, 17:14, 17:16, 17:21, 20:10, 21:6, 22:5, 22:6, 26:8, 26:10, 26:16, 33:10, 33:12, 33:19, 34:18, 35:21, 39:22, 48:16, 51:14, 67:23, 78:10, 84:5, 92:8
**laws** [7] - 33:15, 33:16, 33:20, 37:21, 76:15, 77:8, 92:16
**lawyer** [6] - 18:12, 18:13, 19:20, 19:23, 19:24, 20:2
**lawyer's** [2] - 18:14, 18:18
**lawyers** [8] - 15:17, 18:10, 19:14, 19:16, 19:19, 54:3, 63:20, 93:24
**leading** [6] - 28:7, 28:18, 28:24, 29:14, 29:22, 29:25
**learning** [1] - 42:19
**least** [9] - 41:17, 55:16, 70:23, 72:21, 78:3, 81:11, 89:7, 90:2, 93:1
**leave** [10] - 7:11, 10:8, 11:7, 14:24, 54:10, 58:3, 58:9, 58:15, 76:14, 94:17
**leaves** [2] - 21:3, 89:21
**leery** [1] - 53:10
**left** [4] - 4:18, 12:11, 38:4, 55:23
**legal** [1] - 37:12
**lenity** [1] - 77:19
**less** [4] - 26:23, 52:23,

65:4, 89:9
**lesser** [1] - 26:15
**letting** [1] - 94:16
**level** [1] - 17:10
**liability** [1] - 42:20
**liable** [1] - 40:21
**Liddy** [2] - 76:20, 77:11
**lie** [1] - 25:24
**life** [2] - 42:24, 43:21
**light** [1] - 19:10
**likely** [1] - 20:24
**limit** [1] - 88:22
**limitations** [1] - 28:13
**limited** [6] - 26:17, 28:10, 28:17, 37:14, 80:23, 90:19
**limiting** [1] - 39:22
**Lindgren** [1] - 74:11
**LINDGREN** [1] - 74:12
**line** [1] - 80:18
**lines** [1] - 8:19
**listen** [3] - 48:5, 50:11, 50:12
**lists** [1] - 48:23
**local** [5] - 22:24, 26:10, 60:15, 78:16, 78:22
**locked** [3] - 92:23, 94:4, 94:6
**look** [46] - 7:13, 8:3, 12:9, 15:11, 15:15, 39:6, 50:18, 52:8, 52:9, 52:16, 53:10, 54:14, 65:12, 68:4, 68:7, 71:15, 71:25, 72:5, 73:25, 74:13, 74:15, 75:8, 75:9, 75:19, 75:25, 80:16, 81:21, 82:1, 84:10, 84:16, 85:6, 85:12, 85:18, 87:15, 88:1, 88:10, 88:14, 89:9, 89:11, 89:15, 90:14, 90:24, 91:3, 91:19, 94:5, 94:7
**looked** [5] - 21:21, 21:25, 65:12, 73:15, 92:3
**looking** [9] - 14:7, 51:1, 51:10, 61:10, 73:7, 77:4, 91:25
**low** [1] - 83:16
**lunch** [10] - 9:7, 9:17, 13:13, 13:14, 56:1, 56:7, 56:8, 59:11

## M

**ma'am** [3] - 14:2, 52:5,

70:10
**mail** [3] - 8:16, 14:5
**manner** [2] - 16:8, 23:18, 79:3
**map** [2] - 12:10, 65:12
**mark** [2] - 49:6, 67:24
**marked** [1] - 47:13
**marshal** [1] - 46:1
**Martin** [1] - 4:12
**Maryland** [2] - 29:19, 65:17
**materials** [1] - 93:25
**matter** [9] - 16:2, 36:11, 45:1, 45:22, 46:4, 46:20, 47:9, 88:9, 89:2
**matters** [4] - 11:2, 23:13, 23:22, 46:22
**mean** [18] - 11:1, 11:14, 11:16, 12:10, 19:1, 33:22, 61:8, 61:11, 62:2, 62:17, 63:4, 64:1, 71:18, 71:19, 75:4, 79:16, 83:20, 89:6
**meaning** [3] - 67:23, 68:10, 92:8
**meanings** [2] - 84:4, 84:5
**means** [14] - 22:6, 23:11, 38:18, 38:20, 39:2, 39:4, 39:8, 39:10, 39:13, 40:24, 42:9, 46:3, 51:11, 91:7
**meant** [1] - 48:20
**meantime** [1] - 58:6
**media** [4] - 7:23, 50:9, 50:11, 53:8
**medical** [1] - 39:15
**meet** [1] - 37:19
**meld** [1] - 76:24
**melding** [1] - 81:3
**member** [8] - 35:15, 35:24, 36:21, 39:20, 42:23, 43:18, 44:6, 45:18
**members** [7] - 14:19, 36:11, 36:20, 43:2, 43:5, 45:18, 45:21
**memory** [5] - 18:8, 23:20, 24:2, 24:11
**mention** [2] - 55:25
**mentioned** [2] - 5:8, 66:22
**mere** [1] - 36:3
**merely** [8] - 26:15, 30:21, 31:3, 34:24, 36:4, 36:7, 37:18, 41:23

merits [2] - 45:19, 45:22
met [1] - 37:22
Michigan [2] - 25:15, 63:11
middle [2] - 71:14, 94:9
midst [1] - 42:14
might [11] - 28:11, 50:11, 52:22, 55:17, 60:6, 61:11, 61:20, 73:24, 73:25, 86:5, 86:15
mind [5] - 44:8, 44:24, 45:24, 47:13, 91:20
mindful [1] - 45:5
minds [1] - 90:2
minor [1] - 35:16
minute [3] - 54:8, 55:24, 60:5
minutes [2] - 13:9, 59:21
missed [1] - 52:5
mission [1] - 45:6
mistake [1] - 24:11
misunderstanding [1] - 24:12
mix [1] - 87:4
modifies [1] - 48:18
moment [2] - 89:17, 91:1
Monday [13] - 10:18, 11:1, 12:17, 13:1, 13:4, 62:18, 62:25, 63:15, 66:17, 67:3, 93:8, 93:14, 93:15
monitor [1] - 53:5
monitoring [1] - 60:2
moreover [5] - 17:15, 19:20, 28:5, 29:13, 32:13
morning [13] - 4:8, 4:10, 4:12, 4:17, 4:19, 4:21, 4:24, 5:2, 5:4, 14:19, 67:3, 95:1
mornings [3] - 9:20, 56:25, 65:20
most [1] - 51:23
motivated [3] - 24:21, 26:4, 37:23
motive [2] - 28:24, 29:22
move [1] - 40:16
movement [1] - 39:11
multiple [2] - 32:10, 32:11
murderers [1] - 89:24
must [30] - 18:13, 20:3, 21:1, 21:2,

21:9, 21:11, 23:6, 27:4, 28:10, 29:3, 30:3, 30:13, 30:15, 31:4, 32:2, 32:4, 34:3, 34:19, 35:7, 35:22, 37:7, 38:9, 41:12, 42:1, 46:10, 46:12, 46:13, 48:19, 50:12, 53:25
mustn't [1] - 18:19
mutual [1] - 45:9

**N**

name [4] - 48:23, 48:25, 54:12, 54:15
names [2] - 36:13, 36:15
narrow [2] - 80:21, 83:1
narrower [1] - 75:15
national [1] - 17:8
natural [2] - 43:25, 44:17
nature [4] - 7:10, 31:25, 32:3, 35:17
near [3] - 13:3, 40:15, 90:1
Nebraska [1] - 10:6
necessarily [4] - 35:1, 37:14, 50:8, 50:18
necessary [7] - 20:24, 35:10, 43:25, 44:2, 44:24, 45:14, 81:11
need [48] - 7:6, 7:12, 7:17, 8:20, 8:23, 9:4, 9:5, 9:6, 9:16, 9:17, 9:19, 11:10, 11:16, 12:3, 13:4, 13:11, 13:15, 13:18, 14:7, 14:12, 35:20, 37:15, 37:20, 38:24, 38:25, 40:3, 40:11, 42:16, 51:12, 54:17, 55:4, 55:21, 56:24, 57:21, 58:3, 59:5, 61:21, 62:4, 62:5, 64:9, 64:15, 65:20, 65:21, 91:14, 94:1, 94:2, 95:8, 95:9
needing [1] - 86:9
needs [3] - 7:9, 77:21, 82:21
neutral [1] - 17:17
never [7] - 20:9, 45:21, 45:24, 46:3, 46:8, 46:9, 61:7
nevertheless [1] - 41:10
new [1] - 7:8

New [3] - 29:20, 74:4, 75:17
newspaper [1] - 50:9
next [4] - 60:19, 61:4, 64:23, 91:14
nice [3] - 71:20, 72:23, 92:20
night [5] - 27:7, 27:8, 27:9, 27:11, 27:14
nobody [3] - 55:7, 94:5, 94:8
noise [1] - 15:2
none [1] - 73:18
note [37] - 5:5, 6:2, 8:20, 9:14, 9:25, 10:13, 10:15, 11:9, 13:25, 14:1, 14:15, 15:9, 45:15, 45:20, 48:8, 51:13, 56:10, 57:4, 57:8, 58:18, 59:14, 60:22, 60:23, 61:11, 62:2, 62:10, 64:5, 64:6, 64:7, 64:10, 67:22, 71:11, 85:15, 90:15, 91:21, 93:5
NOTE [1] - 55:23
note-senders [1] - 14:1
notebook [1] - 54:11
notebooks [1] - 54:13
noted [1] - 29:9
notes [18] - 8:11, 8:22, 8:24, 9:18, 11:19, 13:13, 13:18, 13:22, 15:6, 56:18, 56:20, 59:9, 64:8, 64:13, 65:2, 65:3, 66:5, 95:8
nothing [8] - 7:4, 48:14, 48:16, 48:17, 54:3, 60:21, 61:25, 62:15
November [1] - 28:22
number [15] - 22:17, 31:7, 31:9, 31:12, 31:13, 31:14, 54:12, 57:12, 57:18, 59:18, 64:20, 89:20, 93:12, 93:16
numbering [1] - 47:16
numbers [3] - 54:3, 67:17, 95:2
nutshell [1] - 75:14

**O**

o'clock [3] - 10:8, 56:24, 66:12
oath [1] - 25:24

object [3] - 18:15, 35:19, 35:20
objected [1] - 18:10
objecting [1] - 18:12
objection [3] - 18:18, 19:25, 26:24
objections [5] - 18:13, 26:19, 52:2, 92:6, 92:17
objectives [2] - 43:1, 43:22
obligation [1] - 25:22
observe [1] - 23:22
observed [2] - 23:13
obstruct [6] - 38:24, 38:25, 77:7, 80:3, 82:4, 92:15
obstructed [2] - 33:19, 33:22
obstructing [1] - 38:8
obstruction [9] - 37:10, 38:2, 38:11, 38:20, 49:4, 49:13, 49:21, 69:16, 80:11
obtain [4] - 34:16, 34:17, 37:12
obtaining [1] - 38:16
obviously [6] - 48:1, 52:1, 65:17, 78:10, 80:7, 91:25
occasionally [3] - 7:8, 9:19, 19:20
October [12] - 28:8, 28:19, 28:24, 29:1, 29:15, 29:20, 29:23, 29:25, 34:21, 40:11
offense [41] - 20:13, 20:15, 20:17, 20:19, 25:6, 32:13, 32:18, 33:9, 40:10, 40:13, 40:14, 40:20, 40:21, 41:1, 41:2, 41:4, 41:10, 41:14, 41:18, 41:20, 41:21, 41:24, 42:3, 43:8, 43:17, 43:20, 43:24, 44:5, 48:24, 49:3, 76:10, 81:10, 81:12, 85:22, 86:2, 86:10, 86:23, 87:2, 87:3
offenses [3] - 15:25, 25:6, 32:7
offered [10] - 18:11, 26:21, 27:1, 27:11, 28:23, 28:25, 29:2, 29:21, 29:23, 30:1
Office [2] - 59:19, 59:20
office [8] - 13:8, 39:14, 45:17, 55:21,

59:13, 59:15, 59:21, 64:24
officer [1] - 26:16
officer's [2] - 26:10, 26:12
officers [1] - 26:10
often [1] - 47:7
old [2] - 76:6, 76:7
older [1] - 79:8
omitted [1] - 44:13
once [5] - 7:11, 8:20, 8:22, 10:15, 52:19
one [103] - 5:5, 6:9, 6:10, 6:23, 11:12, 11:18, 15:3, 19:20, 20:18, 22:7, 25:18, 25:19, 27:22, 28:20, 31:13, 31:24, 32:21, 32:22, 33:3, 34:5, 36:12, 36:17, 36:19, 36:25, 37:23, 38:3, 38:4, 38:5, 38:11, 40:1, 40:6, 40:25, 41:14, 41:17, 42:20, 43:17, 45:18, 47:1, 48:22, 49:1, 49:5, 49:24, 50:8, 53:13, 57:7, 57:9, 59:22, 61:8, 63:1, 64:3, 66:16, 66:22, 66:23, 68:1, 68:8, 68:20, 71:3, 73:12, 74:10, 74:11, 74:22, 75:21, 76:2, 76:25, 77:2, 77:15, 78:10, 80:4, 80:5, 80:24, 81:20, 82:13, 82:14, 82:17, 82:18, 82:19, 82:21, 82:24, 83:1, 83:2, 84:7, 84:20, 85:12, 85:15, 86:14, 86:15, 86:18, 86:23, 87:2, 87:3, 87:25, 88:2, 88:15, 90:16, 91:1, 91:18, 91:23
one's [1] - 10:20
ones [4] - 47:20, 64:8, 84:23, 88:10
ongoing [1] - 34:12
op [1] - 89:23
op-ed [1] - 89:23
open [9] - 8:13, 45:23, 46:3, 53:23, 56:20, 64:20, 89:22, 92:24, 92:25
opinion [11] - 17:13, 17:17, 18:2, 19:21, 19:24, 19:25, 20:2, 46:24, 48:15, 76:9, 80:12

opinions [2] - 16:25, 18:4
opportunity [7] - 15:12, 23:22, 42:8, 42:16, 68:4, 68:7, 70:5
opposed [1] - 84:20
oppress [23] - 33:13, 33:24, 34:6, 35:4, 68:10, 68:15, 68:21, 68:24, 69:3, 69:4, 69:8, 69:11, 69:18, 69:20, 71:4, 72:10, 74:25, 76:12, 76:23, 77:3, 80:1, 80:13
oppression [1] - 68:19
option [1] - 60:25
orally [3] - 6:3, 45:23, 51:24
Orange [1] - 65:18
order [5] - 22:23, 42:25, 46:11, 69:5, 69:6
orderly [1] - 16:7
ordinarily [1] - 44:9
organize [1] - 45:8
orientation [1] - 17:10
origin [1] - 17:8
original [3] - 44:3, 44:4, 60:16
originally [1] - 93:10
ostracized [1] - 89:25
otherwise [4] - 12:24, 14:24, 22:20, 50:25
out-of-court [1] - 27:17
outcome [2] - 23:24, 30:23
outset [1] - 47:1
outside [3] - 26:21, 45:16, 56:19
overcomes [1] - 21:7
overnight [1] - 66:8
own [7] - 18:8, 30:19, 32:15, 62:6, 65:5, 82:15

**P**

p.m [2] - 93:6, 95:12
PAGE [1] - 3:2
page [3] - 54:11, 74:12, 76:8
pain [1] - 59:14
pamphlets [1] - 90:7
paper [5] - 7:14, 8:6, 8:23, 54:14, 64:9
papers [1] - 47:20
part [14] - 18:23, 35:23, 36:8, 39:20,
44:3, 55:1, 59:10, 65:1, 67:11, 69:7, 69:25, 76:18, 84:14, 89:1
participant [2] - 36:6, 43:7
participants [1] - 36:4
participate [2] - 42:15, 64:5
participated [1] - 25:5
participates [1] - 42:6
participating [1] - 35:14
participation [1] - 42:18
particular [13] - 20:13, 20:17, 22:8, 31:8, 35:21, 37:17, 38:24, 43:9, 44:6, 48:2, 61:1, 81:10
particularly [3] - 15:10, 76:4, 87:7
parties [2] - 19:15, 31:22
parties' [1] - 26:19
partisans [1] - 47:8
partly [1] - 85:3
parts [2] - 15:20, 71:3
party [2] - 18:14, 31:20
passage [1] - 38:22
Patel [2] - 4:9, 59:5
patient [3] - 5:9, 37:16, 39:25
patients [9] - 5:10, 33:21, 33:25, 34:7, 34:15, 35:5, 35:9, 37:10, 37:25
Patterson [3] - 14:3, 57:10, 58:3
pay [2] - 41:7, 42:21
peculiarly [1] - 31:15
pencils [1] - 9:6
people [27] - 6:14, 8:14, 10:9, 10:20, 12:20, 12:25, 13:12, 14:22, 15:1, 17:6, 23:25, 34:24, 35:13, 36:9, 36:15, 51:11, 53:3, 56:6, 62:4, 62:5, 63:20, 63:23, 65:11, 66:21, 89:24, 90:6
perception [1] - 24:13
perfectly [1] - 61:3
perform [1] - 35:22
performed [5] - 27:23, 27:25, 28:4, 39:23, 40:22
perhaps [1] - 78:21
perjury [1] - 25:24
permits [1] - 60:18
permitted [7] - 19:8, 19:23, 19:25, 22:10, 25:5, 25:16, 28:12, 33:19, 34:18
person [30] - 11:18, 11:19, 21:21, 23:19, 27:2, 31:3, 33:14, 35:15, 35:16, 35:17, 37:6, 38:19, 38:24, 39:3, 39:9, 41:17, 41:24, 42:1, 42:3, 42:10, 44:10, 44:17, 45:16, 45:25, 51:18, 56:19, 57:15, 69:18, 83:9, 91:8
person's [6] - 39:10, 40:3, 62:19, 77:7, 82:4, 92:15
personal [5] - 16:24, 17:4, 17:7, 20:2, 54:3
personally [3] - 40:19, 40:20, 41:9
persons [4] - 34:5, 36:19, 36:23, 76:11
perspective [1] - 65:5
persuasive [1] - 92:5
Peter [1] - 60:15
phone [8] - 14:3, 54:12, 59:18, 61:21, 64:6, 64:20, 67:17, 95:2
phones [1] - 93:2
phrase [1] - 69:24
physical [8] - 37:9, 38:2, 38:11, 38:20, 49:12, 49:20, 90:20
physician's [1] - 39:14
pick [1] - 51:19
piece [2] - 54:14, 89:23
pilloried [1] - 89:25
pithy [1] - 75:13
place [7] - 17:5, 39:3, 39:8, 93:2, 94:4, 94:6, 94:17
plan [8] - 34:22, 35:17, 42:10, 44:3, 44:4, 62:23, 64:17, 65:9
planned [1] - 29:24
planning [2] - 5:24, 64:2
plans [5] - 11:6, 12:9, 12:21, 60:6, 67:8
play [2] - 18:23, 35:16
plea [6] - 25:11, 25:17, 25:21, 25:22, 26:2, 26:5
plus [1] - 87:6
point [13] - 39:5, 50:15, 52:23, 53:20, 56:8, 58:14, 81:8, 83:23, 84:11, 86:19, 87:12, 90:13, 94:17
pointed [1] - 85:23
pointing [1] - 72:9
police [1] - 26:10
polled [1] - 57:22
polling [1] - 57:17
portion [4] - 22:21, 23:3, 48:2, 53:24
portions [3] - 22:19, 22:22, 22:25
position [2] - 47:2, 90:25
possibility [3] - 17:2, 21:10, 54:19
possible [5] - 21:7, 46:14, 54:16, 64:23, 72:21
possibly [3] - 52:10, 61:2, 62:2
potentially [1] - 70:5
power [4] - 31:16, 38:18, 79:1, 91:8
powerful [1] - 21:1
practical [2] - 88:9, 89:18
precisely [1] - 71:15
preempt [1] - 87:10
prefer [2] - 11:7, 64:23
preferences [1] - 17:4
pregnancy [3] - 39:17, 39:18, 39:23
prejudice [2] - 17:12, 24:22
prejudiced [1] - 24:20
prejudices [2] - 16:25, 17:4
prepared [1] - 57:17
preponderance [1] - 20:25
presence [7] - 4:2, 14:18, 36:3, 36:22, 58:1, 93:19, 94:14
present [4] - 4:14, 4:22, 5:3, 40:20
presentation [1] - 55:17
presented [5] - 22:14, 28:19, 29:15, 32:5, 50:14
presenting [2] - 27:10, 27:13
preserved [2] - 7:6, 52:2
preside [1] - 45:2
presumed [1] - 20:6
presumption [1] - 20:6
pretty [4] - 11:18, 76:21, 81:16, 91:13
prevent [10] - 34:15, 37:10, 69:15, 69:17, 77:7, 80:11, 82:4, 89:20, 90:2, 92:14
preventing [1] - 37:16
pride [1] - 47:1
principles [2] - 15:21, 16:3
printed [2] - 51:22, 74:18
privacy [1] - 22:23
privilege [2] - 33:14, 76:14
pro [1] - 63:22
probability [1] - 24:15
probable [1] - 44:17
problem [10] - 6:22, 8:15, 9:24, 11:8, 15:1, 51:21, 55:8, 60:23, 65:14, 65:15
problems [1] - 94:10
procedure [3] - 5:8, 5:10, 22:24
procedures [1] - 5:14
proceed [1] - 47:8
proceeded [1] - 62:12
proceeding [1] - 36:13
Proceedings [7] - 4:2, 14:18, 53:23, 58:1, 93:19, 94:14, 95:12
process [1] - 54:3
procured [1] - 41:17
produce [2] - 20:11, 31:16
promised [2] - 10:10, 11:2
promote [1] - 45:11
prompt [1] - 95:5
promptly [2] - 10:10, 92:20
proof [7] - 20:5, 21:1, 21:3, 21:6, 40:11, 44:8
proper [1] - 18:12
properly [1] - 19:5, 86:22
property [2] - 38:19, 91:9
proposal [4] - 70:6, 74:16, 77:14
propose [4] - 72:1, 73:2, 78:11, 79:2
proposed [4] - 18:25, 68:8, 72:13, 74:25
proposing [1] - 82:1
proposition [1] -

85:24
**prosecuted** [1] - 36:12
**prosecution** [1] -
25:23
**protect** [1] - 25:23
**protected** [1] - 37:21
**prove** [10] - 20:10,
20:17, 20:24, 28:23,
29:21, 34:2, 35:2,
36:16, 38:9, 48:19
**proved** [4] - 23:5,
44:9, 44:23, 49:15
**proven** [5] - 19:9,
20:8, 20:12, 41:2,
43:9
**proves** [3] - 29:7,
30:6, 35:25
**provide** [9] - 33:17,
33:21, 34:17, 37:12,
37:13, 47:24, 93:25
**provided** [7] - 17:19,
33:5, 39:14, 39:21,
43:13, 43:15, 48:11
**provider** [1] - 39:19
**providers** [1] - 40:1
**provides** [4] - 38:21,
77:20, 81:9, 92:11
**providing** [2] - 38:3,
38:16
**proving** [2] - 20:21,
22:6
**provision** [2] - 40:5,
88:6
**public** [1] - 17:13
**publicity** [2] - 50:6,
50:20
**punch** [1] - 80:18
**punish** [3] - 77:6,
82:4, 92:14
**punishment** [2] -
46:14, 46:20
**purported** [1] - 19:1
**purpose** [6] - 26:17,
27:2, 27:9, 27:12,
27:13, 28:10, 28:11,
28:17, 29:3, 30:2,
37:1, 37:8, 37:20,
37:24, 69:17, 73:13
**purposefully** [1] -
83:22
**purposes** [2] - 29:2,
30:1
**pursuant** [1] - 25:12
**putting** [3] - 69:23,
83:12, 84:4

## Q

**quality** [1] - 31:10
**quantity** [1] - 31:10

quarter [1] - 10:11
**questions** [8] - 16:8,
18:24, 19:18, 31:24,
48:7, 86:20, 91:24,
92:19
**quick** [2] - 90:22, 91:2
**quickly** [5] - 59:8,
59:14, 84:10, 85:18,
90:24
**quite** [2] - 16:5, 73:19
**quote** [2] - 87:21,
87:22
**quotes** [3] - 67:23,
92:12

## R

**race** [1] - 17:8
**radio** [1] - 50:9
**rained** [5] - 27:7, 27:8,
27:9, 27:11, 27:14
**raise** [2] - 7:6, 53:16
**random** [1] - 54:2
**rather** [2] - 38:25, 42:1
**re** [2] - 5:9
**reach** [5] - 32:1, 45:6,
52:18, 52:21, 57:3
**reachable** [1] - 14:8
**reached** [6] - 34:5,
34:11, 46:2, 56:22,
57:8, 57:14
**reaching** [4] - 22:13,
32:6, 47:15, 70:7
**read** [16] - 5:6, 5:25,
6:6, 6:8, 6:10, 8:25,
47:25, 50:11, 50:12,
50:16, 53:24, 57:10,
58:19, 58:21, 90:15
**reading** [3] - 6:1, 54:9,
68:9
**reads** [1] - 76:11
**real** [1] - 21:10
**realistic** [2] - 42:8,
42:16
**really** [2] - 50:24,
78:21
**reason** [6] - 23:21,
30:14, 40:3, 40:6,
55:4, 57:21
**reasonable** [30] -
19:10, 20:9, 20:13,
20:18, 20:20, 20:21,
21:2, 21:3, 21:19,
23:6, 25:20, 29:8,
30:7, 34:3, 35:3,
36:1, 37:8, 38:10,
39:3, 39:9, 40:14,
41:2, 41:13, 42:2,
43:10, 43:15, 43:16,
44:23, 48:19, 49:16

**reasonableness** [1] -
24:14
**reasonably** [3] -
40:15, 43:25, 84:12
**reasons** [2] - 22:21,
30:15
**recalled** [1] - 23:13
**receipt** [1] - 40:5
**receive** [4] - 14:15,
19:12, 25:2, 58:7
**received** [4] - 5:15,
44:14, 44:20, 67:22
**receiving** [1] - 71:11
**recent** [2] - 79:8, 79:9
**recently** [1] - 10:23
**Recess** [5] - 58:16,
67:20, 75:11, 92:2,
93:4
**recollection** [2] - 5:17,
24:5
**record** [11] - 4:7, 5:6,
5:13, 5:16, 5:17, 6:1,
7:6, 7:7, 8:25, 33:6,
51:20
**recording** [1] - 48:20
**records** [1] - 58:22
**redacted** [2] - 22:16,
22:18
**refer** [2] - 48:1, 48:2
**reference** [1] - 18:6
**referral** [1] - 39:16
**referring** [2] - 80:12,
80:13
**reflect** [1] - 5:14
**refuse** [1] - 16:12
**regarding** [3] - 12:17,
45:4, 45:10
**Regarding** [1] - 90:19
**regardless** [1] - 17:7
**regular** [4] - 52:7,
54:18, 54:25, 56:6
**rejoin** [1] - 54:18
**relate** [3] - 48:6, 81:4,
89:7
**relates** [2] - 84:13,
92:10
**relating** [7] - 8:7,
39:16, 39:17, 52:25,
71:8, 81:20, 88:18
**relative** [1] - 31:7
**relevant** [2] - 31:17,
44:22
**reliable** [1] - 26:23
**religion** [1] - 17:8
**reluctant** [1] - 53:19
**remain** [1] - 64:18
**remained** [1] - 54:6
**remains** [1] - 20:7
**remarks** [1] - 16:1
**remember** [4] - 5:16,

16:15, 47:8, 74:7
**remind** [2] - 50:7, 51:4
**removed** [1] - 22:20
**rendered** [1] - 48:10
**rendering** [2] - 38:20,
38:22
**repercussions** [1] -
89:18
**repetitive** [1] - 31:23
**replaces** [2] - 48:16,
48:17
**REPORTER'S** [1] -
55:23
**reports** [1] - 50:9
**represent** [2] - 18:14,
46:10
**representation** [1] -
60:16
**reproductive** [18] -
33:17, 33:18, 34:1,
34:17, 37:13, 37:18,
38:3, 38:9, 38:17,
38:22, 39:13, 39:16,
39:19, 39:21, 39:24,
40:1, 40:5
**request** [1] - 62:24
**require** [4] - 20:10,
21:6, 22:11, 83:14
**required** [4] - 44:16,
61:7, 71:9
**requirement** [2] -
36:11, 36:13
**requirements** [2] -
83:5, 83:6
**requires** [1] - 88:24
**requoted** [1] - 84:14
**research** [5] - 27:18,
50:7, 51:11, 51:17,
54:24
**researching** [1] -
70:11
**resolved** [1] - 77:21
**resort** [2] - 75:4, 75:6
**respect** [9] - 32:23,
32:25, 41:17, 45:9,
48:24, 49:3, 66:17,
83:7, 85:17
**respond** [4] - 59:9,
62:2, 66:4, 85:14
**response** [2] - 62:10,
92:7
**responsibilities** [3] -
16:5, 61:4, 63:13
**responsibility** [5] -
16:20, 18:5, 18:15,
29:7, 30:6
**responsible** [5] - 8:18,
11:18, 29:11, 30:9,
59:6
**rest** [5] - 54:6, 54:9,

55:24, 70:3, 81:24
**restaurant** [1] - 13:16
**restrict** [1] - 39:10
**restroom** [2] - 56:6,
56:14
**rests** [1] - 46:18
**result** [1] - 24:11
**retire** [1] - 51:3
**retiring** [1] - 47:4
**return** [7] - 32:19,
33:4, 45:1, 46:11,
48:9, 62:25, 63:1
**reveal** [1] - 45:25
**reversed** [2] - 76:25,
77:1
**reviewed** [1] - 78:15
**reviewing** [1] - 47:6
**Riggs** [2] - 78:11,
78:14
**rightly** [1] - 28:3
**rights** [6] - 33:8,
33:10, 34:2, 48:25,
78:5, 81:21
**rise** [1] - 31:18
**risk** [1] - 60:12
**robberies** [1] - 79:19
**robbery** [3] - 79:14,
79:17, 79:21
**Robert** [1] - 4:21
**role** [1] - 35:16
**roles** [1] - 40:1
**room** [5] - 45:1, 46:23,
47:5, 47:10, 51:3
**rooms** [4] - 8:13,
64:20, 92:21, 92:23
**rough** [1] - 56:11
**roughly** [1] - 10:2,
15:20
**rule** [5] - 14:6, 16:8,
17:16, 77:19, 79:7
**ruled** [1] - 18:21
**rules** [4] - 22:24, 45:4,
78:8, 78:24
**ruling** [1] - 80:9
**rush** [1] - 13:10

## S

**Sanjay** [1] - 4:9
**sat** [2] - 34:23, 62:1
**satisfy** [1] - 40:2
**Saturday** [1] - 62:24
**saw** [4] - 21:22, 21:24,
21:25, 22:1
**scathing** [1] - 89:23
**scene** [1] - 36:3
**scope** [10] - 75:14,
75:16, 75:19, 76:2,
76:17, 77:25, 80:21,
80:23, 83:2, 84:24

screen [1] - 47:22
seat [3] - 57:12, 57:17, 57:23
seated [1] - 4:18
seats [2] - 54:4
Seats [1] - 54:7
second [14] - 6:4, 15:24, 35:7, 39:2, 39:8, 60:25, 79:7, 79:25, 80:5, 80:12, 83:1, 85:12, 90:15, 90:16
Second [1] - 78:17
section [4] - 69:4, 76:11, 76:16
secured [2] - 33:14, 76:14
security [2] - 45:16, 56:19
see [20] - 12:23, 13:21, 47:21, 47:22, 60:17, 62:15, 62:16, 64:24, 65:1, 65:8, 70:14, 75:8, 81:2, 85:9, 87:6, 89:16, 90:6, 94:13, 95:7, 95:11
seek [5] - 34:16, 34:17, 37:12, 89:24
seeking [2] - 5:9, 33:21
seem [1] - 5:10
select [3] - 45:2, 45:4, 55:13
selected [1] - 54:4
selecting [2] - 31:25, 45:7
selection [1] - 54:2
self [1] - 24:21
self-interest [1] - 24:21
send [15] - 6:12, 6:19, 9:3, 9:13, 9:14, 45:15, 48:7, 51:13, 57:4, 58:7, 64:10, 65:3, 91:3, 91:22, 92:7
senders [1] - 14:1
sending [6] - 6:2, 6:23, 8:5, 47:10, 56:18, 92:17
sends [1] - 65:2
sense [6] - 10:2, 47:1, 56:11, 77:4, 82:2, 92:13
sent [1] - 75:12
sentence [1] - 46:17
sentencing [1] - 25:14
separate [7] - 32:12, 32:19, 69:14, 71:18, 72:22, 80:4, 87:14

separately [3] - 20:21, 32:18, 68:1
series [2] - 81:18, 88:16
seriously [1] - 63:14
served [1] - 20:23
service [2] - 55:10, 55:20
services [19] - 17:18, 33:18, 33:21, 34:18, 37:13, 37:14, 37:18, 38:3, 38:17, 38:22, 39:13, 39:16, 39:17, 39:19, 39:21, 39:25, 40:1, 40:5
set [2] - 93:16, 95:7
sets [3] - 15:8, 76:8, 83:21
settled [1] - 8:1
several [4] - 5:8, 7:21, 11:17, 26:10
sex [1] - 17:9
sexual [1] - 17:9
share [1] - 72:17
shifts [1] - 20:9
short [3] - 6:24, 75:13, 81:25
shortly [1] - 95:5
show [14] - 27:10, 27:13, 28:25, 29:23, 33:6, 34:3, 34:19, 35:1, 35:7, 36:5, 37:7, 37:15, 41:13, 42:1
shown [1] - 24:19
shows [2] - 20:1, 94:8
sic [5] - 41:21, 45:17, 57:4, 74:1, 78:11
sic] [1] - 72:8
side [6] - 18:11, 19:21, 24:20, 31:9, 31:13, 31:14
sign [1] - 8:3
signed [4] - 5:12, 45:17, 45:20
similar [1] - 34:25
similarly [1] - 19:18
simply [2] - 18:24, 77:24
single [2] - 11:18, 84:25
sit [5] - 10:23, 63:11, 74:15, 90:15, 93:2
sits [1] - 56:19
sitting [3] - 13:1, 93:11, 94:22
situation [1] - 86:11
Sixth [1] - 59:22
skip [1] - 47:17
sleep [1] - 22:1

smaller [2] - 31:12
snow [5] - 21:22, 21:24, 22:1, 63:11
snowed [1] - 22:3
social [1] - 7:23
sole [4] - 16:19, 18:4, 23:8, 40:3
solely [3] - 17:11, 46:19, 50:13
someone [4] - 27:8, 33:11, 33:13, 41:15
someplace [2] - 13:16, 95:3
something's [1] - 7:5
sometimes [6] - 7:4, 9:11, 18:10, 22:19, 53:7, 62:18
soon [5] - 8:19, 8:21, 50:22, 65:24, 93:25
sorry [7] - 6:17, 61:14, 63:10, 68:22, 70:7, 70:19, 92:24
sort [6] - 13:21, 56:4, 59:11, 75:6, 75:17, 88:24
sorts [1] - 81:2
sought [1] - 90:2
sounds [2] - 51:1, 78:17
special [4] - 49:7, 49:18, 50:3, 50:4
Special [1] - 90:19
specific [22] - 28:18, 29:14, 32:7, 39:1, 41:14, 45:3, 75:20, 75:23, 76:22, 77:12, 78:9, 79:4, 80:22, 81:20, 82:7, 83:5, 84:18, 85:2, 85:23, 86:13, 86:16, 87:13
specifically [3] - 33:12, 67:13, 83:20
specifics [1] - 5:14
specify [1] - 88:24
speculate [3] - 18:19, 23:2, 30:14
spelled [1] - 89:13
spend [1] - 13:17
spent [1] - 55:14
split [1] - 46:8
spokesperson [1] - 45:3
staff [1] - 39:20
stage [2] - 35:24, 39:22
stand [4] - 23:18, 27:7, 46:25, 82:15
standard [5] - 52:9, 83:13, 83:16, 83:17, 90:10

stands [3] - 23:24, 76:21, 85:24
start [11] - 5:5, 7:11, 32:9, 57:1, 59:11, 61:4, 65:25, 68:5, 69:25, 70:3, 94:3
started [2] - 56:10, 95:6
starting [1] - 4:7
starts [2] - 48:23, 69:24
State [1] - 72:8
state [9] - 17:16, 19:21, 19:23, 19:24, 33:19, 34:18, 44:8, 44:24, 78:17
statement [13] - 25:24, 27:1, 27:3, 27:4, 27:6, 27:9, 27:10, 27:13, 27:15, 28:10, 28:11, 37:1, 44:12
statement's [1] - 26:21
statements [13] - 19:13, 19:16, 26:20, 27:11, 27:20, 28:2, 28:12, 28:14, 28:15, 36:20, 37:3, 37:6
States [11] - 4:4, 4:9, 33:15, 33:16, 33:20, 37:21, 76:15, 77:8, 88:4, 89:3, 92:16
status [2] - 39:24, 40:3
statute [43] - 68:19, 71:21, 73:1, 73:9, 73:13, 75:5, 75:15, 75:22, 76:7, 77:20, 77:23, 77:24, 78:2, 78:4, 78:12, 79:3, 79:4, 79:9, 79:12, 79:21, 79:24, 81:13, 82:10, 83:13, 83:22, 84:5, 84:12, 84:22, 85:20, 86:1, 86:14, 86:15, 86:17, 86:18, 87:23, 87:24, 88:9, 88:13, 89:8, 89:10, 89:22, 90:5, 92:4
statutes [7] - 72:22, 72:25, 81:18, 82:13, 82:21, 86:15, 87:14
statutory [4] - 38:1, 86:13, 86:17, 88:5
stay [5] - 14:23, 14:25, 54:8, 58:2, 63:17
Steve [2] - 4:13, 60:4
stick [1] - 94:5
still [6] - 27:4, 42:8, 54:23, 54:25, 71:23,

76:6
stop [1] - 38:2
straight [4] - 68:3, 69:6, 69:13, 82:5
Street [1] - 59:22
stricken [1] - 18:21
strong [1] - 46:24
stuck [3] - 12:12, 60:9, 63:21
stuff [9] - 14:7, 51:22, 53:8, 59:12, 61:19, 67:18, 80:6, 90:7, 93:16
subject/arbitrary [1] - 89:22
submit [2] - 74:24, 88:21
substantive [7] - 8:24, 9:2, 9:5, 81:10, 81:12, 85:21, 86:10
succeeded [1] - 37:16
sufficient [3] - 40:13, 42:13, 42:17
suggest [4] - 48:14, 70:4, 71:12, 71:13
suggested [2] - 84:11, 89:19
suggesting [1] - 89:25
suggestion [1] - 5:13
SULPISIO [1] - 74:1
Sulpizio [2] - 73:6, 74:1
sum [1] - 24:25
summon [1] - 54:17
Superior [1] - 78:19
Supp [2] - 74:2, 74:12
supplant [1] - 83:5
support [1] - 82:7
supported [2] - 24:18, 85:5
supposed [5] - 52:11, 52:12, 58:15, 68:3, 84:6
Supreme [7] - 71:22, 76:6, 84:14, 84:25, 88:22, 89:1, 89:2
Surgi [12] - 34:1, 34:8, 34:16, 35:6, 35:10, 37:11, 37:17, 37:25, 38:14, 38:16, 39:25, 51:10
Surgi-Clinic [11] - 34:1, 34:8, 34:16, 35:6, 35:10, 37:11, 37:17, 38:14, 38:16, 39:25, 51:10
Surgi-Clinic's [1] - 37:25
surgical [1] - 39:15
surprised [1] - 57:22

**surrounding** [2] - 24:3, 44:11
**susceptible** [1] - 89:20
**sustain** [2] - 26:19, 26:24
**sustained** [1] - 18:17
**switch** [2] - 15:2, 40:7
**sworn** [3] - 17:20, 17:22, 19:6
**sympathy** [1] - 17:12
**system** [2] - 17:7, 39:16

### T

**talks** [4] - 69:15, 79:15, 82:9, 94:8
**task** [1] - 45:5
**teach** [1] - 63:12
**teaching** [2] - 61:4, 63:10
**tear** [1] - 54:10
**technical** [8] - 77:4, 82:2, 84:1, 84:4, 84:19, 84:24, 92:13
**television** [1] - 50:10
**tempted** [1] - 50:11
**ten** [3] - 59:21, 60:5, 66:13
**ten-minute** [1] - 60:5
**tend** [1] - 15:2
**tension** [1] - 78:3
**term** [9] - 38:18, 38:20, 39:2, 39:4, 39:8, 39:10, 84:1, 90:3, 91:7
**termination** [2] - 37:5, 39:17
**terms** [35] - 7:12, 8:11, 11:14, 15:13, 16:17, 38:5, 50:24, 51:12, 51:21, 52:8, 52:11, 54:11, 58:8, 61:10, 62:3, 63:24, 65:13, 67:10, 68:20, 69:7, 75:21, 75:24, 76:9, 76:18, 76:23, 77:14, 79:17, 80:15, 82:1, 88:14, 93:2, 94:10, 95:5, 95:8
**testified** [6] - 21:23, 23:7, 23:12, 23:14, 23:23, 27:7
**testifies** [1] - 25:5
**testify** [4] - 25:12, 26:4, 30:11, 30:17
**testifying** [2] - 23:18, 23:24
**testimony** [38] - 5:15,

19:3, 19:6, 19:23, 21:17, 21:23, 22:2, 23:6, 24:8, 24:9, 24:15, 24:23, 24:25, 25:3, 25:7, 25:8, 25:17, 25:19, 26:5, 26:7, 26:8, 26:9, 26:11, 26:13, 26:15, 27:19, 27:24, 28:12, 30:21, 30:22, 30:24, 30:25, 31:11, 31:13, 31:17, 31:19, 31:22
**text** [1] - 51:7
**themselves** [5] - 8:1, 10:22, 39:4, 39:9, 67:1
**theory** [1] - 86:17
**therefore** [4] - 13:1, 32:17, 43:6, 78:6
**they've** [7] - 9:25, 13:2, 52:20, 68:16, 93:9, 95:5, 95:6
**thinking** [2] - 44:10, 93:16
**Third** [1] - 74:8
**third** [4] - 37:7, 39:12, 40:2
**threat** [1] - 91:14
**threaten** [5] - 33:13, 33:24, 34:6, 35:4, 76:12
**threats** [1] - 38:1
**three** [12] - 15:20, 34:3, 34:13, 38:15, 41:19, 41:21, 43:24, 54:4, 54:10, 55:10, 55:19, 75:1
**threshold** [1] - 83:8
**throughout** [3] - 20:7, 20:9, 62:1
**throw** [2] - 69:16, 80:11
**thumb** [4] - 7:12, 7:16, 7:17, 8:6
**today** [6] - 8:12, 12:18, 48:5, 65:8, 93:6, 93:7
**together** [6] - 34:24, 36:12, 56:13, 56:16, 70:14, 81:16
**took** [4] - 40:4, 40:6, 55:12, 85:5
**totally** [7] - 76:2, 78:23, 79:17, 82:13, 86:16, 92:4
**touch** [2] - 54:15, 67:18
**toward** [1] - 23:25
**town** [3] - 11:10, 63:21, 64:2

**track** [6] - 8:24, 9:20, 9:23, 56:4, 65:25, 94:2
**travel** [3] - 11:6, 12:9, 60:6
**treatment** [1] - 17:6
**trial** [20] - 16:6, 16:7, 16:21, 18:17, 19:5, 20:7, 20:10, 22:17, 24:21, 26:18, 26:21, 29:10, 30:8, 30:24, 32:15, 36:10, 44:21, 52:25, 94:23
**tried** [2] - 32:17, 36:12
**trip** [1] - 63:1
**troop** [1] - 65:23
**trouble** [2] - 12:6, 63:3
**true** [8] - 19:1, 20:24, 20:25, 24:16, 27:3, 27:5, 27:20
**truth** [7] - 23:21, 24:24, 25:22, 26:22, 27:1, 27:22, 28:13
**truthful** [1] - 23:19
**truthfully** [2] - 23:12, 25:13
**try** [5] - 18:3, 45:19, 63:1, 70:8, 72:5
**trying** [4] - 11:5, 75:4, 81:6, 86:23
**Tuesday** [7] - 11:4, 60:7, 60:19, 93:9, 93:23, 94:13, 95:1
**turn** [1] - 25:17
**turns** [1] - 60:2
**two** [36] - 5:19, 5:14, 10:20, 11:3, 15:7, 21:13, 34:5, 34:9, 36:18, 38:12, 41:16, 43:20, 47:24, 55:16, 57:5, 58:20, 58:21, 66:21, 67:13, 69:14, 71:2, 72:22, 72:25, 73:3, 73:25, 76:11, 78:8, 79:25, 80:4, 82:11, 82:20, 83:19, 89:15, 90:14, 91:19
**type** [2] - 6:25, 28:1, 58:6
**typed** [1] - 58:17
**types** [2] - 21:13, 26:2
**typewritten** [3] - 6:2, 6:13, 6:19

### U

**U.S** [1] - 59:19, 59:20, 74:11, 79:11, 81:8, 85:20, 85:25, 86:2, 89:14

**U.S.C** [1] - 73:9
**unanimous** [8] - 46:2, 46:13, 49:2, 49:16, 57:4, 57:8, 57:14, 57:20
**uncalled** [1] - 31:15
**undeniably** [1] - 88:25
**under** [17] - 24:5, 25:21, 25:24, 43:5, 45:24, 67:23, 76:10, 80:6, 80:10, 82:14, 82:20, 83:5, 83:6, 86:5, 88:6, 90:10, 92:8
**underlying** [3] - 42:13, 42:14, 78:4
**underneath** [1] - 23:3
**understood** [2] - 52:13, 53:21
**unfavorable** [1] - 31:19
**unified** [1] - 62:9
**unintentional** [1] - 18:3
**unintentionally** [1] - 41:25
**United** [11] - 4:4, 4:9, 33:15, 33:16, 33:20, 37:21, 76:15, 77:8, 88:4, 89:3, 92:16
**unknowingly** [2] - 36:6, 41:25
**unlawful** [4] - 29:6, 29:8, 35:17, 35:19
**unlawfully** [1] - 33:19
**unless** [8] - 9:6, 12:24, 13:9, 20:7, 52:5, 66:15, 85:6, 86:19
**unlike** [4] - 67:25, 71:19, 75:15, 84:3
**unlikely** [1] - 54:17
**unreasonableness** [1] - 24:14
**unreasonably** [1] - 38:23
**unreliable** [1] - 26:25
**unusual** [1] - 61:6
**up** [41] - 6:25, 7:3, 8:13, 8:17, 13:2, 13:20, 15:18, 22:2, 28:7, 28:18, 28:24, 29:1, 29:14, 29:22, 29:25, 31:11, 44:19, 45:4, 45:10, 47:22, 53:8, 57:21, 58:6, 63:12, 63:25, 70:6, 70:14, 70:20, 71:23, 72:18, 74:16, 75:7, 75:9, 76:19, 77:10, 77:14, 85:4, 93:16,

94:8, 95:7
**upfront** [2] - 6:7, 8:22
**upset** [1] - 53:17
**useful** [3] - 46:23, 47:4, 47:7
**usual** [1] - 55:15

### V

**variety** [7] - 22:21, 75:24, 77:5, 82:3, 83:23, 85:1, 92:13
**various** [1] - 50:9
**venture** [1] - 42:6
**verbatim** [1] - 87:21
**verdict** [48] - 10:15, 11:8, 11:20, 11:21, 13:23, 17:6, 17:20, 17:23, 18:4, 22:13, 32:2, 32:3, 32:6, 32:23, 32:25, 33:5, 33:6, 45:6, 46:2, 46:10, 46:11, 46:12, 46:18, 46:25, 47:15, 48:9, 48:11, 48:12, 48:15, 48:20, 48:21, 49:2, 49:16, 54:21, 56:23, 57:6, 57:8, 57:9, 57:14, 57:18, 60:22, 62:2, 65:3, 66:5, 67:19, 93:7
**verdicts** [8] - 9:19, 12:12, 32:19, 33:4, 33:6, 47:12, 57:4, 57:19
**version** [4] - 58:23, 75:13, 75:25, 87:24
**video** [3] - 7:15, 7:22, 27:20
**videos** [5] - 7:13, 7:24, 27:17, 27:22, 47:23
**view** [1] - 17:21
**views** [2] - 6:14, 45:11
**vigilant** [1] - 50:24
**violate** [3] - 37:21, 86:3, 86:6
**violated** [1] - 35:21
**violation** [2] - 17:20, 17:22
**violence** [3] - 38:19, 79:19, 91:8
**Virginia** [3] - 28:23, 65:17, 65:18
**voice** [4] - 8:16, 14:5, 46:24
**voluntarily** [3] - 34:9, 35:8, 35:18
**vote** [3] - 46:6, 47:4, 52:6
**voting** [1] - 46:1

## W

**Waddell** [12] - 73:7, 76:6, 76:24, 77:10, 79:23, 80:9, 80:12, 80:13, 82:8, 83:23, 85:3
**wait** [7] - 55:24, 56:15, 58:12, 67:5, 85:12, 93:24, 95:7
**waiting** [2] - 13:19, 14:16
**walk** [1] - 60:5
**WALSH** [1] - 4:24
**Walsh** [2] - 4:24, 61:1
**wants** [6] - 12:1, 59:9, 64:21, 64:24, 86:21
**Washington** [12] - 33:25, 34:7, 34:16, 35:5, 35:10, 37:11, 37:17, 37:24, 38:13, 38:16, 39:25, 51:10
**watch** [2] - 50:12
**watching** [1] - 93:2
**ways** [1] - 80:25
**weather** [5] - 12:11, 60:9, 63:18, 65:12, 65:13
**week** [2] - 61:5, 64:23
**weekend** [5] - 10:7, 11:6, 60:6, 65:10, 94:12
**weeks** [1] - 55:16
**weight** [10] - 16:21, 19:11, 22:8, 22:10, 25:1, 25:8, 26:7, 26:15, 30:25, 31:8
**whichever** [2] - 49:1, 49:5
**whole** [9] - 6:3, 6:6, 6:11, 14:6, 16:11, 23:1, 48:4, 81:17, 88:16
**wide** [1] - 75:24
**willfully** [3] - 40:17, 40:21, 41:3
**William** [1] - 4:5
**willing** [2] - 11:19, 94:19
**wind** [2] - 8:17, 53:8
**window** [2] - 21:22, 21:25
**wisdom** [1] - 17:15
**wish** [1] - 53:5
**withdraw** [3] - 42:9, 42:10, 42:16
**witness** [48] - 8:13, 16:13, 18:20, 18:25, 21:16, 23:9, 23:10, 23:11, 23:12, 23:14,

23:16, 23:17, 23:18, 23:19, 23:20, 23:21, 23:23, 24:6, 24:15, 24:17, 24:19, 24:23, 24:24, 24:25, 25:4, 25:5, 25:7, 25:11, 25:18, 25:21, 25:22, 25:25, 26:3, 26:5, 26:14, 26:15, 26:25, 27:7, 27:8, 27:14, 30:19, 30:24, 31:17, 31:18, 64:20, 92:21, 92:23
**witness's** [6] - 21:17, 23:11, 23:18, 24:2, 24:8, 24:9
**witnesses** [15] - 5:9, 5:15, 16:23, 19:6, 23:4, 23:7, 23:9, 26:2, 31:7, 31:9, 31:12, 31:13, 31:15, 31:21, 31:22
**woke** [1] - 22:2
**word** [4] - 8:20, 71:4, 89:19
**words** [11] - 12:1, 22:18, 22:20, 46:7, 46:12, 49:14, 69:13, 69:14, 71:19, 77:3, 92:11
**works** [3] - 6:15, 13:21, 65:8
**world** [1] - 21:5
**worry** [2] - 47:17, 67:12
**worth** [1] - 77:17
**worthwhile** [1] - 70:13
**write** [3] - 54:12, 77:10, 89:23
**writing** [3] - 45:22, 46:3, 90:6
**written** [2] - 15:14, 54:11
**wrongly** [1] - 28:3
**wrote** [1] - 70:2

## Y

**yelling** [3] - 90:20, 91:10, 91:21
**York** [2] - 74:4, 75:17
**you-all** [10] - 10:12, 14:11, 60:1, 70:4, 70:14, 71:12, 71:15, 72:5
**yourself** [3] - 4:6, 15:11, 57:7
**yourselves** [1] - 94:12

## Z

**zip** [1] - 74:22